**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DR. RALPH DE LA TORRE, M.D.**,
4939 Brookview Drive
Dallas, TX 75220

             Plaintiff,

v.

**BERNARD SANDERS, in his capacity as
Chairman of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
332 Dirksen Senate Office Building
Washington, D.C. 20510

**BILL CASSIDY, M.D.**, **in his capacity as
Ranking Member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
455 Dirksen Senate Office Building
Washington, D.C. 20510

**PATTY MURRAY, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
154 Russell Senate Office Building
Washington, D.C. 20510

**ROBERT P. CASEY, JR., in his capacity
as a member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
393 Russell Senate Office Building
Washington, D.C. 20510

**TAMMY BALDWIN, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
141 Hart Senate Office Building
Washington, D.C. 20510

Case No.:

**CHRISTOPHER MURPHY, in his
capacity as a member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
136 Hart Senate Office Building
Washington, D.C. 20510

**TIM KAINE, in his capacity as a member
of the Committee on Health, Education,
Labor, and Pensions of the United States
Senate**;
231 Russell Senate Office Building
Washington, D.C. 20510

**MARGARET WOOD HASSAN, in her
capacity as a member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
324 Hart Senate Office Building
Washington, D.C. 20510

**TINA SMITH, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
720 Hart Senate Office Building
Washington, D.C. 20510

**BEN RAY LUJÁN, in his capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
498 Russell Senate Office Building
Washington, D.C. 20510

**JOHN W. HICKENLOOPER, in his
capacity as a member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
374 Russell Senate Office Building
Washington, D.C. 20510

**EDWARD J. MARKEY, in his capacity as
a member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;

255 Dirksen Senate Office Building
Washington, D.C. 20510

**SUSAN M. COLLINS, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
413 Dirksen Senate Office Building
Washington, D.C. 20510

**LISA MURKOWSKI, in her capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
522 Hart Senate Office Building
Washington, D.C. 20510

**MIKE BRAUN**, in his capacity as a
**member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate;**
404 Russell Senate Office Building
Washington, DC 20510

**ROGER MARSHALL, M.D., in his
capacity as a member of the Committee on
Health, Education, Labor, and Pensions of
the United States Senate**;
479A Russell Senate Office Building
Washington, DC 20510

**MITT ROMNEY, in his capacity as a
member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
354 Russell Senate Office Building
Washington, D.C. 20510

**TOMMY TUBERVILLE, in his capacity
as a member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
455 Russell Senate Office Building
Washington, D.C. 20510

**MARKWAYNE MULLIN, in his capacity**

**as a member of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate**;
330 Hart Senate Office Building
Washington, D.C. 20510

**TED BUDD, in his capacity as a member
of the Committee on Health, Education,
Labor, and Pensions of the United States
Senate; and**
304 Russell Senate Office Building
Washington, D.C. 20510

**COMMITTEE ON HEALTH,
EDUCATION, LABOR, AND PENSIONS
OF THE UNITED STATES SENATE,**
428 Dirksen Senate Office Building
Washington, D.C. 20510

                    Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Dr. Ralph de la Torre, M.D., ("Dr. de la Torre") hereby respectfully seeks judicial redress for continuing violations of his constitutional rights, particularly under the Fifth Amendment to the U.S. Constitution, by these Defendants:  Senators Bernard Sanders, Bill Cassidy, M.D., Patty Murray, Robert P. Casey, Jr., Tammy Baldwin, Christopher Murphy, Tim Kaine, Margaret Wood Hassan, Tina Smith, Ben Ray Luján, John W. Hickenlooper, Edward J. Markey, Susan M. Collins, Lisa Murkowski, Mike Braun, Roger Marshall, M.D., Mitt Romney, Tommy Tuberville, Markwayne Mullin, and Ted Budd, as well as the U.S. Senate Committee on Health, Education, Labor, and Pensions (the "Committee," and collectively with each individual Defendant Senator, "Defendants").  As alleged herein, Defendants are collectively undertaking a concerted effort to punish Dr. de la Torre for invoking his Fifth Amendment right not to "be compelled . . . to be a witness against himself," and continue to command his sworn testimony by compulsion without regard for the validity of his invocation.  Because such punishment is patently

unconstitutional, this Court should grant the declaratory and injunctive relief necessary to stop it.

1.     Dr. Ralph de la Torre has had a distinguished career, bedecked by numerous accomplishments.  He was the founder, chairman, and CEO of Steward Health Care System, LLC ("Steward"), the largest physician-led, minority-owned, integrated health care system in the United States.  After earning a Bachelor of Science degree in Engineering from Duke University, Dr. de la Torre attended a joint program administered by Harvard Medical School and the Massachusetts Institute of Technology, earning a doctorate in medicine as well as a master's degree in science. After a renowned career as a cardiac surgeon, Dr. de la Torre became a leader in the healthcare industry.  He ultimately founded Steward in 2010, where he pioneered a physician-led health care model that emphasizes value-based care, patient outcomes, and cost-effective services, thus expanding access to quality medical care for the many communities served by Steward.

2.     On May 6, 2024, however, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code.  Since Steward's bankruptcy announcement, members of the Committee have painted Dr. de la Torre as a villain and scapegoated him for the company's problems, even those caused by systemic deficiencies in Massachusetts' health care system.

3.     On July 25, 2024, the Committee served Dr. de la Torre with a subpoena (the "Subpoena") commanding his testimony in a hearing the Committee set for September 12, 2024 titled "Examining the Bankruptcy of Steward Health Care:  How Management Decisions Have Impacted Patient Care" (the "Hearing").  That Hearing, however, was simply a device for the Committee to attack Dr. de la Torre and try to publicly humiliate and condemn him.

4.     More than a week before the Hearing, on September 4, 2024, Dr. de la Torre

conveyed to the Committee in writing, *e.g.*,[1] that he would not be able to provide testimony at the Hearing because he was invoking his Fifth Amendment rights in the face of a ferocious campaign, by members of the United States Congress and others, to pillory and crucify him as a loathsome criminal.[2]

5.      In response, the Committee wrote back on September 5, 2024 recognizing that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee." But the Committee then "reject[ed] any suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground," and sought to intimidate and dissuade Dr. de la Torre from standing on his Fifth Amendment rights by threatening him with "criminal penalties" for "[f]ailure to comply with the Committee's subpoena" *unless* he submitted to the Committee's televised spectacle of public degradation and pillorying where he would be forced to refuse repeatedly to answer questions on constitutional grounds, all while the Committee members attacked him (including for remaining silent) and solicited vitriolic testimony[3] from other

---

[1]   Dr. de la Torre also explained that he would be prohibited from providing sworn testimony at the Hearing because Steward has denied authorization for Dr. de la Torre to testify on Steward's behalf; Dr. de la Torre is prohibited by a federal court's order from revealing certain information obtained in Steward's bankruptcy proceeding; and testifying at the Hearing could jeopardize an agreement in principle with Steward's creditors that could help keep the majority of Steward hospitals open, thereby preserving nearly 30,000 jobs while enabling recovery for general unsecured creditors.

[2]   Senator Markey, for instance, promised that Dr. de la Torre's "day of reckoning is going to arrive here on September 12th in the HELP Committee." *See Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024). Senator Sanders, for his part, has vowed to "hold Dr. de la Torre accountable for his financial mismanagement and his greed." *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[3]   Other senators and witnesses at the Committee's Hearing have said that they want to make him "answer for the [alleged] harm he's inflicted on our communities[,]" that he is a "health

witnesses calling Dr. de la Torre a "health care terrorist[]," advocating for his imprisonment, and labeling him as a "coward." Indeed, the Committee made it abundantly clear that they would put Dr. de la Torre's invocation itself at the heart of their televised circus and paint him as guilty for the sin of remaining silent in the face of these assaults on his character and integrity.

6.      By weaponizing Congress's civil and criminal contempt procedures in response to Dr. de la Torre's invocation of his Fifth Amendment rights under the U.S. Constitution, the Committee has bulldozed over Dr. de la Torre's constitutional rights and has sought to make him pay a steep price for invoking them—and in so doing, the Committee's actions exemplify its blatant and unconstitutional attempts to chill and deter Dr. de la Torre from continuing to stand on his rights.

7.      Although the D.C. Bar Legal Ethics Committee has repeatedly recognized that when a Fifth Amendment privilege is asserted before a congressional committee, "there is no need to test that claim of privilege in public,"[4] the Committee nevertheless held a promise of criminal retribution over Dr. de la Torre's head unless he subjected himself to the Committee's public humiliation in order for him to continue to stand on his constitutional rights, an intimidation tactic that the Senate and its counsel themselves have previously recognized "could serve only an improper purpose of showmanship and d[oes] not perform any legislative or public-informing

---

care terrorist[,]" that he should be "put [] in jail because that's where he deserves to be," and that "Dr. de la Torre is a coward." *See id.* (Statements of Edward Markey and witness Michael Charles Echols); Press Release, Senator Edward Markey, Senator Markey Slams Steward CEO, Demands de la Torre Take Accountability for Steward's Failures (Sept. 5, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-slams-steward-ceo-demands-de-la-torre-take-accountability-for-stewards-failures.

[4]    D.C. Bar Legal Ethics Comm., Op. 358 (2011) (affirming D.C. Bar Legal Ethics Comm., Op. 31 (1977)).

function."[5]

8.      After Dr. de la Torre, consistent with his invocation of his constitutional rights, did not appear and testify at the Hearing, members of the Committee responded with outrage and spelled out their resolve to sanction Dr. de la Torre for any refusal to testify based on the Fifth Amendment.  For example:

- "It's unfortunate we've got to this point. But if someone shows contempt for the American people by . . . refusing to provide answers, that is contemptible." (Statement of Sen. Bill Cassidy on Sept. 19, 2024).[6]

- "It is essential for our Committee to receive [Dr. de la Torre's] testimony in order to understand the financial downfall of the company . . ." (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 19, 2024).[7]

- "We were hopeful that Dr. de la Torre would comply with our bipartisan subpoena . . . to testify to the harm Steward has caused to patients, health care workers, and the communities in which they live." (Statement of Sens. Bernard Sanders and Bill Cassidy on Sept. 12, 2024).[8]

- "The American people deserve to hear directly from Dr. de la Torre about how this disaster unfolded." (Statement of Sen. Ed Markey on Sept. 19, 2024).[9]

---

[5]   *See* SAMUEL DASH, CHIEF COUNSEL: INSIDE THE ERVIN COMMITTEE -- THE UNTOLD STORY OF WATERGATE, 191 (1976).

[6]   *Contempt Resolutions: Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[7]   Press Release, Senator Bernard Sanders, In Historic First, HELP Committee Holds Steward CEO Ralph de la Torre in Civil and Criminal Contempt with Bipartisan Vote (Sept. 19, 2024), https://www.sanders.senate.gov/press-releases/news-in-historic-first-help-committee-holds-steward-ceo-ralph-de-la-torre-in-civil-and-criminal-contempt-with-bipartisan-vote/.

[8]   Press Release, Senator Bernard Sanders, Ranking Member Cassidy, Chair Sanders Announce Committee Vote to Hold Steward Health CEO in Contempt Following Failure to Comply with Congressional Subpoena (Sept. 12, 2024), https://www.help.senate.gov/ranking/newsroom/press/video-ranking-member-cassidy-announces-committee-vote-to-hold-steward-health-ceo-in-contempt-following-failure-to-comply-with-congressional-subpoena.

[9]   Press Release, Senator Edward Markey, Senator Markey Statement on HELP Committee's Unanimous Vote to Hold Steward CEO Dr. Ralph de la Torre in Contempt of Congress (Sept. 19, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-help-committees-unanimous-vote-to-hold-steward-ceo-dr-ralph-de-la-torre-in-contempt-of-congress.

9.      Before the Committee proceeded on September 19, 2024 to pass civil and criminal contempt resolutions (collectively referred to herein as the "Contempt Resolutions") against him, Dr. de la Torre, on September 18, 2024, reminded the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

10.      Still, the Committee barreled forward to punish Dr. de la Torre for having had the temerity to invoke his inalienable constitutional rights.  After passing the Contempt Resolutions on September 19, 2024, the Committee issued a Contempt Report on September 23, 2024.[10] Therein, the Committee again recognized that "Dr. de la Torre would not testify as commanded by the Subpoena" because he was invoking his "constitutional rights and the on-going bankruptcy proceedings as reasons it would be inappropriate for Dr. de la Torre to appear before the Committee."  But it also stated that the Committee had "overruled the objections raised by Dr. de la Torre's counsel and ordered Dr. de la Torre to appear at the hearing as commanded by the subpoena" because, according to the Committee, "the Fifth Amendment privilege against self-incrimination does not permit witnesses to refuse to appear when summoned to testify before a congressional committee."  Not only is the Committee wrong as a matter of law, the Committee's bottom line was explicit: it was weaponizing Congress's civil and criminal contempt proceedings to punish Dr. de la Torre, not because his invocation of the Fifth Amendment "depriv[ed] the Committee of his testimony on questions pertinent to its inquiry and subject matters under consideration," but because his invocation deprived the Committee of a televised opportunity to ridicule him in front of the American public for standing on his constitutional rights.

11.      All told, the Committee is undertaking a fearsome effort to compel Dr. de la Torre

---

[10]  S. Rep. No. 118-230 (2024).

to do what he cannot be compelled to do consistent with the Fifth Amendment—namely, to provide testimony that could self-incriminate him for purposes of possible criminal proceedings. While recognizing Dr. de la Torre's invocation of his Fifth Amendment rights, the Committee is blowing past that invocation and levying devastating punishments because Dr. de la Torre would not answer the Committee's questions in light of his constitutional objections. Of course, anyone familiar with the Fifth Amendment right against self-incrimination, and certainly members of Congress, should recognize that Dr. de la Torre cannot be so compelled to testify. Nor can Dr. de la Torre be punished—whether by being tarred and feathered live at a public hearing, by being held in contempt, by being prosecuted by the United States, or by any other means—on the basis that he is continuing to invoke his Fifth Amendment rights. As matters presently stand, however, Dr. de la Torre is being punished for invoking his Fifth Amendment rights in response to the Subpoena, and is also under continued threat to either surrender his Fifth Amendment rights or else face punishment at the hands of the Committee.

12. These circumstances are chilling, they are unconstitutional, and they warrant judicial redress. Accordingly, Dr. de la Torre now respectfully requests a declaratory judgment that he cannot be compelled to comply with the Subpoena, a declaratory judgment that he cannot be punished for asserting his Fifth Amendment rights in response to the Subpoena, an injunction prohibiting the Committee and its legal counsel from enforcing the Subpoena against him, as well as an injunction prohibiting Dr. de la Torre from being punished for asserting his Fifth Amendment rights in response to the Subpoena.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States.

14. This Court has personal jurisdiction over the Senate Committee on Health,

Education, Labor, and Pensions because it is located in and operates from Washington, D.C. and the Subpoena to Dr. de la Torre issued from the Committee.

15.     This Court has personal jurisdiction over all Defendant Senators because all have Washington, D.C.-based offices and are members of the Committee, which operates from Washington, D.C.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the District Court for the District of Columbia is the judicial district in which a "substantial part of the events" leading to this action took place.  The District of Columbia is where the Subpoena to Dr. de la Torre was issued and was the place of compliance listed in the Subpoena.

17.     This Court may issue declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57.

## THE PARTIES

18.     Plaintiff Dr. Ralph de la Torre, M.D., was the founder, chairman, and chief executive officer of Steward Health Care System, LLC, which he founded in 2010.  The Committee issued the Subpoena challenged herein to Dr. de la Torre on July 25, 2024.

19.      Defendant Bernard Sanders is a U.S. Senator for the State of Vermont and he currently serves as the Chairman of the Senate Committee on Health, Education, Labor, and Pensions.  The Subpoena challenged herein was issued pursuant to his authority and signed by him. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

20.      Defendant Bill Cassidy is a U.S. Senator for the State of Louisiana and he currently serves as the Ranking Member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

21.     Defendant Patty Murray is a U.S. Senator for the State of Washington and currently

serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

22.     Defendant Robert P. Casey, Jr. is a U.S. Senator for the State of Pennsylvania and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

23.     Defendant Tammy Baldwin is a U.S. Senator for the State of Wisconsin and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

24.     Defendant Christopher Murphy is a U.S. Senator for the State of Connecticut and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

25.     Defendant Tim Kaine is a U.S. Senator for the State of Virginia and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

26.     Defendant Margaret Wood Hassan is a U.S. Senator for the State of New Hampshire and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

27.     Defendant Tina Smith is a U.S. Senator for the State of Minnesota and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

28.     Defendant Ben Ray Luján is a U.S. Senator for the State of New Mexico and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.

He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

29.     Defendant John W. Hickenlooper is a U.S. Senator for the State of Colorado and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

30.     Defendant Edward J. Markey is a U.S. Senator for the State of Massachusetts and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

31.     Defendant Susan M. Collins is a U.S. Senator for the State of Maine and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

32.     Defendant Lisa Murkoswki is a U.S. Senator for the State of Alaska and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  She voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

33.     Defendant Mike Braun is a U.S. Senator for the State of Indiana and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

34.     Defendant Roger Marshall is a U.S. Senator for the State of Kansas and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

35.     Defendant Mitt Romney is a U.S. Senator for the State of Utah and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions.  He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

36.     Defendant Tommy Tuberville is a U.S. Senator for the State of Alabama and

currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

37.     Defendant Markwayne Mullin is a U.S. Senator for the State of Oklahoma and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

38.     Defendant Ted Budd is a U.S. Senator for the State of North Carolina and currently serves as a member of the Senate Committee on Health, Education, Labor, and Pensions. He voted affirmatively on the Committee's Contempt Resolutions on September 19, 2024.

39.     The Senate Committee on Health, Education, Labor, and Pensions is a standing committee of the United States Senate. Pursuant to Rule XXV of the Standing Rules of the Senate, the Committee has jurisdiction over, among other things, "[m]easures relating to education, labor, health, and public welfare" and "[p]ublic health."

## FACTUAL ALLEGATIONS

### I.   Dr. de la Torre and Steward Health Care System LLC

40.     Dr. de la Torre founded Steward in Massachusetts in 2010, as an affiliate of Cerberus Capital Management, L.P. ("Cerberus"), which acquired the non-profit health care system Caritas Christi Health Care.

41.     At the time of the acquisition, Caritas Christi was in dire straits and at risk of serious loss. The Massachusetts state attorney general, in approving the Steward transaction in 2010, found it "impracticable, if not impossible, for Caritas to continue to operate as a public charity."[11] Without Steward and Cerberus, more than 13,000 employee pensions would have been at risk, and

---

[11]  *See* Office of Att'y Gen. Martha Coakley, Statement of the Att'y Gen. as to the Caritas Christi Transaction (Oct. 6, 2010), https://www.mass.gov/files/documents/2016/08/wo/statement-of-the-attorney-general-caritas-christi-transaction.pdf.

hospitals likely would have shuttered under Caritas Christi's leadership. Steward and Cerberus gave Caritas Christi—including its patients, employees, and communities—the cash infusion that it desperately needed.

42.    Steward acquired six hospitals with the Caritas Christi sale in 2010 and began to expand nationwide, determined to bring its value-based care model to patients around the nation. Steward Health Care has served millions of patients and employed thousands of physicians, nurses, and staff.

43.    But Steward, like many other businesses, faced significant financial headwinds as a result of the COVID-19 pandemic. Steward hospitals endured a sharp decline in elective patient visits in the face of significant cost increases—to say nothing of the physical, emotional, and mental toll on all Steward physicians and staff, including management. The pandemic had—and has continued to have—a debilitating effect on Steward's revenue.

44.    Steward has faced additional struggles in recent years as well, including a nationwide health care labor shortage and associated rising labor costs, rising fixed costs for equipment and supplies, in addition to severe inflationary pressures. And because most of Steward's patient service revenue is typically attributed to government-run health care programs, Steward is left with reimbursement rates far lower than that of non-government programs and those received by competing academic medical centers.

45.    On May 6, 2024, Steward filed for Chapter 11 protection under the U.S. Bankruptcy Code. *See In re Steward Health Care System LLC, et al.*, No. 24-90213-CML (S.D. Tex. May 6, 2024).

## II.    The Committee Issues The Subpoena To Dr. de la Torre As Part Of Its Coordinated Campaign To Villainize And Scapegoat Him

46.    In response to Steward's bankruptcy announcement, members of the Committee

have continuously tried to frame Dr. de la Torre as a criminal mastermind who destroyed Steward through avarice and deceit.  Indeed, members of the Committee and other members of Congress have engaged and continue to engage in a coordinated campaign of casting public aspersions and guilt to paint Dr. de la Torre as a villain and criminal, including calling for criminal investigations of him.  For example:

- "What Dr. de la Torre, Cerberus Capital Management and Medical Properties Trust did to Steward-owned hospitals in Massachusetts and across the country is unforgiveable."  (Statement of Sen. Edward Markey on June 11, 2024).[12]

- "Whether in Massachusetts or Malta, Dr. de la Torre used his credentials as a physician and CEO to sell Steward as a health care savior. Instead, he and his corporate enablers in private equity and real estate hollowed out a health system as they lined their pockets. Steward must be investigated, and I hope the company and the corporate executives who facilitated Steward's actions face consequences that reflect the lives, livelihoods, safety, and security that they stole from communities."  (Statement of Sen. Edward Markey on July 11, 2024).[13]

- "Enough is enough. It is time for Dr. de la Torre to get off of his yacht and explain to Congress how much he has gained financially while bankrupting the hospitals he manages."  (Statement of Sens. Bernard Sanders and Edward Markey on July 18, 2024).[14]

- "Under Dr. de la Torre's leadership, . . . Steward is the subject of a federal investigation over alleged fraud and violations of the Foreign Corrupt Practices Act. In 2022, Steward also settled False Claims Act violations with the U.S. Attorney's Office, alleging that Steward defrauded the U.S. government and the American taxpayer for medical services that they did not provide."  (Committee

---

[12]    Press Release, Senator Elizabeth Warren, Senators Warren, Markey Introduce the Corporate Crimes Against Health Care Act of 2024 (June 11, 2024), https://www.warren.senate.gov/newsroom/press-releases/senators-warren-markey-introduce-the-corporate-crimes-against-health-care-act-of-2024.
[13]    Press Release, Senator Edward Markey, Senator Markey Statement on Federal Investigation into Steward Health Care on Charges of Fraud and Corruption (July 11, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-federal-investigation-into-steward-health-care-on-charges-of-fraud-and-corruption.
[14]    Press Release, Senator Bernard Sanders, Sanders and Markey Joint Statement on Upcoming Vote to Investigate and Subpoena Steward Health Care on Bankruptcy (July 18, 2024), https://www.sanders.senate.gov/press-releases/news-sanders-and-markey-joint-statement-on-upcoming-vote-to-investigate-and-subpoena-steward-health-care-on-bankruptcy/.

Press Release on July 24, 2024).[15]

- "Dr. de la Torre and his corporate executive enablers at Steward, Cerberus, and Medical Properties Trust pocketed hundreds of millions of dollars and used it to engage in international schemes, spy on corporate rivals, and purchase luxury goods. His consistent refusals to offer basic answers has compounded Steward's actual bankruptcy with moral bankruptcy." (Statement of Sen. Edward Markey on July 25, 2024).[16]

47.     Then, on July 25, 2024, the Committee commenced an investigation ostensibly into "the bankruptcy of Steward Health Care" and issued the Subpoena to Dr. de la Torre, commanding him to appear before the Committee and testify at the Hearing.

48.     The Hearing, however, was neither designed nor intended to gather facts about Steward's bankruptcy proceedings.  Rather than serving any valid legislative purpose, the Subpoena and Hearing were merely vehicles concocted by the Committee to permit Members to vilify Dr. de la Torre in grandstanding speeches and solicit malicious testimony from hostile witnesses for the sole purpose of publicly humiliating and degrading Dr. de la Torre.

49.     Indeed, by the Committee's own admissions before issuance of the Subpoena, the Hearing was not designed to be a fact-gathering investigation, but was instead meant to be a forum where members of the Committee would seemingly "hold Dr. de la Torre accountable" for an alleged "elaborate Ponzi scheme" that "t[ook] over a massive hospital system and then loot[ed] it" for personal wealth, and the Subpoena would ensure that Dr. de la Torre's "day of reckoning [was]

---

[15]     Press Release, Senate HELP Committee, HELP Committee to Hold Bipartisan Vote to Launch Investigation into Bankruptcy of Steward Health Care and Subpoena CEO (July 24, 2024), https://www.help.senate.gov/chair/newsroom/press/media-advisory-help-committee-to-hold-bipartisan-vote-to-launch-investigation-into-bankruptcy-of-steward-health-care-and-subpoena-ceo.

[16]     Press Release, Senator Edward Markey, Senator Markey Votes to Compel Steward CEO Dr. Ralph de la Torre Testimony before HELP Committee (July 25, 2024), https://www.markey.senate.gov/news/press-releases/icymi-senator-markey-votes-to-compel-steward-ceo-dr-ralph-de-la-torre-testimony-before-help-committee.

going to arrive here on September 12th in the HELP Committee" as the Committee saw fit.[17]

50.     In the face of the Committee's and others' relentless public attacks and predetermined claims of criminal misconduct, on September 4, 2024—more than a week before the Hearing—Dr. de la Torre informed the Committee that he could not provide testimony at the Hearing because he was invoking his Fifth Amendment rights.

51.     In its response letter, dated September 5, 2024, the Committee *explicitly recognized* that Dr. de la Torre had invoked "[t]he Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee," but nevertheless commanded Dr. de la Torre "to appear for testimony" or face "criminal penalties" for his "[f]ailure to comply with the Committee's subpoena."  In so doing, the Committee laid bare its true motives: not to seek answers from Dr. de la Torre, who they understood would provide none, but rather to subject him to public, televised ridicule for exercising his constitutional right to remain silent.  The Committee's naked threat to Dr. de la Torre was intended to intimidate him from asserting his Fifth Amendment rights at all, or stand on those rights but appear at the hearing and have his invocation ridiculed and used against him by the Committee and its witnesses.  In either circumstance, the Committee violated Dr. de la Torre's constitutional rights by promising to bring civil and criminal contempt proceedings against Dr. de la Torre *unless* he provided sworn testimony at the Committee's Hearing or appeared in person to invoke those rights and have his silence used against him to paint him as a criminal.

52.     Moreover, the Committee's September 5 response made no inquiry into the scope or the basis for Dr. de la Torre's Fifth Amendment invocation, nor did it seek judicial intervention

---

[17]  *Executive Session of the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024)  (Statements of Sens. Bernard Sanders and Edward Markey on July 25, 2024).

to determine whether the invocation was valid.  The Committee also did not seek documents from Dr. de la Torre, nor did the Committee offer a closed hearing where Dr. de la Torre's confidentiality obligations could be honored.  It took no further action in pursuit of the facts or a resolution of Dr. de la Torre's Fifth Amendment invocation aside from threatening criminal punishment if Dr. de la Torre did not submit to the Committee's public shaming for exercising his Fifth Amendment rights.[18]

53.     The Committee's intent was not to hear the substance of Dr. de la Torre's testimony; indeed, requiring Dr. de la Torre to attend the hearing only to repeat his Fifth Amendment invocation serves no valid legislative purpose to the Committee.  Instead, the Committee hoped to lead the public to infer criminal misconduct—an inference from which Dr. de la Torre should be constitutionally protected—by coercing him to invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights.[19]

54.     It is well established that a witness need not take the witness stand at a trial for the sole purpose of creating a spectacle whereby the public may observe him invoke the Fifth Amendment.  The Committee's command that Dr. de la Torre be compelled to do so—under threat

---

[18]     *See* Press Conference, Senators Edward Markey and Elizabeth Warren (Sept. 5, 2024), https://www.markey.senate.gov/view/ralph-de-la-torre-is-saying-he-wont-comply-with-the-subpoena-to-testify-before-the-senate-help-c ("[I]f he continues to refuse to appear before the Committee, we will not stop until he answers for what he has done or is put behind bars.") (Statement of Sen. Edward Markey on Sept. 5, 2024).

[19]     This, indeed, was the stated goal for Senator Elizabeth Warren, who has been outwardly supportive of the Committee's efforts and said at a September 5, 2024 press conference that, "Congress has questions to ask and if Mr. de la Torre believes the answers will put him at risk for going to jail, he can take the Fifth Amendment ***right out in public for everyone to see***." *Id*.

of criminal prosecution for failure to comply—was another step in the Committee's unvarnished and unlawful crusade to deter, punish, and publicly humiliate Dr. de la Torre for continuing to invoke his Fifth Amendment rights, and it serves as a glaring example of the Committee's egregious and unlawful departure from the scope of its congressional investigative authority.

**III.     The Senate Continues To Punish Dr. de la Torre For Invoking His Fifth Amendment Rights In Response To The Subpoena**

55.     In response to Dr. de la Torre's exercise of his Fifth Amendment rights, on September 12, 2024, the Committee notified Dr. de la Torre via a public announcement that it would pursue two Contempt Resolutions against him: one civil contempt resolution to enforce the Subpoena and compel Dr. de la Torre's sworn testimony despite his invocation, and one criminal contempt resolution seeking to punish Dr. de la Torre for invoking his rights in the first place.

56.     Before the Committee voted on the Contempt Resolutions, however, on September 18, 2024, Dr. de la Torre reiterated his objections to the Committee, reminding the Committee that "on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

57.     On September 19, 2024, the Committee passed both Contempt Resolutions.  The first directs the president of the Senate to "certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate, detailing the refusal of Dr. Ralph de la Torre . . . to appear and testify before the Committee, to the United States Attorney for the District of Columbia, to the end that Dr. de la Torre be proceeded against in the manner and form provided by law." And the second directs the Senate legal counsel to bring "a civil action in the name of the Committee on Health, Education, Labor, and Pensions of the Senate to enforce the subpoena issued by the Committee to Dr. Ralph de la Torre, . . . [and] conduct all related civil contempt

proceedings."

58.     At the Committee meeting to vote on the Contempt Resolutions, there was not a single mention of Dr. de la Torre's invocation of the Fifth Amendment; nor in either Contempt Resolution was there any reference to Dr. de la Torre's invocation.  Indeed, both Contempt Resolutions characterize Dr. de la Torre's Fifth Amendment invocation as mere "objections to the compelled testimony" instead of fundamental constitutional protections that would unequivocally prohibit their actions.  Then, Defendants unanimously approved the Contempt Resolutions without any acknowledgement whatsoever of Dr. de la Torre's Fifth Amendment invocation.

59.     The Committee intends to compel Dr. de la Torre to appear and testify pursuant to the Subpoena, via the civil enforcement resolution, and to punish Dr. de la Torre *criminally* for asserting his Fifth Amendment rights, via the criminal resolution.  It is difficult to conceive of a more brazen assault on, and threat to, the rights enshrined in the Fifth Amendment.

60.     On September 23, 2024, Senator Sanders reported S. Res. 837 to the full Senate floor for a vote, which directs the Senate president to refer a criminal contempt proceeding against Dr. de la Torre for prosecution by the U.S. Attorney for the District of Columbia.

61.     On September 25, 2024, Senators Sanders, Cassidy, and Markey spoke on the Senate floor in favor of S. Res. 837.  Tellingly, none so much as acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights.  The Senators' soliloquies before the full Senate omitted several critical facts from the record: that Dr. de la Torre invoked his Fifth Amendment rights on September 4, 2024; that the Committee acknowledged such an invocation on September 5, 2024; that the Hearing proceeded *despite*, and indeed *as punishment for,* the invocation; that Dr. de la Torre reminded the Committee of his Fifth Amendment invocation after the Hearing; and that, *despite* the invocation and subsequent reminder, the Committee nonetheless held Dr. de la Torre

in contempt on September 19, 2024.  Unanimous Senate approval of the resolution without these critical facts is another act in a series of performances designed exclusively to expose, punish, degrade, pillory, and humiliate Dr. de la Torre, and certainly not to legislate.

62.     S. Res. 837 passed unanimously in the Senate on September 25, 2024 without as much as a passing reference to Dr. de la Torre's constitutional rights.  Attempting to punish Dr. de la Torre with a criminal contempt citation for the mere assertion of his Fifth Amendment rights and his unwillingness to bend to the Committee's threats is an abuse of power and a flagrant constitutional violation.

63.     The Committee now seeks the "criminal penalties" that it promised Dr. de la Torre it would.  Notably, the Committee has taken no further action in pursuit of the facts regarding "[t]he bankruptcy of Steward Health Care."  The Committee's ultimate goal was never to gather the facts, but to publicly shame and punish Dr. de la Torre for exercising his rights.  The Constitution prohibits the Committee's assault on Dr. de la Torre's rights under the Fifth Amendment, and this Court must hold Defendants accountable and quash the Subpoena.

## COUNT I
### (Declaratory Relief)
### Subpoena Does Not Advance a Valid Legislative Purpose

64.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 63 as if fully set forth herein.

65.     While Congress's investigatory powers are broad, a "congressional subpoena is valid only if it is 'related to, and in furtherance of, a legitimate task of the Congress.'"  *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)).  "The subpoena must serve a 'valid legislative purpose'; it must 'concern a subject on which legislation could be had.'"  *Id.* (alteration adopted).

66.     Congress has "no general authority to expose the private affairs of individuals

without justification in terms of the functions of the Congress." *Watkins*, 354 U.S. at 187. Moreover, "Congress may not issue a subpoena for the purpose of 'law enforcement,' because those powers are assigned under our Constitution to the Executive and the Judiciary." *Mazars*, 591 U.S. at 862-63 (quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955)).

67.     Moreover, a valid congressional subpoena will "adequately identif[y] its aims and explain[] why the [subject's] information will advance its consideration of the possible legislation," otherwise it will be "impossible to conclude that a subpoena is designed to advance a valid legislative purpose[.]" *Mazars*, 591 U.S. at 870-71 (2020) (citing *Watkins*, 354 U.S. at 201, 205).

68.     The Subpoena issued to Dr. de la Torre on July 25, 2024, lacks a valid legislative purpose because it is not related to a legitimate act of Congress.

69.     As alleged herein, Dr. de la Torre informed the Committee on September 4, 2024 that, among other things, Dr. de la Torre's constitutional rights, including his rights under the Fifth Amendment of the U.S. Constitution, protect him from being compelled to provide information that the Committee sought at the Hearing.

70.     The Committee's insistence that Dr. de la Torre "appear and assert the privilege" in public removed any semblance of a valid legislative purpose that the Subpoena may have had in the first place.  Because the Committee understood that Dr. de la Torre would not testify on Fifth Amendment grounds, the Subpoena no longer concerned a subject on which legislation could be had absent resolution of Dr. de la Torre's Fifth Amendment invocation.

71.     The Subpoena also lacks a valid legislative purpose because it was designed and used by the Committee only as a vehicle to punish and expose Dr. de la Torre for the personal aggrandizement of Defendants.  As alleged herein, Defendants have made clear that the purpose

of the Subpoena was merely a mechanism to compel his attendance at the Hearing to "hold Dr. de la Torre accountable" and subject him to "a day of reckoning" as the Committee saw fit, both of which are unlawfully punitive law enforcement actions that are beyond the Committee's congressional remit and investigative authority.

72.     Continued attempts to enforce the Subpoena also lack a valid legislative purpose due to Dr. de la Torre's invocation of his Fifth Amendment rights and privileges.  As alleged herein, in his September 4, 2024 letter to the Committee, Dr. de la Torre objected to and invoked constitutional concerns, including under the Fifth Amendment of the U.S. Constitution, with the Committee's Subpoena.  The Committee acknowledged Dr. de la Torre's invocation of his Fifth Amendment rights in a letter dated September 5, 2024, but insisted that Dr. de la Torre would face "criminal penalties" unless he appeared at the Hearing and invoked his constitutional rights on a question by question basis, despite understanding that he would answer no substantive questions concerning the subject matter of the Hearing.  Having him appear merely to assert his Fifth Amendment protections against compelled testimony served no legislative purpose nor any public-informing function.

73.     For the avoidance of doubt, on September 18, 2024, before the Committee voted on the Contempt Resolutions, Dr. de la Torre again objected to the Committee's Subpoena and reminded the Committee that he "cannot be permitted to provide sworn testimony at this time, . . . [because] on the advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing."

74.     The Committee voted on the Contempt Resolutions the next day without adequate recognition or acknowledgement of Dr. de la Torre's Fifth Amendment invocation.  At the time of

the Committee's vote on the Contempt Resolutions, the Committee was aware that the Subpoena could not compel Dr. de la Torre to provide any sworn testimony at the Hearing because of, among other things, his Fifth Amendment invocation. Accordingly, Defendants' continued attempts to compel Dr. de la Torre's testimony and punish him for declining to attend the Hearing have no purpose beyond punishing Dr. de la Torre for standing on his rights, which are not valid legislative purposes.

75. Moreover, the Committee's Subpoena does not "adequately identif[y] its aims and explain[] why [Dr. de la Torre's] information will advance its consideration of the possible legislation." *Mazars*, 591 U.S. at 870-71. Without such information, it is "'impossible' to conclude that a subpoena is designed to advance a valid legislative purpose." *Id.* The Committee's only written justification of the Subpoena and the Hearing—*i.e.*, to discuss "the bankruptcy of Steward Health Care"—is belied by the facts alleged herein that show the Subpoena and Hearing were designed to lead the public to infer criminal misconduct by coercing Dr. de la Torre to publicly invoke his Fifth Amendment rights in a televised shaming spectacle and remain silent in the face of vitriolic abuse from Senators and witnesses lobbing spiteful and venomous *ad hominem* attacks against him, none of which Dr. de la Torre could refute without abandoning his constitutional rights. The Subpoena lacked a valid legislative purpose, and as such, all of Defendants' actions to enforce the Subpoena—including purporting to "overrule" Dr. de la Torre's Fifth Amendment invocation, holding the September 12 Hearing, holding the September 19 Executive Session, and ultimately approving the Contempt Resolutions—are invalid *ultra vires* actions that lacked proper congressional authority.

76. The Subpoena and Contempt Resolutions are also invalid as *ultra vires* actions for the same reason.

77.     Because Defendants' actions were not within a legitimate legislative sphere, the Speech or Debate Clause is no bar to this Court's jurisdiction.  *See Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

## COUNT II
### (Declaratory and Injunctive Relief)
### The Committee's Actions Violated Dr. de la Torre's Fifth Amendment Rights

78.     Dr. de la Torre realleges and incorporates by reference paragraphs 1 to 77 as if fully set forth herein.

79.     The Fifth Amendment's protection that the Government may not compel a witness to give evidence against themselves applies to the Congressional setting.  *Watkins*, 354 U.S. at 188.  The Bill of Rights is applicable to a Congressional investigation as it is any other government investigation.

80.     Dr. de la Torre invoked the Fifth Amendment's constitutional protections in his September 4, 2024 letter to the Committee.[20]

81.     Despite such invocation, the Committee held a hearing on September 12, 2024, where Senator Sanders stated on the record that the Committee had "overruled [Dr. de la Torre's Subpoena] objections in their entirety and informed his attorneys that we expected to see Dr. de la Torre today."[21]  Senator Cassidy further stated that "today the chair and I will be asking the committee to report a resolution to authorize civil enforcement and criminal contempt proceedings against Dr. de la Torre requiring compliance with the subpoena."[22]  To date, however, the

---

[20]   *See* S. Rep. No. 118-230, at 2 (2024) ("On September 4, 2024 . . . Mr. Merton stated that Dr. de la Torre would not testify as commanded by the subpoena. Mr. Merton cited Dr. de la Torre's constitutional rights . . . .").

[21]   *See Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care: Hearing before the S. Comm. on Health, Educ., Labor, and Pensions*, 118th Cong. (2024).

[22]   *Id.*

Committee has not requested information on the basis or scope of Dr. de la Torre's invocation, nor has it challenged the merits of his invocation.

82.     The Committee's leadership publicly made clear that it expected Dr. de la Torre to testify at the hearing despite the Committee's knowledge that Dr. de la Torre *would not* testify at the hearing in reliance on his rights under the Fifth Amendment.  In holding the September 12 Hearing despite this knowledge, Defendants attempted to compel Dr. de la Torre "to be a witness against himself," in direct violation of the Fifth Amendment to the U.S. Constitution.

83.     Defendants failed to acknowledge Dr. de la Torre's valid invocation at its September 19 Executive Session, but continued to vote unanimously to direct the president of the Senate to report S. Res. 837 and its accompanying Report (S. Rep. No. 118-230) to the United States Attorney for the District of Columbia for further proceedings holding Dr. de la Torre in criminal contempt of Congress.

84.     Because Dr. de la Torre has already invoked his Fifth Amendment privilege, all further attempts at compelling him to testify are merely continued violations of the Fifth Amendment that must be enjoined.

85.     Likewise, Defendants' attempt to compel Dr. de la Torre's sworn testimony through the Subpoena as well as attempt to punish Dr. de la Torre for invoking his Fifth Amendment privileges are both unconstitutional, prohibited by law, and must be enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ralph de la Torre respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

      a)  Declaring that the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024 and all

subsequent actions related to enforcement of the Subpoena are invalid as *ultra vires* and unconstitutional, and therefore unenforceable.

b)  Declaring that Dr. de la Torre properly invoked his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

c)  Declaring that the vote of the Committee on September 19, 2024 approving the Contempt Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote were violations of Dr. de la Torre's Fifth Amendment rights.

d)  Entering an Order quashing the Subpoena.

e)  Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents—to include the Senate legal counsel— from attempting to civilly enforce the July 25, 2024 Subpoena to Dr. de la Torre.

f)  Enjoining the Senate Committee on Health, Education, Labor, and Pensions and any of its Members or agents from causing Dr. de la Torre to suffer from criminal punishment for invoking his Fifth Amendment rights in response to the Senate Committee on Health, Education, Labor, and Pensions' Subpoena to Dr. de la Torre issued July 25, 2024.

g)  With any such other and further relief as the Court deems proper.

Dated: September 30, 2024

Respectfully submitted,

By: */s/ William A. Burck*
William A. Burck (D.C. Bar No. 979677)
Alexander J. Merton (D.C. Bar No. 1029439)
    (*pro hac vice* forthcoming)
Kaylee A. Otterbacher (D.C. Bar No. 90018061)
    (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel to Plaintiff Dr. Ralph de la Torre*