## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| DR. RALPH DE LA TORRE, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:24-cv-02776-TNM |
| v. ) | |
| ) | |
| BERNARD SANDERS, in his capacity as ) | |
| Chairman of the Committee on Health, Education, ) | |
| Labor, and Pensions of the United States Senate, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Morgan J. Frankel, Bar #342022
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Attorneys for Defendants

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.     The HELP Committee's Investigative Authority . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.     The Committee's Investigation of the Bankruptcy of Steward Health
               Care and Issuance of the Subpoena to Dr. de la Torre . . . . . . . . . . . . . . . . . . . . 6

     C.     Dr. de la Torre's Failure to Appear at the Committee Hearing as Required
               by the Subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.     Senate Action to Certify Dr. de la Torre's Default to the United States
               Attorney for Proceedings under 2 U.S.C. §§ 192, 194 . . . . . . . . . . . . . . . . . . . . 10

     E.     The Filing of this Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.       THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT . . . . . . . . . . . . . . 14

     A.     The Speech or Debate Clause Bars This Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     B.     Plaintiff Lacks Standing to Bring His Claims Against the Committee and
               Its Members. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.      PLAINTIFF MAY NOT USE A CIVIL LAWSUIT AS A VEHICLE TO
       FORESTALL A CRIMINAL PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

     A.     Federal Courts Should Not Interfere With Ongoing Criminal Matters. . . . . . . . 27

     B.     If Plaintiff is Indicted, That Criminal Action Would Be the Appropriate
               Forum to Assert His Legal Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

III.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . 32

     A.     The Committee's Subpoena to Plaintiff Was a Duly-Authorized Subpoena
               With a Valid Legislative Purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

     B.     The Committee Did Not Violate Plaintiff's Fifth Amendment Rights. . . . . . . . 35

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Illinois*, 478 U.S. 364 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Allen v. Wright*, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*\*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . 37

*\*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 34

*Bowles v. United States*, 439 F.2d 536 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) . . . . . . . . . . . 14

*California v. Texas*, 593 U.S. 659 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*\*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 28, 29, 31, 32

*\*Doe v. McMillan*, 412 U.S. 306 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15-19

*\*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . . . . 2, 4, 5, 14-20, 33-35

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fletcher v. United States*, 332 F.2d 724 (D.C. Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18, 19, 23

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29, 30

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Jenkins v. Anderson*, 447 U.S. 231 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*\*Judicial Watch v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . 2, 4, 14, 15, 17, 33

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Manafort v. U.S. Dep't of Just.,* 311 F. Supp. 3d 22 (D.D.C. 2018) . . . . . . . . . . . . . . . 28, 30, 32

*Massie v. Pelosi*, 72 F.4th 319 (D.C. Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18, 19

*McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16, 18

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 17

*McSurely v. McClellan*, 553 F.2d 1277 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Meadows v. Pelosi*, 639 F. Supp. 3d 62 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Miranda v. Gonzales*, 173 F. App'x 840 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Musgrave v. Warner*, 104 F.4th 355 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 34

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . 21

*North v. Walsh*, 656 F. Supp. 414 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ohio v. Reiner*, 532 U.S. 17 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Porteous v. Baron*, 729 F. Supp. 2d 158 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279
    (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Raines v. Byrd*, 521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 20

*Reps. Comm. for Freedom of Press v. AT&T Co.*, 593 F.2d 1030 (D.C. Cir. 1978) . . . . . . . . . 30

*Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080
    (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Tenney v. Brandhove*, 341 U.S. 367 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 17

*United States v. Argomaniz*, 925 F.2d 1349 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Armstrong*, 517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Bannon,* 101 F.4th 16 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . 26, 31, 32, 35

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Cefalu,* 338 F.2d 582 (7th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Dick*, 694 F.2d 1117 (8th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Duran*, 884 F. Supp. 573 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Friedman,* 445 F.2d 1076 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Navarro,* 651 F. Supp. 3d 212 (D.D.C. 2023) . . . . . . . . . . . . . . . . . . . . . . . 26, 32

*United States v. Reese*, 561 F.2d 894 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Thornton*, 733 F.2d 121 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Washington*, 431 U.S. 181 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Williams*, 504 U.S. 36 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,*
      454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Watkins v. United States*, 354 U.S. 178 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 34

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Younger v. Harris,* 401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-29

**STATUTES**

2 U.S.C. § 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2 U.S.C. § 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23, 25

**CONSTITUTIONAL AUTHORITIES**

U.S. Const. art. I, § 5, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CONGRESSIONAL MATERIALS**

*Backpage.com's Knowing Facilitation of Online Sex Trafficking: Hearing before*
*the Permanent Subcomm. on Investigations of the Comm. on Homeland*
*Security and Governmental Affairs*, S. Hrg. No. 115-6, 115th Cong. (2017) . . . . . . . . . 40

HELP Committee Executive Session, Contempt Resolutions, Sept. 19, 2024. . . . . . . . . . . . . . . 7

HELP Committee Executive Session, Help Committee Agenda to be Considered,
July 25, 2024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

HELP Committee Rule 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mismanagement of Contracts at Arlington National Cemetery: Hearing before the*
*Ad Hoc Subcomm. On Contracting Oversight of the Comm. on Homeland*
*Security and Governmental Affairs*, S. Hrg. No. 111-1008, 111th Cong. (2010) . . . . . . 39

*Money Laundering and Foreign Corruption: Enforcement and Effectiveness of the*
*Patriot Act: Hearing before the Permanent Subcomm. on Investigations of the*
*Comm. on Governmental Affairs*, S. Hrg. No. 108-633, 108th Cong. (2004) . . . . . . . . . 40

*No Guarantees: As Pension Plans Crumble, Can PBGC Deliver? Hearing before the*
*Special Comm. On Aging*, S. Hrg. No. 111-153, 111th Cong. (2009) . . . . . . . . . . . . . . . 40

*Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the
Senate Comm. on Health, Education, Labor, and Pensions, S. Rep. No.
118-230 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-11, 34

S. Res. 837, 118th Cong. (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Senate Rule XXV.1(*l*)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 33

Senate Rule XXV.1(*l*)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 33

Senate Rule XXVI.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Tax Haven Banks and U.S. Tax Compliance: Hearings before the Permanent*
*Subcomm. on Investigations of the Comm. on Homeland Security and*
*Governmental Affairs*, S. Hrg. No. 110-614, 110th Cong. (2008) . . . . . . . . . . . . . . . . . 40

*The Hidden Operators of Deceptive Mailings: Hearing before the Permanent*
*Subcomm. on Investigations of the Comm. on Governmental Affairs*, S. Hrg.
No. 106-181, 106th Cong. (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**MISCELLANEOUS AUTHORITIES**

D.C. Bar Legal Ethics Comm., Op. No. 31 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

D.C. Bar Legal Ethics Comm., Op. No. 358 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

_____
* Cases and authorities chiefly relied upon are denoted with an asterisk.

## INTRODUCTION

Plaintiff Dr. Ralph de la Torre, M.D., is the founder, and former Chairman and Chief Executive Officer of Steward Health Care System, LLC ("Steward Health Care"), a large health care company that owns hospitals in multiple states "serv[ing] millions of patients and employ[ing] thousands of physicians, nurses, and staff." Compl. ¶¶ 1, 40, 42. In May of this year, Steward Health Care filed for bankruptcy. *Id.* ¶ 45. Concerned about the serious implications for the health care system presented by this bankruptcy, the Senate Committee on Health, Education, Labor, and Pensions ("HELP Committee" or "the Committee") initiated an investigation into Steward Health Care's bankruptcy and the matters leading to it. As part of that investigation, the Committee issued a subpoena requiring plaintiff to appear and testify at a hearing before the Committee on September 12, 2024.

"It is unquestionably the duty of all citizens," the Supreme Court has declared, "to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action. It is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees and to testify fully with respect to matters within the province of proper investigation." *Watkins v. United States*, 354 U.S. 178, 187-88 (1957). Plaintiff chose, however, to disregard his "unremitting obligation" and refused to appear at the Committee's hearing – even after the Committee had overruled his objections to its subpoena and declined to excuse his appearance.

After the hearing, the Committee reported to the Senate, and the Senate adopted, a resolution to certify to the United States Attorney for presentation to a grand jury plaintiff's failure to comply with the Committee's subpoena. Plaintiff then filed this suit against the HELP Committee, the Chairman and Ranking Member of the Committee, and eighteen other Senators

who are members of the Committee to prevent any sanction for his contempt of the Committee's subpoena, based on his claims that the subpoena lacked a valid legislative purpose and that requiring him to appear for testimony violated his Fifth Amendment right against self-incrimination.  For relief, plaintiff seeks an order declaring that the subpoena and the Committee's actions related to its enforcement are invalid and unconstitutional, declaring that he properly invoked his Fifth Amendment rights in response to the subpoena, declaring that the Committee violated his Fifth Amendment rights, and enjoining the Committee from enforcing the subpoena and from causing him "to suffer from criminal punishment for invoking his Fifth Amendment rights[.]"  Compl. at 27-28, Prayer for Relief.

Plaintiff's suit against defendants for subpoenaing him and then voting to report resolutions to the Senate regarding his default should be rejected for both lack of jurisdiction and failure to state a claim.  First, the Court lacks jurisdiction because (a) plaintiff's claims are absolutely barred by the Speech or Debate Clause and (b) plaintiff does not have standing to assert his claims against the defendants.

The Speech or Debate Clause of the Constitution provides Senators and Senate committees absolute immunity from suits for their legislative acts.  The activities of the defendants that plaintiff challenges here – the issuance of the Committee's subpoena, the conduct of the Committee during its September 12 hearing, and the Committee Members' voting to report resolutions to the Senate – are all acts that the Supreme Court and the D.C. Circuit have found to fall squarely within the legislative sphere protected by the Clause.  *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975); *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973); *Judicial Watch v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021).  As such, defendants are absolutely immune from plaintiff's suit.

2

The Court also lacks Article III jurisdiction here because plaintiff's complaint fails to demonstrate that he has standing to sue the defendants. Plaintiff's allegations that the subpoena is invalid and he is being punished for asserting his Fifth Amendment rights "by being tarred and feathered live at a public hearing, by being held in contempt, [or] by being prosecuted by the United States," Compl. ¶ 11, present no actual, concrete, legally-cognizable injury-in-fact that is fairly traceable to the defendants or redressable by a judgment against them.

Second, plaintiff has an adequate forum to raise his objections should he need to as part of any criminal action that may be brought against him. In fact, this case is a transparent and improper attempt to interfere in potential criminal proceedings through an ancillary civil suit. Plaintiff's complaint seeks to preemptively foreclose any indictment against him for his failure to comply with the subpoena and appear at the Committee hearing. The D.C. Circuit has held that courts should not entertain civil suits seeking equitable remedies to prevent federal criminal prosecutions. *See Deaver v. Seymour*, 822 F.2d 66, 68-69 (D.C. Cir. 1987) ("Even were we disposed to agree entirely with appellant's constitutional argument, we think he has no right to an injunction restraining a pending indictment in a federal court."). Rather, persons facing potential criminal indictment will have an opportunity to raise any legal defenses they may have, including constitutional ones, as part of any criminal action that may be brought against them, but they may not short circuit the criminal process by bringing "an independent civil suit." *Id.* at 71.

Finally, plaintiff's complaint should be dismissed because it fails to state a claim as a matter of law. As to the complaint's first count challenging the subpoena's validity as serving no legislative purpose, the HELP Committee's decision to investigate the bankruptcy of a company that owned hospitals in multiple states plainly falls within the jurisdiction of the Committee to study and report on matters relating to health and public welfare, *see* Senate Rule XXV.1(*l*)(2),

and the decision to subpoena the CEO of that company as part of that investigation satisfies the limited review courts apply in determining that a congressional subpoena has a valid legislative purpose. *See Eastland*, 421 U.S. at 506; *Judicial Watch*, 998 F.3d at 992. The complaint's second count, alleging that plaintiff is being punished for not appearing at the Committee's hearing in violation of his Fifth Amendment rights, also lacks merit as a matter of law. Unlike criminal trials, where defendants have a right under the Fifth Amendment to decline to take the stand and testify, a congressional hearing is not a criminal trial and witnesses appearing at such hearings are not criminal defendants. Just like witnesses in other proceedings such as grand juries, witnesses at congressional hearings do not have a Fifth Amendment right excusing them from appearing entirely when summoned to testify, but, rather, must appear and assert any Fifth Amendment privilege to specific questions put to them. The Committee's insistence that plaintiff do so here did not violate the Fifth Amendment.

Accordingly, plaintiff's complaint should be dismissed for lack of jurisdiction and failure to state a claim.

## BACKGROUND

### A.    The HELP Committee's Investigative Authority

The Supreme Court has long recognized that "[t]he power of the Congress to conduct investigations is inherent in the legislative process[,]" *Watkins v. United States*, 354 U.S. 178, 187 (1957), for "[w]ithout information, Congress would be shooting in the dark, unable to legislate wisely or effectively." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020) (internal quotation marks omitted); *see also McGrain v. Daugherty*, 273 U.S. 135, 175 (1927) ("A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change[.]"). In situations "where the

legislative body does not itself possess the requisite information – which not infrequently is true – recourse must be had to others who do possess it. " *McGrain*, 273 U.S. at 175.  Furthermore, because "mere requests for such information often are unavailing, and . . . information which is volunteered is not always accurate or complete[,] . . . some means of compulsion are essential to obtain what is needed." *Id.*  Hence, the congressional power of inquiry necessarily includes "process to enforce" that power, *id.* at 174, and "each House has power 'to secure needed information' in order to legislate." *Mazars USA*, 591 U.S. at 862; *see also Eastland*, 421 U.S. at 504 ("Issuance of subpoenas . . . has long been held to be a legitimate use by Congress of its power to investigate.").

Congress may investigate any subject about which it may legislate if it "would be materially aided by the information which the investigation was calculated to elicit." *McGrain*, 273 U.S. at 177.  Accordingly, Congress' investigatory power is broad, "encompass[ing] inquiries concerning the administration of existing laws as well as proposed or possibly needed statutes.  It includes surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them." *Watkins*, 354 U.S. at 187; *accord Mazars USA*, 591 U.S. at 862.  As the Supreme Court has explained: "The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or decide upon due investigation not to legislate. . . ." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

The Senate, acting pursuant to the Rulemaking Clause of the Constitution, art. I, § 5, cl. 2, has established various standing committees, including the HELP Committee, and has empowered "[e]ach such committee" to "make investigations into any matter within its jurisdiction," and "report such hearings as may be had by it."  Senate Rule XXVI.1 of the

Standing Rules of the Senate, *reprinted in* Senate Manual, S. Doc. No. 117-1, at 41 (2022),

*available at* https://www.govinfo.gov/app/details/CDOC-117sdoc1/CDOC-117sdoc1.  In

conducting such investigations, the Senate authorizes its committees "to hold [] hearings," "to

take [] testimony," and "to require by subpoena or otherwise the attendance of [] witnesses and

the production of [] correspondence, books, papers, and documents[.]"  *Id.*

The Senate has granted the HELP Committee jurisdiction over "[m]easures relating to

education, labor, health, and public welfare."  Senate Rule XXV.1(*l*)(1), S. Doc. No. 117-1, at

33.  In addition, the Senate has directed that the "committee shall also study and review, on a

comprehensive basis, matters relating to health, education and training, and public welfare, and

report thereon from time to time."  Senate Rule XXV.1(*l*)(2).

**B.    The Committee's Investigation of the Bankruptcy of Steward Health Care and Issuance of the Subpoena to Dr. de la Torre**

Steward Health Care System, LLC, was founded in 2010 by Dr. Ralph de la Torre, who

served as its Chairman and CEO.  Compl. ¶ 1.  Steward Health Care acquired several hospitals in

2010 and soon expanded to own hospitals in other states.  *Id.* ¶ 42.  On May 6, 2024, Steward

Health Care filed for chapter 11 bankruptcy.  *Id.* ¶¶ 2, 43-45.

On July 25, 2024, pursuant to its authority under Senate rules, and in accordance with the

Committee's rules of procedure, the HELP Committee, by a vote of 20-1, initiated an

investigation into the cause and effects of the Steward Health Care bankruptcy.  *See* HELP

Committee Executive Session, Agenda to be Considered, July 25, 2024, *available at*

https://www.help.senate.gov/hearings/help-committee-agenda-to-be-considered; HELP

Committee Rule 17, *reprinted in* Authority and Rules of Senate Committees, 2023-2024, S. Doc.

No. 118-4, at 128 (2023), *available at* https://www.govinfo.gov/app/details/CDOC-

118sdoc4/CDOC-118sdoc4; Compl. ¶ 47.  As Dr. de la Torre had already declined an invitation

to appear before the Committee voluntarily to discuss this subject, the Committee voted to authorize the Chair, Senator Bernard Sanders, to issue a subpoena to require the attendance and testimony of Dr. de la Torre before the Committee at a hearing on September 12, 2024. *See Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the Senate Committee on Health, Education, Labor, and Pensions, S. Rep. No. 118-230, at 2 (2024) [attached hereto as Exhibit A, and hereinafter referred to as "HELP Committee Report"]; HELP Committee Executive Session, Contempt Resolutions, Sept. 19, 2024, https://www.help.senate. gov/hearings/blank (Subpoena approved by vote of 16-4); Compl. ¶ 47.  Chairman Sanders issued that subpoena on July 25, 2024, *see* HELP Committee Report, S. Rep. No. 118-230, at 2 (2024) (subpoena is found at Appendix I of the report), and it was served on Dr. de la Torre that day. *Id.* at 2, App. II (e-mail of counsel for Dr. de la Torre confirming acceptance of service).

On September 4, 2024, over 40 days after service of the subpoena and only eight days before the Committee's hearing, Dr. de la Torre's counsel sent the Committee a letter notifying the Committee that "Dr. de la Torre [would] not participate in the Committee's September 12, 2024 hearing[.]"  *See* Letter from Alexander J. Merton to Chairman Sanders, Sept. 4, 2024 ["Sept. 4 Merton letter"], *reprinted in* HELP Committee Report at 14, App. III.  Counsel's letter offered four reasons for Dr. de la Torre's decision not to attend the hearing.  First, counsel urged that any testimony by Dr. de la Torre should await the completion of proceedings regarding Steward Health Care in the U.S. Bankruptcy Court.  *See* HELP Committee Report at 12.  Second, counsel stated that an independent subcommittee of Steward's board of managers handling its bankruptcy had informed Dr. de la Torre that he has no authority to speak on behalf of the company regarding "the administration of the Company's chapter 11 cases" or related matters, as to which "he lacks authority, involvement, or personal knowledge."  *Id.* at 13, 18-19, App. III

(Letter to William Burck, Esq., and Alexander J. Merton, Esq., counsel for Dr. de la Torre, from David J. Lender, August 28, 2024).  Third, counsel pointed to a federal court order prohibiting parties to the bankruptcy case from disclosing statements, negotiations, and discussions taking place in mediation or information received from other parties during the mediation.  *Id.* at 13 (Sept. 4 Merton letter).

Fourth and finally, counsel asserted that requiring Dr. de la Torre to testify at its hearing "smacks of a veiled attempt to sidestep Dr. de la Torre's constitutional rights by seeking sworn testimony on matters for which the Committee has pre-determined his guilt[,]" and his "testimony before the Committee under these circumstances would be wholly inappropriate."  *Id.* at 14 (Sept. 4 Merton letter) (mentioning "Dr. de la Torre's core constitutional rights").

The Chair and Ranking Member, on behalf of the Committee, promptly responded to Dr. de la Torre's counsel on September 5, 2024, a week before the scheduled hearing, informing him that "[t]o the extent your letter is either a request for Dr. de la Torre to be excused or an objection to appearing before the Committee, that request is denied and any objection to attending the hearing overruled."  Letter to Alexander J. Merton from Chairman Bernard Sanders and Ranking Member Bill Cassidy, M.D., Sept. 5, 2024, *reprinted in* HELP Committee Report, S. Rep. No. 118-230, at 28, App. IV.   The Chair and Ranking Member explained that neither (a) the pending bankruptcy proceeding, (b) the order covering matters disclosed in mediation, nor (c) the admonishment from attorneys for the independent Board of Managers subcommittee that Dr. de la Torre was not authorized to speak on behalf of the company regarding the bankruptcy proceedings relieved Dr. de la Torre of his duty to comply with the duly-authorized Committee subpoena.  These excuses, the Chair and Ranking Member stated, "are not cognizable legal grounds for your client's refusing to appear at the Committee's hearing as summoned and to

answer pertinent questions based on his personal, first-hand knowledge."  HELP Committee
Report at 29.

In response to the concern raised about Dr. de la Torre's constitutional rights, the Chair
and Ranking Member explained that "[t]he Fifth Amendment privilege against self-incrimination
. . . does not permit witnesses to refuse to appear when summoned to testify before a
congressional committee, but, rather, that constitutional privilege must be asserted by witnesses
in declining to answer specific questions put to them."  *Id.* at 28.  Accordingly, "the Committee
rejects any suggestion that Dr. de la Torre can refuse to appear for testimony before the
Committee on this ground."  *Id.* at 28-29.  The letter assured counsel that "the Committee
respects the constitutional rights of witnesses," but "it requires that the witness appear and assert
the privilege in response to specific questions."  *Id.* at 29.

### C.    Dr. de la Torre's Failure to Appear at the Committee Hearing as Required by the Subpoena

On September 12, 2024, at 10:00 a.m., the Committee convened its hearing "Examining
the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient
Care."  170 Cong. Rec. D875 (daily ed. Sept. 12, 2024).  The Committee was scheduled to hear
from five witnesses: first, Dr. de la Torre, and, on a second panel, two nurses at Steward Health
Care-owned hospitals, a Louisiana state representative, and the Mayor of West Monroe,
Louisiana. *See* https://www.help.senate.gov/hearings/examining-the-bankruptcy-of-
steward-health-care-how-management-decisions-have-impacted-patient-care.  In his opening
statement, Chairman Sanders noted the importance of the Committee's investigation of Steward
Heath Care's bankruptcy, which involved private equity investment in health care providers.  As
the Chairman explained, "[t]he collapse of Steward Healthcare [sic] is just one extreme example
of the damaging role[,] in my view, that private equity is having on our healthcare system," and

9

"[t]he issue of private equity and healthcare is an issue this committee must look into."   HELP

Committee Report at 37, 38, App. V (Excerpt of Transcript of Sept. 12, 2024 HELP Committee

Hearing).  Ranking Member Cassidy pointed out that "Steward's bankruptcy has nationwide

implications impacting more than 30 hospitals across eight states," and it was important to

understand what occurred in this matter because "[w]e need to keep this from happening again."

*Id.* at 39-40.  To do that, the Committee "needs answers" in order to gather the necessary facts

"to inform legislative solutions."  *Id.* at 40.

Following opening statements, the Chair called the first witness, Dr. de la Torre, and

noted that Dr. de la Torre was not present at the hearing in default of the Committee's subpoena.

*See id.* at 41.  The Chair then called, and the Committee took testimony from, the remaining

witnesses.  *See id.*; 170 Cong. Rec. D875.

### D.    Senate Action to Certify Dr. de la Torre's Default to the United States Attorney for Proceedings under 2 U.S.C. §§ 192, 194

After Dr. de la Torre failed to appear at the September 12, 2024 hearing, the Committee

noticed an executive session meeting for September 19, 2024, to consider and vote on reporting

to the Senate two resolutions addressing Dr. de la Torre's failure to comply with the subpoena.

The resolutions were: (1) a resolution authorizing the President of the Senate to certify to the

United States Attorney for presentation to a grand jury the report of the HELP Committee

regarding the refusal of Dr. de la Torre to appear and testify before the Committee; and (2) a

resolution to direct the Senate Legal Counsel to bring a civil action to enforce the subpoena.  *See*

https://www.help.senate.gov/hearings/blank.

On September 18, a day before the Committee's executive session meeting and six days

after the Committee's hearing, Dr. de la Torre's counsel sent a second letter to the Committee

relaying, again, the same concerns with requiring Dr. de la Torre to testify before the Committee

and for the first time stating explicitly that "on advice of counsel, Dr. de la Torre invokes his procedural and substantive rights under the Fifth Amendment to the Constitution." Letter to Chairman Bernie Sanders from Alexander J. Merton, Sept. 18, 2024, *reprinted in* 170 Cong. Rec. S6406 (daily ed. Sept. 25, 2024); Compl. ¶ 56.

At the executive session meeting the next day, the Committee agreed, by votes of 20-0, to report both resolutions to the Senate. *See* https://www.help.senate.gov/hearings/blank. Chairman Sanders reported Senate Resolution 837 to direct the President of the Senate to certify Dr. de la Torre's default to the U.S. Attorney in Washington, D.C. for prosecution. *See* Compl. ¶ 60; 170 Cong. Rec. S6332 (daily ed. Sept. 23, 2024). That resolution provides that:

> [P]ursuant to sections 102 and 104 of the Revised Statutes (2 U.S.C. 192, 194), the President of the Senate shall certify the report of the Committee on Health, Education, Labor, and Pensions of the Senate, detailing the refusal of Dr. Ralph de la Torre, Chairman and Chief Executive Officer of Steward Health Care Systems LLC, to appear and testify before the Committee, to the United States Attorney for the District of Columbia, to the end that Dr. de la Torre be proceeded against in the manner and form provided by law.

*See* S. Res. 837, 118th Cong. (2024), *reprinted in* 170 Cong. Rec. S6334 (daily ed. Sept. 23, 2024) [attached as Exhibit B]. The resolution was accompanied by the HELP Committee Report, S. Rep. No. 118-230, detailing Dr. de la Torre's failure to appear in compliance with the Committee's subpoena.

Two days later, on September 25, Chairman Sanders and Ranking Member Cassidy, on behalf of the Committee, responded to Dr. de la Torre's counsel's letter of September 18. The Chair and Ranking Member's letter reminded counsel that, "had Dr. de la Torre appeared" in accordance with his legal duty as required by the subpoena, "he would have had a full opportunity to assert his Fifth Amendment right against self-incrimination in response to questions posed to him by members of the Committee that implicated that right." Letter to

Alexander J. Merton from Chairman Bernard Sanders and Ranking Member Bill Cassidy, M.D., Sept. 25, 2024, *reprinted in* 170 Cong. Rec. S6406 (daily ed. Sept. 25, 2024). Instead, "Dr. de la Torre willfully placed himself in default of the Committee's subpoena[,]" and "[counsel's] effort to assert the Fifth Amendment, on your client's behalf, after the fact, and generally rather than in response to specific questions, is untimely and inadequate and does not cure your client's default." *Id.* The letter further informed counsel that the Committee had voted to report two resolutions to the Senate regarding Dr. de la Torre's default. *Id.*

Later that day, the Senate agreed to Senate Resolution 837 directing the President of the Senate to certify to the U.S. Attorney for the District of Columbia the report of Dr. de la Torre's failure to comply with the Committee's subpoena. 170 Cong. Rec. S6407 (daily ed. Sept. 25, 2024) (agreeing to resolution without objection); Compl. ¶ 62.[1] Pursuant to that resolution, the President Pro Tempore of the Senate certified the contempt to the U.S. Attorney.

### E.    The Filing of this Lawsuit

On September 30, 2024, Dr. de la Torre filed suit against the HELP Committee, Chairman Sanders, Ranking Member Cassidy, and 18 additional Members of the Committee who voted to report the criminal contempt resolution. Compl. ¶¶ 19-39. His complaint alleges that the Committee "has bulldozed over Dr. de la Torre's constitutional rights and has sought to make him pay a steep price for invoking [his Fifth Amendment rights.]" *Id.* ¶ 6; *see also id.* ¶ 11 ("Dr. de la Torre is being punished for invoking his Fifth Amendment rights in response to the Subpoena[.]"). Specifically, plaintiff's complaint alleges that the Committee exceeded its authority and violated Dr. de la Torre's right against self-incrimination by requiring Dr. de la

_____

[1] The Senate has taken no action on the resolution to direct the Senate Legal Counsel to initiate a civil action against Dr. de la Torre to enforce the subpoena.

Torre's appearance at the hearing by subpoena, by voting to report resolutions to the Senate regarding his default, and by the Senate's approval of the resolution certifying his default to the U.S. Attorney for action under 2 U.S.C. §§ 192, 194. Compl. ¶¶ 6, 11, 62.

The complaint asserts two legal claims against the defendants. First, in Count I, Dr. de la Torre claims that the subpoena "lacks a valid legislative purpose[,]" *id.* ¶ 68, and, therefore, exceeded the Committee's authority. Because, according to Dr. de la Torre, the subpoena itself was invalid, "all of Defendants' actions to enforce the Subpoena – including purporting to 'overrule' Dr. de la Torre's Fifth Amendment invocation, holding the September 12 Hearing, holding the September 19 Executive Session, and ultimately approving the Contempt Resolutions – are invalid *ultra vires* actions that lacked proper congressional authority." *Id.* ¶ 75 and Count I. In Count II, Dr. de la Torre asserts that, once he had indicated his intent to invoke his Fifth Amendment right against being compelled to give evidence against himself, the Committee's "attempt to compel Dr. de la Torre's sworn testimony" at the September 12 hearing and its "attempt to punish Dr. de la Torre" for failing to appear violated his Fifth Amendment rights. *Id.* ¶¶ 78-85, Count II.

For relief, Dr. de la Torre requests that the Court: (a) "enter[] an Order quashing the subpoena"; (b) declare that the subpoena and all subsequent actions related to its enforcement "are invalid as *ultra vires* and unconstitutional," and "that the vote of the Committee . . . approving the Contempt Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote were violations of Dr. de la Torre's Fifth Amendment rights"; and (c) enjoin the HELP Committee and any of its Members or agents "from attempting to civilly enforce the . . . Subpoena to Dr. de la Torre" and "from causing Dr. de la Torre to suffer from criminal punishment for invoking his Fifth Amendment rights in response to the [Committee] Subpoena[.]" Compl. at 27-28, Prayer for Relief; *see also id.* ¶ 12.

## ARGUMENT

I.    **THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT**

A.    **The Speech or Debate Clause Bars This Suit**[2]

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1.  The purpose of the Clause, as the courts have explained, "is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution."  *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995); *see also McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal quotation marks and citation omitted); *Judicial Watch, Inc.*, 998 F.3d at 991 (the Clause's purpose is "to preserve the independence and thereby the integrity of the legislative process." (quoting *United States v. Brewster*, 408 U.S. 501, 524 (1972)).  "The Clause does so by preventing 'intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'" *McCarthy*, 5 F.4th at 38 (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)).  By preserving the

---

[2]  The D.C. Circuit has stated that Speech or Debate Clause immunity from suit is jurisdictional.  *See Massie v. Pelosi*, 72 F.4th 319, 321 (D.C. Cir. 2023) ("The Clause's immunity from suit presents a jurisdictional issue"), *cert. denied*, 144 S. Ct. 1005 (2024); *Clyde v. Walker*, No. 22-5263, 2023 WL 6939987, at *1 (D.C. Cir. Oct. 20, 2023) (rejecting argument that Clause is not jurisdictional but merely an affirmative defense, holding that "[t]he Clause's immunity from suit is jurisdictional" ); *Judicial Watch v. Schiff*, 998 F.3d 989, 993 (D.C. Cir. 2021) (holding suit barred by Speech or Debate Clause and remanding "to the district court to dismiss the complaint without prejudice inasmuch as the dismissal is for want of subject-matter jurisdiction."); *Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015) (referring to Speech or Debate Clause as jurisdictional).

independence of the legislative process, the Clause serves to "reinforc[e] the separation of powers so deliberately established by the Founders.'" *Judicial Watch*, 998 F.3d at 991 (quoting *Eastland*, 421 U.S. at 502).

To effectuate this independence, the Speech or Debate Clause provides Members of Congress with absolute immunity for all actions taken within the "legislative sphere." *See Eastland*, 421 U.S. at 502-03. The Clause equally covers committees of Congress as it does individual Members. *See Musgrave v. Warner*, 104 F.4th 355, 361-65 (D.C. Cir. 2024) (holding that Speech or Debate Clause barred suit against Senate committee and its chairman seeking a legislative document); *Judicial Watch*, 998 F.3d at 991-93 (same). The immunity provided by the Clause, the Supreme Court has long held, "provides protection against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." *Eastland*, 421 U.S. at 502-03.

In applying the Speech or Debate Clause, the Supreme Court has counseled that, because "the guarantees of that Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). And so, "[w]ithout exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *Judicial Watch*, 998 F.3d at 991; *Rangel*, 785 F.3d at 23. Accordingly, "although it speaks of 'Speech or Debate,'" courts have recognized that the Clause "extends to protect all 'legislative acts.'" *Judicial Watch*, 998 F.3d at 991 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)); *McCarthy*, 5 F.4th at 39 ("[T]he Clause applies not just to speech and debate in the literal sense, but to all 'legislative acts.'"). That is, the Clause provides immunity for all actions "within the sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 503, which encompas-

ses "anything 'generally done in a session of the House by one of its members in relation to the

business before it.'"  *Doe v. McMillan*, 412 U.S. at 311 (quoting *Kilbourn v. Thompson*, 103 U.S.

168, 204 (1881)).  The Clause, thus, protects

> the deliberative and communicative processes by which Members participate in
> committee and House proceedings with respect to the consideration and passage
> or rejection of proposed legislation or with respect to other matters which the
> Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *McCarthy*, 5 F.4th at 39.

Where the Clause's protection applies, it is absolute.  *See Eastland*, 421 U.S. at 503

("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the

Speech or Debate Clause is an *absolute* bar to interference.") (emphasis added); *Massie*, 72 F.4th

at 323 (stating that "immunity from suit is 'absolute' as to legislative acts").  Consequently,

"when the actions upon which a plaintiff seeks to predicate liability are legislative acts, the

Speech or Debate Clause operates as a jurisdictional bar, conferring absolute immunity from

suit."  *Musgrave*, 104 F.4th at 361 (internal quotation marks and citation omitted).

Plaintiff here sues defendants – a Senate committee and its Members – for actions taken as

part of a congressional investigation.  Specifically, he challenges the issuance of the subpoena to

him and the Committee's voting to report resolutions for criminal contempt and civil enforcement

to the Senate.  *See* Compl. ¶ 19 (Chairman Sanders sued because "[t]he Subpoena challenged

herein was issued pursuant to his authority and signed by him," and because "[h]e voted

affirmatively on the Committee's Contempt Resolutions on September 19, 2024"); *id.* ¶¶ 20-38

(Ranking Member Cassidy and other Members of Committee named as defendants because they

voted affirmatively for the "Committee's Contempt Resolutions[.]").  Plaintiff's complaint also

attacks the Committee's proceedings at its September 12, 2024 hearing and its September 19, 2024

executive session where the Committee voted to report the two resolutions.  *See id.* ¶¶ 81-83.

Under long-established precedent, these actions all fall squarely within the legislative sphere protected by the Clause. Congressional investigations, and subpoenas in support of such investigations, are part of the legislative power exercised by the House and Senate under the Constitution, *see Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020); *McGrain*, 273 U.S. at 174-75, and, pursuant to delegations in the rules of those Chambers, by committees thereof. *See Eastland*, 421 U.S. at 505 ("It also has been held that the subpoena power may be exercised by a committee acting . . . on behalf of one of the Houses.") (citing *McGrain*, 273 U.S. at 158). As such, the Supreme Court and the D.C. Circuit have held repeatedly that investigative activities of committees – whether the authorization of investigations, the issuance of subpoenas, the holding of hearings, or the production of committee reports on investigations – are protected by the Speech or Debate Clause. *See Eastland*, 521 U.S. at 504 ("The power to investigate and to do so through compulsory process plainly falls within th[e] definition" of the legislative sphere protected by the Clause.); *Doe v. McMillan*, 412 U.S. at 306 ("The acts of authorizing an investigation pursuant to which the subject materials were gathered, holding hearings where the materials were presented, preparing a report where they were reproduced, and authorizing the publication and distribution of that report were all . . . acts . . . protected by the Speech or Debate Clause."); *Musgrave*, 104 F.4th at 363-65 (stating that committee oversight investigation is a "legislative act" and Senate committee report of investigation "is a legislative document" protected by the Clause); *Judicial Watch*, 998 F.3d at 992 ("Here, the Committee's issuance of subpoenas, whether as part of an oversight investigation or impeachment inquiry, was a legislative act protected by the Speech or Debate Clause."). Accordingly, the defendants are absolutely immune from plaintiff's suit for authorizing this investigation and issuing the subpoena to him.

17

Defendants are also immune from plaintiff's suit for voting to report the criminal contempt and civil enforcement resolutions to the Senate, both because such actions were part of the investigative process and, thus, within the legislative sphere, and because voting on resolutions itself is a legislative act protected by the Clause. *See Massie*, 72 F.4th at 322-23 (holding that "[t]he enactment of the [House] Resolution and its enforcement are squarely within the jurisdiction of the House, and therefore are legislative acts" and noting that "*McCarthy v. Pelosi* . . . similarly held that the adoption and implementation of a house resolution were legislative acts protected by the Speech or Debate Clause"); *McCarthy*, 5 F.4th at 38-40 (holding that the Clause provides House officers immunity from suit challenging House resolution providing for proxy voting); *see also Doe v. McMillan*, 412 U.S. at 311-12 (holding Members immune from suit for legislative acts that included "voting for publication of the [committee] report," noting that both "voting by Members and committee reports are protected") (quoting *Gravel*, 408 U.S. at 624); *Gravel*, 408 U.S. at 617 (stating that "Committee reports, resolutions, and the act of voting are . . . covered" by the Speech or Debate Clause).

The Supreme Court's decision in *Eastland* is directly on point here. In that case, a Senate subcommittee had issued a subpoena to a bank seeking financial records of its client, a non-profit organization. The organization and two of its members sued the Members of the subcommittee and the subcommittee's chief counsel alleging that the "'sole purpose' of the subpoena was to 'harass, chill, punish and deter [plaintiffs and its members] in their exercise of their rights and duties under the First Amendment[.]'" *Eastland*, 421 U.S. at 495. The plaintiffs in *Eastland* sought, just as plaintiff does here, "a permanent injunction restraining the Members of the Subcommittee and its Chief Counsel from trying to enforce the subpoena by contempt of Congress or other means and . . . also sought a declaratory judgment declaring the subpoena and

18

the Senate resolutions void under the Constitution." *Id.* at 496; *compare with* Compl. at 27-28,

Prayer for Relief. In *Eastland*, the Supreme Court held that the actions of the subcommittee

Members and its chief counsel in issuing the subpoena were within the legislative sphere, and

therefore, that they were immune from suit under the Speech or Debate Clause. *See* 421 U.S. at

504-11. A straightforward application of *Eastland* to this case requires the same result.

Plaintiff's complaint attempts to circumvent defendants' Speech or Debate immunity by

alleging that defendants had an improper purpose in summoning him as part of the investigation.

But such an allegation cannot remove the protections of the Clause for actions that are part of the

legislative sphere. *See Eastland*, 421 U.S. at 508-09 ("If the mere allegation that a valid

legislative act was undertaken for an unworthy purpose would lift the protection of the Clause,

then the Clause simply would not provide the protection historically undergirding it.").[3]

Nor does plaintiff's assertion that the defendants' legislative actions violated his Fifth

Amendment rights displace the Clause's immunity. "Congressmen . . . are immune from liability

for their actions within the legislative sphere even though their conduct, if performed in other than

legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil

statutes." *Doe v. McMillan*, 412 U.S. at 312-13 (internal quotation marks and citation omitted);

*Massie*, 72 F.4th at 323-24 ("Immunity attaches even if a plaintiff alleges that a member has

violated . . . the Constitution."). As the D.C. Circuit has explained, the argument that the Speech

or Debate Clause does not protect congressional defendants when a plaintiff claims that the

---

[3] In addition, to the extent plaintiff's claims rely on statements made by Senators at the
September 12, 2024 hearing or the September 19, 2024 executive session, *see, e.g.*, Compl. ¶ 4,
n.2, the Speech or Debate Clause prohibits the use of those statements against Members of
Congress as a basis for liability. *See Gravel*, 408 U.S. at 624 ("[A] Member's conduct at
legislative committee hearings, although subject to judicial review in various circumstances, as is
legislation itself, may not be made the basis for a civil or criminal judgment against a Member
because that conduct is within the 'sphere of legitimate legislative activity.'").

challenged legislative act was illegal or unconstitutional has been rejected repeatedly by the courts.

> [Plaintiff] contends that the defendants' conduct cannot be "legislative" because it was, in his view, *illegal*. This "familiar" argument – made in almost every Speech or Debate Clause case – has been rejected time and again. An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution[.] Such is the nature of absolute immunity, which is – in a word – absolute. Although absolute immunity creates "a potential for abuse," that potential "was the conscious choice of the Framers buttressed and justified by history."

*Rangel*, 785 F.3d at 24 (quoting *Eastland*, 421 U.S. at 510, other internal citations omitted); *see also Eastland*, 421 U.S. at 509-10 (rejecting plaintiffs' argument "that the purpose of the subpoena was to 'harass, chill, punish and deter' them in the exercise of their First Amendment rights . . . and thus that the subpoena cannot be protected by the Clause," because "[t]hat approach . . . ignores the absolute nature of the speech or debate protection"); *Porteous v. Baron*, 729 F. Supp. 2d 158, 166 (D.D.C. 2010) (noting that when congressional action "is conduct of the type that clearly falls within the legislative sphere, the Speech or Debate Clause prevents this Court from questioning, let alone enjoining, the [congressional] defendants about [the conduct], *whether or not such [conduct] actually runs afoul of the Fifth Amendment*.") (emphasis added).

Accordingly, defendants are absolutely immune under the Speech or Debate Clause from plaintiff's suit challenging their legislative actions, and, therefore, plaintiff's complaint must be dismissed for lack of jurisdiction.

**B.    Plaintiff Lacks Standing to Bring His Claims Against the Committee and Its Members**

The Court also lacks jurisdiction over this suit because plaintiff has not established Article III standing to assert his claims against the defendants. "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464,

471 (1982). "[T]he 'case or controversy' requirement," the Supreme Court explained, "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976).

"One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. at 811, 818 (1997); *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011). Standing doctrine ensures "that the Judicial Branch does not perform functions assigned to the Legislative or Executive Branch and 'that the judiciary is the proper branch of government to hear the dispute.'" *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)). Standing, thus, is not a mere pleading hurdle, but "a part of the basic charter promulgated by the Framers of the Constitution," *Valley Forge*, 454 U.S. at 476, and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Furthermore, because "'the law of Art. III standing is built on a single basic idea – the idea of separation of powers,'" *Raines*, 521 U.S. at 820 (quoting *Allen*, 468 U.S. at 752), the standing inquiry is "especially rigorous" in cases where "reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* at 819-20.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the[] elements" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet this

burden, plaintiff must show that (1) he "ha[s] suffered an injury in fact – an invasion of a legally

protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not

conjectural or hypothetical;" (2) the injury was caused by, or is "fairly . . . trace[able] to the

challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that

the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560-61 (1992) (internal quotation marks and citations omitted).

Plaintiff's complaint does not identify a concrete "injury" he sustained from defendants,

but does allege that plaintiff is being "punished" for asserting his Fifth Amendment right against

compelled self-incrimination. *See, e.g.*, Compl. at 1, ¶¶ 10, 11, 12, 62.   In articulating what

punishment he suffered, plaintiff states: "Nor can Dr. de la Torre be punished – whether by being

tarred and feathered live at a public hearing, by being held in contempt, [or] by being prosecuted

by the United States[.]" Compl. ¶ 11.   None of these harms plaintiff claims to have suffered for

asserting his Fifth Amendment rights satisfies Article III standing.   Not only has plaintiff failed

to assert a cognizable injury, but, as the Committee has completed all its actions, no relief against

the Senate or its Members can provide any redress here.

First, plaintiff's assertion of injury from being required to testify and potentially being

treated harshly during questioning at a congressional hearing cannot support standing for the

simple fact that plaintiff failed to appear at the Committee's hearing.   Leaving aside whether

plaintiff would have been subject to any purported "mistreatment" at the hearing and whether

such treatment could even constitute a "legally cognizable harm," plaintiff did not, in fact, suffer

any such treatment because he willfully chose *not to appear*.   To confer standing, injuries must

be "concrete" and not "hypothetical," and the allegation that plaintiff would have been "tarred

and feathered" had he appeared before the Committee – which he did not – cannot support an

22

injury for standing purposes. *See Spokeo, Inc.*, 578 U.S. at 340 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist").

Plaintiff's claim that he has been punished by "being held in contempt" also fails to establish his standing. While plaintiff refers to the Committee's action as holding him in contempt, what the Committee actually did was vote to report to the full Senate proposed resolutions regarding Dr. de la Torre's failure to comply with the subpoena. The Senate, which is not itself a party to this case, adopted one of the proposed resolutions, S. Res. 837, directing the President of the Senate to certify the fact of Dr. de la Torre's failure to comply with the Committee's subpoena to the United States Attorney for presentment to a grand jury. *See* 2 U.S.C. § 194 (procedures for certifying witness's default of Senate subpoena to United States Attorney). Any concrete harm from "being held in contempt" would only be suffered if and when a person is criminally sanctioned following a trial for his or her failure to comply with a congressional subpoena. No such sanction has been imposed on plaintiff yet, and it remains speculative at this point whether one will be imposed.

In addition, neither of these alleged injuries – being subjected to questioning at the hearing and being held in contempt by the Committee – are judicially redressable, because the Speech or Debate Clause precludes courts from imposing liability on, or issuing equitable relief against, Members of Congress for actions taken during a committee hearing or for voting. *See supra* at 15-19; *Gravel*, 408 U.S. at 615 ("[Senator Gravel's] insistence is that the Speech or Debate Clause at the very least protects him from criminal or civil liability and from questioning elsewhere than in the Senate, with respect to the events occurring at the subcommittee hearing at which the Pentagon Papers were introduced into the public record. To us this claim is incontrovertible"); *McSurely v. McClellan*, 553 F.2d 1277, 1284 (D.C. Cir. 1976) (en banc) ("[T]he

[Supreme] Court has recognized absolute immunity for legislators' . . . conduct at committee hearings[.]").

As to any injury from potentially "being prosecuted by the United States" for his failure to comply with the subpoena, such an injury fails all three elements of standing.  First, while the Senate adopted a resolution to certify plaintiff's default to the United States Attorney, plaintiff has not yet been indicted by a grand jury and so any injury from a potential prosecution and conviction under 2 U.S.C. § 192 is "conjectural" and not "imminent."  As the Supreme Court explained in *Clapper*, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending[,]" and "[a]llegations of *possible* future injury" are not sufficient.  568 U.S. at 409 (internal quotation marks and citations omitted).  Whether a grand jury will return an indictment against plaintiff is simply too speculative a presumption to support standing here.  *See Whitmore v. Arkansas,* 495 U.S. 149, 159-60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case.  Thus, . . . there is no amount of evidence that potentially could establish that [plaintiff]'s asserted future injury is 'real and immediate.'").

Plaintiff also cannot establish a sufficient causal link from the defendants to any injury from his potential prosecution.  In *Simon v. Eastern Kentucky Welfare Rights Organization*, the Supreme Court clarified that "the 'case or controversy' limitation of Art. III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  426 U.S. 26, 41-42 (1976); *accord Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  While "standing is not precluded" in situations "where a causal relation between injury

and challenged action depends upon the decision of an independent third party . . . it is ordinarily

substantially more difficult to establish[.]  To satisfy that burden, the plaintiff must show at the

least that third parties will likely react in predictable ways."  *California v. Texas*, 593 U.S. 659,

675 (2021) (internal quotation marks and citations omitted).  Hence, "[w]hen considering any

chain of allegations for standing purposes, we may reject as overly speculative those links which

are predictions of future events (especially future actions to be taken by third parties)," as well as

predictions of future injury that are "not normally susceptible of labelling as 'true' or 'false.'"

*Arpaio*, 797 F.3d at 21.

Any potential injury from a future prosecution of plaintiff by the United States for his

default before the Committee requires the independent action of a third party not before the Court

– namely, the grand jury, which considers whether to return an indictment under 2 U.S.C. § 192

for failure to comply with a congressional subpoena.  *See* 2 U.S.C. § 194 (upon certification from

Senate of failure of witness to appear to testify, U.S. Attorney shall "bring the matter before the

grand jury for its action").  As "it belongs to no branch of the institutional Government," the

grand jury is independent of the Legislative and Judicial Branches and "serv[es] as a kind of

buffer or referee between the Government and the people."  *United States v. Williams*, 504 U.S.

36, 47, 48 (1992) (internal quotation marks and citation omitted).  Hence, any injury caused by a

potential prosecution against plaintiff depends on the action of a federal grand jury – an entity

which is not a party to this suit and, as a matter of law, is entirely independent from the

defendants.  Plaintiff, therefore, cannot establish the necessary causal link between the

defendants and any injury from a possible federal prosecution under 2 U.S.C. § 192 required for

Article III standing.

In addition, no relief sought by plaintiff against the defendants (even were such relief within the Court's power, which it is not) can prevent the alleged harm from a potential future prosecution. The Committee reported the resolution to the Senate, the Senate has adopted it, and the President Pro Tempore certified the matter to the United States Attorney. The Committee's and the Senate's action is complete.[4] The United States Attorney now controls the presentation of evidence to the grand jury, and, as explained above, the grand jury has independent authority to decide whether to return an indictment against plaintiff. Neither the United States Attorney nor any grand jury is a party to this case, and no relief against the defendants can protect plaintiff from the possibility of indictment for his failure to appear.

Accordingly, none of the "injuries" plaintiff claims to suffer, or be at risk of suffering, suffice to establish Article III standing to assert his claims against the defendants. The Court, therefore, lacks jurisdiction over plaintiff's suit.[5]

---

[4] Indeed, any controversy over Dr. de la Torre's "being held in contempt" *by the Committee* and having his default certified to the United States Attorney for criminal prosecution would now be moot as Senate action on the resolution is completed and there is no relief a court can grant to undo that action. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085-89 (D.C. Cir. 2017) (Senate subcommittee enforcement action moot because subcommittee issued its final report and was no longer pursuing any further documents under its subpoena). In addition, plaintiff has not sought, nor can he be granted, any monetary relief against defendants for voting to report the resolution.

[5] That the Court lacks jurisdiction over plaintiff's suit due to Speech or Debate Clause immunity and lack of Article III standing does not mean that a subpoenaed witness is foreclosed from asserting his constitutional rights to the Judicial Branch in defense of his default of a congressional subpoena in the proper proceeding. A subpoena respondent whose objections have been overruled and who has been ordered by a committee to comply with a subpoena obtains judicial review by disobeying that command and asserting his legal grounds to a court in defense of any criminal prosecution or civil enforcement action that may ensue. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088-89 (D.C. Cir. 2017); *United States v. Bannon,* 101 F.4th 16, 20-27 (D.C. Cir. 2024); *United States v. Navarro,* 651 F. Supp. 3d 212, 222-29 (D.D.C. 2023), *appeal docketed*, No. 24-3006 (D.C. Cir. Jan. 31, 2024).

## II.    PLAINTIFF MAY NOT USE A CIVIL LAWSUIT AS A VEHICLE TO FORESTALL A CRIMINAL PROCEEDING

Under well-established Supreme Court and D.C. Circuit authority, a civil lawsuit cannot be brought to interfere with a threatened criminal proceeding.  Plaintiff's complaint, which essentially seeks to block any criminal proceeding against him for his failure to comply with the Committee's subpoena, falls squarely within this prohibition and should therefore be dismissed. If an indictment is returned, Dr. de la Torre, like any other criminal defendant, can raise his objections by appropriate motion in that criminal action.

### A.    Federal Courts Should Not Interfere With Ongoing Criminal Matters

It is a "basic doctrine of equity jurisprudence" that "courts should not exercise their equitable discretion to enjoin criminal proceedings, as long as the defendant has an adequate legal remedy in the form of trial and direct appeal." *In re Al-Nashiri*, 835 F.3d 110, 118 (D.C. Cir. 2016).  The leading case is *Younger v. Harris,* 401 U.S. 37 (1971), in which the plaintiff, already indicted in California state court, filed a civil complaint in federal district court asking that court to enjoin the District Attorney of Los Angeles County from prosecuting him.  *Id.* at 38-39.  On appeal, the Supreme Court rejected the claim, holding that a threat of criminal prosecution does not rise to the level of harm that could justify federal court interference in a criminal proceeding, "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id.* at 43-44.  In a criminal case, that adequate remedy exists by virtue of the ability to present defenses in the criminal action.  *See id.* at 49. Moreover, relief is not warranted when the claim of irreparable harm is only "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution[.]"  *Id.* at 46.  These principles "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted."  *Id.* at 44.

While the Supreme Court's decision in *Younger* was premised, in part, on federalism principles – *i.e.*, avoiding federal interference in ongoing state proceedings, *see id.* at 44-45 – the Court emphasized: "our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention[.]" *Id.* at 54. Indeed, the D.C. Circuit has since applied this reasoning to hold that in light of traditional equitable principles, and concerns about separation of powers and finality, civil actions may not be brought to attack an ongoing *federal* criminal matter either, and "those precedents govern this case." *Manafort v. U.S. Dep't of Just.,* 311 F. Supp. 3d 22, 30 (D.D.C. 2018), *appeal dismissed per stipulation*, 2018 WL 4103307 (D.C. Cir. Aug. 1, 2018).

Specifically, in *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), the D.C. Circuit held that the equitable principle elucidated in *Younger* equally precluded suits by prospective criminal defendants seeking to prevent a federal criminal indictment. The plaintiff in *Deaver*, in anticipation of a forthcoming indictment, filed a federal civil action "seeking declaratory and injunctive relief" from the "continued exercise of prosecutorial authority." *Id.* at 66. The plaintiff alleged that the prosecutor – an independent counsel – was acting in excess of constitutional authority because his appointment was invalid, *see id.* at 67-68, and, therefore, the plaintiff was, in effect, "being forced to defend himself against criminal charges brought by a mere private citizen – a vigilante." *Id.* at 70. The trial court denied the motion for a preliminary injunction, and the D.C. Circuit affirmed. *Id.* at 68-69. The Court of Appeals found that "[e]ven were we disposed to agree entirely with appellant's constitutional argument, we think he has no right to an injunction restraining a pending indictment in a federal court." *Id.* at 68. The court explained that under *Younger*, "'the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' are not recognized as irreparable injuries justifying an equitable

remedy." *Id.* at 69 (quoting *Younger,* 401 U.S. at 46).[6]

Although *Younger* arose in the context of state proceedings, the Court of Appeals noted

that "in no case that we have been able to discover has a federal court enjoined a federal

prosecutor's investigation or presentment of an indictment." *Id.* at 69.  The Court observed that a

federal prosecution "afford[s] defendants, after indictment, a federal forum in which to assert

their defenses – including those based on the Constitution." *Id*. "Congress has established a

comprehensive set of rules governing federal criminal prosecutions," the court explained, *id.* at

71, and "Rule 12(b)(1) of the Federal Rules of Criminal Procedure permits any defendant to raise

by motion, after indictment but before trial, a defense based on 'defects in the institution of the

prosecution,'" which therefore "suggests that appellant's constitutional challenge is not to be

raised in a preindictment civil injunctive action." *Id.* at 70.  To do so, the court added, would

"undermine the final judgment rule" in criminal cases and "encourage a flood of disruptive civil

litigation[.]" *Id.* at 71.

Since *Deaver*, the D.C. Circuit has consistently rejected attempts to use civil suits to enjoin

federal investigations and prosecutions.  *See In re Al-Nashiri*, 835 F.3d at 126-27 (affirming

district court's decision to deny a habeas petitioner's motion to preliminarily enjoin upcoming

trial as an "enemy combatant" before a military commission and noting that "availability of legal

remedies in Article III courts has historically *barred* criminal defendants from receiving pretrial

equitable relief"); *Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) (affirming

---

    [6]  The Court went on to explain that, while the Supreme Court has upheld federal
injunctions to restrain certain state criminal proceedings, it has done so "*only* where the
threatened prosecution chilled exercise of First Amendment rights . . . *In all other cases. . .* a
person asserting a constitutional challenge to criminal process has been thought to have an
adequate non-injunctive remedy; he may raise his constitutional claim as a defense in the state
criminal proceedings, once initiated." *Id.* at 69 (emphasis added.)

dismissal of pre-indictment federal civil suit, finding that "[t]he district court correctly held that, if indicted, Miranda can protect his rights . . . pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure."); *In re Sealed Case*, 829 F.2d 50, 62 n.60 (D.C. Cir. 1987) ("As we said in *Deaver v. Seymour.* . . courts do not, except in very limited circumstances not alleged here, entertain the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined."); *see also Manafort,* 311 F. Supp. 3d at 26 (D.D.C. 2018) (dismissing civil complaint because "a civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future."); *North v. Walsh*, 656 F. Supp. 414, 423 (D.D.C. 1987) ("Colonel North, like any other potential criminal defendant, can raise his objections by appropriate motions, *if* and *when* an indictment is entered.").

This rule against using civil actions to interfere in ongoing criminal matters is also rooted in core principles of comity and separation of powers, which "counsel courts against intervening in a criminal investigation conducted by another branch of government."  *North*, 656 F. Supp. at 421. Because "[t]he powers of criminal investigation are committed to the Executive branch," *Reps. Comm. for Freedom of Press v. AT&T Co.*, 593 F.2d 1030, 1065 (D.C. Cir. 1978), and "[i]n the ordinary case" the decision to prosecute "generally rests entirely in [the Executive's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996), allowing civil suits to proceed – with the effect of interfering with ongoing criminal matters – would violate inter-branch comity by "interfer[ing] with the prerogatives of coordinate branches of government." *In re Al-Nashiri*, 835 F.3d at 127; *see also Reps. Comm. for Freedom of Press*, 593 F.2d at 1065.  Indeed, separation of powers concerns are heightened here, where plaintiff seeks injunctive relief against Senators and a Senate committee to try to foreclose a future indictment against him for failing to comply with a congressional subpoena.  Such judicial action would intrude on the authority of the Senate to

conduct investigations and compel the appearance of witnesses, undermining Congress'

legislative autonomy.

**B.      If Plaintiff is Indicted, That Criminal Action Would Be the
        Appropriate Forum to Assert His Legal Arguments**

The principles discussed above squarely foreclose plaintiff's lawsuit.  If he is indicted,

Dr. de La Torre, like any other criminal defendant, is entitled to a panoply of constitutional,

statutory, and procedural protections and has an adequate federal forum in which to raise his

arguments – the underlying criminal action.

The relief sought in the Complaint includes requests that the Court declare that the

subpoena and the Committee's vote in favor of the resolutions violated his Fifth Amendment

rights, declare that he properly invoked his Fifth Amendment rights, and enjoin the Committee

from causing him "to suffer from criminal punishment for invoking his Fifth Amendment rights"

in response to the subpoena.  Compl. at 27-28, Prayer for Relief; *see also* Compl. ¶ 12.  In effect,

Dr. de la Torre seeks a pre-indictment ruling from this Court that no crime was committed

because the subpoena was invalid and he properly asserted his Fifth Amendment rights to avoid

appearing at the Committee's hearing.

As the D.C. Circuit has made clear, the Federal Rules of Criminal Procedure provide an

opportunity for criminal defendants to raise legal objections as defenses to indictments.  *Deaver*,

822 F.2d at 69-71.  Here, if indicted for contempt of congress in violation of 2 U.S.C. § 192, Dr.

de la Torre has an adequate federal forum in which to present his defenses.  Count I of the

complaint claims the subpoena was invalid as it had no legislative purpose and Count II claims

the Committee's requiring him to appear for testimony violated his Fifth Amendment right

against self-incrimination.  *See* Compl. ¶¶ 68, 78-85.   Like any other criminal defendant, Dr. de

la Torre may seek to raise those legal theories in a motion under Rule 12.  *See e.g.*, *United States*

*v. Bannon,* 101 F.4th at 25-27 (criminal defendant charged with contempt of Congress for failure to comply with a congressional subpoena moved to dismiss the indictment, in part "because the Select Committee's subpoena was invalid for both substantive and procedural reasons"); *United States v. Navarro,* 651 F. Supp. 3d at 222-29 (criminal defendant charged with contempt of Congress for failure to comply with a congressional subpoena moved to dismiss the indictment under Rule 12 on the grounds that executive privilege excused his non-compliance and the congressional committee was not properly constituted).

As the D.C. Circuit has stated, "[p]rospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure," including federal criminal investigations. *Deaver*, 822 F.2d at 71; *see also Manafort*, 311 F. Supp. 3d at 26 ("It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal.").  While the Senate has acted to certify plaintiff's default to the United States Attorney, Dr. de la Torre has not yet been indicted by a grand jury.  If he is indicted, Dr. de la Torre will have an adequate federal forum to present his defenses; he may not do so, however, through this preemptive civil action.

III.    **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM**

Plaintiff's complaint asserts two counts against defendants: Count I - that the subpoena advanced no valid legislative purpose and, therefore, was an *ultra vires* action lacking proper congressional authority; and Count II - that the Committee's requiring him to appear at its hearing violated his Fifth Amendment right against self-incrimination.  Neither states a claim as a matter of law.

A.    **The Committee's Subpoena to Plaintiff Was a Duly-Authorized Subpoena With a Valid Legislative Purpose**

Plaintiff's complaint argues that the subpoena to him "does not advance a valid legislative purpose," Compl. at 22 (Count I) and ¶ 68, because the Committee's purpose in issuing the subpoena was only to "compel [Dr. de la Torre's] attendance at the Hearing to 'hold Dr. de la Torre accountable' and subject him to 'a day of reckoning' as the Committee saw fit[.]" *Id.* ¶ 71.  Plaintiff further alleges that "the Subpoena and Hearing were merely vehicles concocted by the Committee to permit Members to vilify Dr. de la Torre in grandstanding speeches and solicit malicious testimony from hostile witnesses for the sole purpose of publicly humiliating and degrading Dr. de la Torre."  *Id.* ¶ 48.  Accordingly, plaintiff asserts that the subpoena was an invalid "*ultra vires*" action by the defendants.  *Id.* ¶ 75.

Plaintiff's attack on the subpoena's validity is meritless.  The Supreme Court has stated that any judicial review of a claim that a committee investigation and its subpoena do not have a valid legislative purpose should be strictly limited, and "'[t]he courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province.'" *Eastland*, 421 U.S. at 506 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)); *see id.* ("The propriety of making [the witness] a subject of the investigation and subpoena is a subject on which the scope of our inquiry is narrow."); *Judicial Watch*, 998 F.3d at 992.  The Committee's investigation and the subpoena to Dr. de la Torre easily satisfy this narrow review.

As set forth above, *supra* at 5-6, the Senate has directed the HELP Committee to "study and review, on a comprehensive basis, matters relating to health, education and training, and public welfare, and report thereon from time to time."  Rule XXV.1(*l*)(1)-(2) of the Standing Rules of the Senate, *reprinted in* Senate Manual, S. Doc. No. 117-1, at 33-34 (2022).  Acting under this authority the Committee initiated an investigation of the bankruptcy of Steward Health Care, a

company that plaintiff alleges was "the largest physician-led, minority-owned, integrated health

care system in the United States[,]" Compl. ¶ 1, and that had begun to "expand nationwide" and

"has served millions of patients and employed thousands of physicians, nurses, and staff." *Id.* ¶ 42.

As Ranking Member Cassidy noted, "Steward's bankruptcy has nationwide implications impacting

more than 30 hospitals across eight states[.]" HELP Committee Report, S. Rep. No. 118-230, at

39, App. V. That bankruptcy's effect on the provision of healthcare in various communities,

combined with concern over the impact "that private equity is having on our healthcare system,"

*id.* at 37 (statement of Sen. Sanders at Sept. 12 hearing), prompted the Committee's investigation.

The Committee's inquiry and subpoena seek information to aid the Committee, and ultimately the

Senate, in considering whether legislative reforms in this area are needed, and, if so, what

changes might help "to keep this from happening again." *Id.* at 40 (statement of Sen. Cassidy at

Sept. 12 hearing). The Committee's inquiry and subpoena here plainly serve a legislative purpose

within the HELP Committee's jurisdiction on a matter pertinent to its legislative responsibilities.

Plaintiff's allegations that some Members of the Committee had an improper purpose or

motive in issuing the subpoena, Compl. ¶¶ 8, 46, do not undermine that conclusion. The

Supreme Court has explained that "in determining the legitimacy of a congressional act we do

not look to the motives alleged to have prompted it." *Eastland*, 421 U.S. at 508; *Watkins v.*

*United States*, 354 U.S. 178, 200 (1957) (stating that it "is not our function" to "test[] the motives

of committee members" as "[t]heir motives alone would not vitiate an investigation which had

been instituted by a House of Congress if that assembly's legislative purpose is being served").

"So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority

to intervene on the basis of the motives which spurred the exercise of that power." *Barenblatt v.*

*United States*, 360 U.S. 109, 132 (1959); *see also Musgrave*, 104 F.4th at 365 (stating that

"[r]egardless of the investigation's purpose," the Committee's investigation and the "resulting

report" are "protected from disclosure by the Speech or Debate Clause"); *Meadows v. Pelosi*, 639

F. Supp. 3d 62, 76 (D.D.C. 2022) (rejecting contention that congressional committee subpoena

was invalid because "statements and actions of [committee] members" revealed their "true

purpose" was "to engage in ad-hoc law enforcement and expose possible wrongdoings of their

political adversary"). The D.C. Circuit recently rejected just such an argument challenging the

validity of a congressional committee subpoena in a criminal contempt prosecution:

> [Defendant] argues that even if the Select Committee *could* have had a valid
> legislative purpose in seeking this information from him, his subpoena was
> invalid because the Select Committee's members *actually* acted for assertedly
> improper reasons, namely to target him and send a message to other potential
> witnesses. But this argument too runs headlong into settled law. The Supreme
> Court has made "clear that in determining the legitimacy of a congressional act[,]
> we do not look to the motives alleged to have prompted it." *Eastland*[, 421 U.S.
> at 508.]. What matters is whether the subpoena is objectively related to a valid
> legislative purpose. This one was.

*United States v. Bannon*, 101 F.4th at 25 (internal citations omitted).

Accordingly, plaintiff's claim that the subpoena was outside the Committee's authority

because it did not advance a valid legislative purpose is without merit as a matter of law and

should be dismissed for failing to state a claim.

### B.    The Committee Did Not Violate Plaintiff's Fifth Amendment Rights

The complaint's second count, alleging that plaintiff is being punished in violation of his

Fifth Amendment rights for not appearing at the Committee's hearing, is also without merit as a

matter of law. Specifically, plaintiff argues that once he had invoked his constitutional rights, the

Committee's "attempt to compel Dr. de la Torre's sworn testimony" at its hearing, and its

"attempt to punish Dr. de la Torre" for failing to appear, violated his Fifth Amendment right

against self-incrimination. Compl. ¶¶ 84, 85. Plaintiff's Fifth Amendment argument lacks merit.

Under established Fifth Amendment case law, only a defendant in a criminal matter has the absolute right to avoid taking the witness stand to testify or affirmatively assert a Fifth Amendment privilege. *See Jenkins v. Anderson*, 447 U.S. 231, 235 (1980) ("The Fifth Amendment guarantees an *accused* the right to remain silent *during his criminal trial* and prevents the prosecution for commenting on the silence of a defendant who asserts the right.") (emphasis added). A witness, other than a defendant in a criminal trial, does not have a blanket Fifth Amendment right to be excused from appearing entirely when summoned to testify, but must instead appear for testimony and assert the privilege as to specific questions. *United States v. Duran*, 884 F. Supp. 573, 574 (D.D.C. 1995) ("Although a witness other than a criminal defendant cannot properly invoke the Fifth Amendment privilege against self-incrimination to avoid appearing at trial altogether, he or she can invoke the privilege to avoid answering incriminating questions." (citing *Allen v. Illinois*, 478 U.S. 364, 368 (1986).)[7]

Notably, courts have held that even *targets* of criminal investigations may be compelled to appear before a grand jury. *See e.g., United States v. Friedman,* 445 F.2d 1076, 1088 (9th Cir. 1971) ("Requiring a potential defendant to appear before the grand jury that may subsequently indict him does not violate his privilege against compulsory self-incrimination."); *United States v. Cefalu,* 338 F.2d 582, 584 (7th Cir. 1964) ("[T]he privilege accorded one called before a grand jury is the election to refuse to give testimony which might tend to show he had committed a crime. It is not designed to effect a prohibition against inquiry by an investigative body."). Like a

---

[7] Although courts in some criminal trials have exercised their discretion and excused a non-defendant witness from having to take the stand and invoke the Fifth Amendment privilege in front of the jury, s*ee, e.g., United States v. Reese*, 561 F.2d 894, 899-901 (D.C. Cir. 1977); *Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (en banc); *Fletcher v. United States*, 332 F.2d 724, 725-27 (D.C. Cir. 1964), they did so to protect the defendant's fair trial interests and not the rights of the witness. Such concern is not implicated in congressional committee hearings because there is no jury present nor is there a criminal defendant in the proceeding whose right to a fair trial is at issue.

36

grand jury, which, as the Supreme Court noted in the Fifth Amendment context, has a "historic role [as] an investigative body" but "is not the final arbiter of guilt or innocence," *United States v. Washington*, 431 U.S. 181, 191 (1977), a congressional hearing is not a criminal trial and those appearing at such hearings are not criminal defendants.  Hence, a witness before a congressional committee, like a witness before a grand jury, assuredly may assert a privilege against self-incrimination by refusing to answer specific questions but cannot use the invocation of the Fifth Amendment to avoid appearing before the committee altogether.

Indeed, a congressional committee's insistence that a witness appear at a hearing does not violate the Fifth Amendment even when the committee is informed or has reason to believe that the witness intends to assert his Fifth Amendment rights.  In *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), the Supreme Court rejected efforts to dismiss an indictment based on alleged violations in the underlying grand jury proceedings, including that the prosecutors had required witnesses to appear before the grand jury despite the witnesses having stated their intention to assert the Fifth Amendment privilege.  *Id.* at 258-59.  The Supreme Court agreed with the court of appeals that "no Fifth Amendment violation occurred as a result of the Government's calling seven witnesses to testify despite an avowed intention to invoke their Fifth Amendment privilege."  *Id.* at 258.  The Court explained that the Government was not required to take "at face value" the assertions made by these witnesses outside the grand jury room.  *Id.* at 259.

Plaintiff's argument that the Committee violated his Fifth Amendment rights by requiring his appearance despite "knowledge that Dr. de la Torre would not testify at the hearing in reliance on his rights under the Fifth Amendment," Compl. ¶ 82, is the exact argument that the Supreme Court rejected in *Bank of Nova Scotia*.  Just as the Supreme Court noted in that case, the Committee here was not required to accept assertions made by plaintiff's counsel prior to the

37

hearing.  Indeed, because a valid assertion of the privilege against self-incrimination is predicated

on a witness' good-faith determination that the provision of a truthful answer to a particular

question creates a reasonable apprehension of incriminating him, a witness cannot make the

particular judgment necessary for good-faith invocation of the privilege except in consideration

of a specific question.  *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (per curiam) ("We have held

that the privilege's protection extends only to witnesses who have reasonable cause to apprehend

danger from a direct answer. That inquiry is for the court; the witness' assertion does not by itself

establish the risk of incrimination.") (citation and internal quotation marks omitted); *see also*

*United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir. 1991) (stating that "a blanket refusal

to produce records or to testify will not support a fifth amendment claim") (citation omitted);

*United States. v. Dick*, 694 F.2d 1117, 1119 (8th Cir. 1982) ("It is clear that a taxpayer may not

refuse to answer questions . . . on the basis of a general constitutional privilege. The taxpayer

should appear in response to a summons, and make specific objections in response to specific

questions . . . .").   Thus, the decision whether to assert the privilege can appropriately be made

only in response to a specific question at a hearing.  Only when the privilege is actually asserted

in response to a specific question or area of inquiry can the committee evaluate whether or not

the privilege is properly claimed in a given instance.  *See United States v. Thornton*, 733 F.2d

121, 125-26 (D.C. Cir. 1984) ("Usually, a trial court cannot speculate whether all relevant

questions would or would not tend to incriminate the witness; accordingly, the court normally

requires the privilege to be asserted in response to specific questions.").

    Here, not only did the implied intention to assert the Fifth Amendment come from

counsel and not Dr. de la Torre himself, but it was still only a statement of intention.  Until a

witness himself appears for questioning and is presented with the actual choice of testifying or

invoking the Fifth Amendment, the question is not ripe and the witness may not truly and

certainly know what he will do until the circumstance triggering the decision arises.  Indeed,

there have been instances in which witnesses before Senate committees have provided important

testimony when called, despite earlier insistences that they would rest on their Fifth Amendment

privilege as to all questions.  *See, e.g., Mismanagement of Contracts at Arlington National*

*Cemetery: Hearing before the Ad Hoc Subcomm. On Contracting Oversight of the Senate Comm.*

*on Homeland Security and Governmental Affairs*, S. Hrg. No. 111-1008, 111th Cong., at 9-10

(2010) (witness indicated intent to assert the Fifth Amendment but responded to questions at the

hearing); *The Hidden Operators of Deceptive Mailings: Hearing before the Permanent*

*Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, S. Hrg. No. 106-181,

106th Cong., at 26-30, 36-40 (1999) (witness declined to answer two questions on Fifth

Amendment privilege grounds, but responded to numerous other questions from subcommittee).

Such instances reflect the reality that a committee cannot and does not know in advance whether

a witness will assert a Fifth Amendment privilege to any, let alone all, questions.  Thus, the fact

that plaintiff, through counsel, indicated his intention to rest on his constitutional rights "cannot

be transformed into prohibition against inquiry."  *United States v. Kilpatrick*, 821 F.2d 1456,

1472 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250

(1988).[8]

---

[8]  Plaintiff's citation, Compl. ¶ 7, to two non-binding advisory ethics opinions of the
District of Columbia Bar in support of his Fifth Amendment claim is misplaced because the D.C.
Bar committee expressly indicated in those opinions that it did not seek to regulate Members'
conduct of committee proceedings.  D.C. Bar Legal Ethics Comm., Op. No. 31 (1977) ("It is not
within our province to pass upon the propriety of conduct by congressmen, who may or may not
be lawyers, but are acting in any event as congressmen."); D.C. Bar Legal Ethics Comm., Op.
No. 358 (2011) ("Acknowledging that this Committee's jurisdiction is confined to rendering
opinions on the applicability of the ethics rules to the conduct of staff attorneys acting in their
capacities as attorneys. . .").

When witnesses have asserted a Fifth Amendment privilege at Senate hearings, the committees have treated the witness respectfully, communicating the committee's recognition and understanding of the privilege, and correspondingly excused the asserting witness from the hearing once the privilege had been specifically invoked:

> Let the record reflect that you have availed yourself of the privilege afforded you under the Fifth Amendment of the Constitution not to give testimony that might incriminate you, and you certainly have that right. The invocation of that right by every American citizen should not and does not impose any guilt. The committee respects your constitutional right to decline [to] answer questions on that ground, although we certainly would have liked to have been able to hear from you today. You are correspondingly excused at this time.

*No Guarantees: As Pension Plans Crumble, Can PBGC Deliver? Hearing before the Special Comm. On Aging*, S. Hrg. No. 111-153, 111th Cong., at 3-4 (2009) (statement of committee chair in response to witness's invocation of the Fifth Amendment); *see also, e.g., Backpage.com's Knowing Facilitation of Online Sex Trafficking: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 115-6, 115th Cong., at 10-19 (2017) (five witnesses declined to answer questions on Fifth Amendment privilege grounds and were subsequently excused from testifying at the hearing at the end of the panel); *Tax Haven Banks and U.S. Tax Compliance: Hearings before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 110-614, 110th Cong., at 31-34, 51-53 (2008) (witnesses declined to answer questions on Fifth Amendment privilege grounds and were subsequently excused from the hearing); *Money Laundering and Foreign Corruption: Enforcement and Effectiveness of the Patriot Act: Hearing before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, S. Hrg. No. 108-633, 108th Cong., at 9-10 (2004) (same).

As the Committee specifically informed plaintiff before the hearing, witnesses may assert a Fifth Amendment privilege in response to questions at the hearing, and the Committee respects the constitutional rights of witnesses to avail themselves of their privileges under the Fifth Amendment and not answer questions when the response might tend to incriminate them. However, a witness before the Committee is not a defendant in a criminal trial and does not have a Fifth Amendment right to refuse to appear entirely when summoned to testify. Accordingly, the Committee did not violate plaintiff's Fifth Amendment rights in declining to excuse his appearance at its hearing and citing him for contempt.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's complaint for lack of jurisdiction and failure to state a claim.

Respectfully submitted,

 /s/ Morgan J. Frankel
Morgan J. Frankel, Bar #342022
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Dated: November 26, 2024                    Attorneys for Defendants