**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. RALPH DE LA TORRE, M.D.,<br><br>    Plaintiff,<br><br>v.<br><br>BERNARD SANDERS, in his capacity as Chairman of the Committee on Health, Education, Labor, and Pensions of the United States Senate, *et al.*,<br><br>    Defendants. | Civil Action No. 1:24-cv-02776-TNM |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY**

**TABLE OF CONTENTS**

Page

BACKGROUND ........................................................................................................................... 2

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

    I.    DISCOVERY WILL FURTHER ESTABLISH THIS COURT'S JURISDICTION
         OVER DR. DE LA TORRE'S CLAIMS ................................................................... 6

        A.    Jurisdictional Discovery Will Establish That Defendants' Actions Fell
            Outside of the Legislative Sphere ................................................................... 7

        B.    Jurisdictional Discovery Will Further Establish Dr. de la Torre's Standing ......... 10

    II.    THE SPEECH OR DEBATE CLAUSE DOES NOT SHIELD DEFENDANTS
          FROM JURISDICTIONAL DISCOVERY ............................................................ 11

CONCLUSION ............................................................................................................................ 13

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Oversight v. U.S. Dep't of Veterans Affairs*,
  498 F. Supp. 3d 145 (D.D.C. 2020) ...................................................................................... 6

*Collins v. New York Central System*,
  327 F.2d 880 (D.C. Cir. 1963) .............................................................................................. 5

*Davis v. Grant Park Nursing Home LP*,
  639 F. Supp. 2d 60 (D.D.C. 2009) ........................................................................................ 5

*Doe v. McMillan*,
  412 U.S. 306 (1973) ............................................................................................................ 12

*El-Fadl v. Cent. Bank of Jordan*,
  75 F.3d 668 (D.C. Cir. 1996) ................................................................................................ 5

*Farouki v. Petra Int'l Banking, Corp.*,
  683 F. Supp. 2d 23 (D.D.C. 2010) ........................................................................................ 5

*Fields v. Off. of Eddie Bernice Johnson*,
  459 F.3d 1 (D.C. Cir. 2006) .................................................................................................. 7

*Gravel v. United States*,
  408 U.S. 606 (1972) .............................................................................................................. 7

*\*GTE New Media Services Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ......................................................................................... 5, 6

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) .............................................................................................. 5

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979) ............................................................................................................ 12

*\*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) ................................................................................. 11, 12

*McGrain v. Daugherty*,
  273 U.S. 135 (1927) ............................................................................................................ 10

*Quinn v. United States*,
  349 U.S. 155 (1955) .............................................................................................................. 2

*Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of
    Representatives*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015) .................................................................. 11, 12

*Trump v. Mazars USA, LLP*,
    591 U.S. 848 (2020) .................................................................................................... 8

*\*Watkins v. United States*,
    354 U.S. 178 (1957) ................................................................................................ 8, 9

**<u>Other Authorities</u>**

Senate HELP Committee Rules of Procedure, 1
    69 CONG. REC. S295 (DAILY ED. Feb. 9, 2023) ........................................................ 10

Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre
    Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024) .................................................. 10

Press Release, Senator Edward Markey, *Senator Markey Statement on
    Resignation of Disgraced Steward Health CEO Ralph de la
    Torre* (Sept. 28, 2024) ............................................................................................. 10

Plaintiff Dr. Ralph de la Torre, M.D., ("Dr. de la Torre") initiated this action against Defendants to seek judicial redress for their violations of his constitutional rights, including by undertaking a concerted effort to punish him for invoking his Fifth Amendment rights in response to a subpoena that Defendants issued for his testimony (the "Subpoena"). In response, Defendants have moved to dismiss Dr. de la Torre's Amended Complaint, falsely claiming that the Speech or Debate clause deprives this Court of jurisdiction to adjudicate Dr. de la Torre's claims, even though Defendants' conduct were and are invalid *ultra vires* actions that fall outside the scope of the Speech or Debate Clause's privileges and immunities. Accordingly, Dr. de la Torre respectfully moves this Court for leave to conduct targeted jurisdictional discovery regarding the primary jurisdictional issue raised in Defendants' Motion to Dismiss Dr. de la Torre's Amended Complaint ("MTD," ECF 18)—*i.e.*, facts and evidence that demonstrate Defendants engaged in invalid *ultra vires* actions for which no legislative purpose was served when they refused to acknowledge Dr. de la Torre's invocation of his Fifth Amendment rights in response to the Subpoena, and then punished him for that invocation by attempting to compel him to appear at the Committee's Hearing solely to re-invoke his Fifth Amendment rights on a national stage.

Although the allegations in Dr. de la Torre's Complaint and Amended Complaint ("Compl." and "Am. Compl.," ECF Nos. 1, 17) sufficiently establish this Court's jurisdiction over his claims, this Court should grant Dr. de la Torre leave to take jurisdictional discovery before it rules on Defendants' MTD. While privileges and immunities under the Speech or Debate clause may be applicable to bar certain lawsuits, it is not absolute. And, consistent with this Circuit's "quite liberal" standard for permitting jurisdictional discovery, this Court should not allow Defendants to deploy the Speech or Debate Clause as a shield that immunizes their unlawful and unconstitutional conduct from this Court's judicial scrutiny, while concurrently shrouding in

1

darkness evidence and facts that overcome the very privileges and immunities that Defendants rely on to attempt to deprive this Court of jurisdiction in the first place.

## BACKGROUND

On July 25, 2024, the U.S. Senate Committee on Health, Education, Labor, and Pensions (the "Committee"), of which all Defendants are members, served Dr. de la Torre with the Subpoena commanding his testimony at a September 12, 2024 hearing titled, "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care" (the "Hearing"). Am. Compl. ¶ 3. Because the Hearing would focus exclusively on subjects that could expose Dr. de la Torre to criminal liability, Dr. de la Torre invoked his Fifth Amendment rights and informed the Committee—more than a week before the Hearing—that he would be unable to testify because he was invoking his Fifth Amendment rights in the face of a ferocious campaign, by members of the Committee and others, to pillory and crucify him as a loathsome criminal. *Id.* ¶ 4.

Although the Committee recognized that Dr. de la Torre invoked "[t]he Fifth Amendment privilege against self-incrimination," it proceeded to launch a campaign to publicly condemn and criminally punish Dr. de la Torre for his invocation and coerce his appearance anyway. *Id.* ¶ 5. Rather than examining the scope of Dr. de la Torre's invocation in private by an Executive Session or otherwise, as case law suggests it should have,[1] the Committee threatened to punish Dr. de la Torre if he failed to re-invoke his Fifth Amendment rights in public instead. *Id.* ¶ 52. Whatever legislative purpose may have been behind initially scheduling the Hearing, no legislative purpose

---

[1] *See Quinn v. United States*, 349 U.S. 155, 164–65 (1955) ("When a witness declines to answer a question because of constitutional objections and the language used is not free from doubt, the way is always open for the committee to inquire into the nature of the claim before making a ruling. . . . Here the committee made no attempt to have petitioner particularize his objection. Under these circumstances, we must hold that petitioner's references to the Fifth Amendment were sufficient to invoke the privilege. . . .").

2

is served by Defendants' threat and ultimate use of punishment against Dr. de la Torre for not subjecting himself to a televised tar-and-feathering exhibition in which Defendants would force him to repeat his Fifth Amendment invocation (over, and over, and over again) in response to *ad hominem* attacks and allegations of misconduct, or risk waiving his Fifth Amendment rights if he exhibited the temerity to defend himself in such a public spectacle. *Id.* ¶¶ 53–55, 71–78.

Following through on its promise to punish Dr. de la Torre for invoking his Fifth Amendment rights in response to the Subpoena, on September 12, 2024, the Committee announced it would pursue civil and criminal contempt resolutions against Dr. de la Torre ("the Resolutions"). *Id.* ¶ 58. After Dr. de la Torre reiterated his Fifth Amendment objections, the Committee passed both resolutions on September 19, 2024. *Id.* In the weeks preceding and immediately following the Committee's Hearing and Contempt votes, Committee members denounced Dr. de la Torre in press releases and other public remarks, instigating a wave of media coverage calling for Dr. de la Torre to be fired from his position at Steward and face criminal investigation. *Id.* ¶ 47. On September 23, 2024, Senator Sanders reported the criminal contempt resolution to the Senate floor for a full vote, and on September 25, 2024, the resolution passed. *Id.* ¶ 63. As of the date of this filing, however, the Committee has failed to bring the civil contempt resolution to the Senate floor, as seemingly required by Committee rules. *Id.* at ¶ 61.

Dr. de la Torre initiated this action on September 30, 2024, and in response to Defendants' initial Motion to Dismiss, he filed an Amended Complaint on December 10, 2024. Defendants filed their MTD on December 23, 2024, primarily arguing that the Speech or Debate Clause precludes the Court's jurisdiction over Dr. de la Torre's claims. In so doing, however, Defendants continue to misrepresent the crux of Dr. de la Torre's claims by conflating the privileges and immunities of the Speech or Debate Clause generally with the specific factual allegations that

3

authorize this Court to exercise jurisdiction over this matter in the first place. For example, rather than grappling with Defendants' specific and *ultra vires* conduct alleged in the Amended Complaint—*i.e.*, that the Committee acknowledged Dr. de la Torre's assertion of his Fifth Amendment privilege but then attempted to compel him before the Committee anyway for the sole purpose of re-invoking his Fifth Amendment right and later punished him for depriving the Committee of a televised opportunity to ridicule him in front of the American public for standing on his constitutional rights—Defendants deploy a strawman and contend that "investigative activities of committees – whether the authorization of investigations, the issuance of subpoenas, the holding of hearings, or the production of committee reports on investigations – are protected by the Speech or Debate Clause." *See* MTD at 17. In other instances, Defendants continue to obscure their actual unlawful and unconstitutional actions, for which the Speech or Debate clause provides no respite, by claiming that "defendants are absolutely immune from plaintiff's suit for authorizing this investigation and issuing the subpoena to him." *Id.*

Under this guise that Defendants themselves have created, Defendants claim that Dr. de la Torre "challenges the issuance of the subpoena to him and the Committee's voting to report resolutions for criminal contempt and civil enforcement to the Senate." *Id*. at 16. This is not an accurate picture of Dr. de la Torre's claims. The Speech or Debate Clause can only immunize members of Congress for acts that are integral to the deliberative and communicative lawmaking process. Defendants' actions in this case were far from integral to the legislative process—they were abusive, coercive, and lacking in any purpose (let alone a legislative one). Where the Clause protects legislative acts, Dr. de la Torre challenges the Committee's non-legislative acts. Defendants' attempt to portray immunity under the Speech or Debate clause as absolute rather

4

than limited to only those acts that are essential to the functioning of the legislative process is abundantly transparent and a flagrant abuse of Congressional power.

Accordingly, consistent with jurisprudence that says courts should grant jurisdictional discovery to ensure they review a complete record, *see GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) (granting jurisdictional discovery to remedy an "inadequate" record), this Court should grant Dr. de la Torre's request to conduct targeted jurisdictional discovery here.

## LEGAL STANDARD

Dr. de la Torre is entitled to reasonable discovery into Defendants' immunity assertions under the Speech or Debate Clause. Particularly, this Court should not allow Defendants to defeat the jurisdiction of a federal court merely by withholding discoverable information regarding Defendants' *ultra vires* conduct that would demonstrate that Speech or Debate Clause immunity is inapplicable in this case. *See, e.g.*, *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."). Indeed, the standard for permitting jurisdictional discovery in this Circuit is "quite liberal,"[2] and the D.C. Circuit has held that "ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992) (citing *Collins v. New York Central System*, 327 F.2d 880 (D.C. Cir. 1963)). Because Dr.

---

[2] *See Farouki v. Petra Int'l Banking, Corp.,* 683 F. Supp. 2d 23, 28 (D.D.C. 2010) (quoting *Davis v. Grant Park Nursing Home LP,* 639 F. Supp. 2d 60, 75 (D.D.C. 2009) (citation omitted)).

5

de la Torre "can supplement [his] jurisdictional allegations through discovery, [] jurisdictional discovery is justified." *See GTE New Media Servs.*, 199 F.3d at 1351.

## ARGUMENT

**I.    DISCOVERY WILL FURTHER ESTABLISH THIS COURT'S JURISDICTION OVER DR. DE LA TORRE'S CLAIMS**

This Court should grant Dr. de la Torre's request for jurisdictional discovery because it would allow Dr. de la Torre to further support his jurisdictional allegations and respond to Defendants' after-the-fact arguments with facts and evidence that are directly relevant to the arguments raised in Defendant's MTD. *GTE New Media Services Inc.*, 199 F.3d at 1351. Defendants mount two challenges to this Court's jurisdiction. First, Defendants argue the Speech or Debate Clause bars Dr. de la Torre's suit in its entirety because all of the challenged actions "fall squarely within the legislative sphere protected by the Clause," and Defendants are thus "absolutely immune" from suit. *See* MTD at 17. Second, Defendants argue that Dr. de la Torre lacks standing to bring his claims because his injuries are not judicially redressable because the "Speech or Debate Clause precludes courts from imposing liability on, or issuing equitable relief against, Members of Congress for actions taken during a committee hearing or for voting." MTD at 24.

Both of these jurisdictional arguments raise inextricable mixed questions of law and fact, and thus, are more properly determined on summary judgment. *See, e.g.*, *Am. Oversight v. U.S. Dep't of Veterans Affairs*, 498 F. Supp. 3d 145, 153 (D.D.C. 2020) ("As the D.C. Circuit has admonished, although a district court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard.") (citations omitted). To the extent this Court is inclined to

6

adjudicate this matter on motion to dismiss, however, the Court should allow Plaintiff an opportunity to conduct limited, targeted discovery into these factual issues.

      **A.**    **Jurisdictional Discovery Will Establish That Defendants' Actions Fell Outside of the Legislative Sphere**

The unlawful conduct giving rise to Dr. de la Torre's claims, as alleged in his Amended Complaint, consists exclusively of Defendants' *ultra vires* and unconstitutional actions for which no legislative purpose was served. For example, as alleged in the Amended Complaint, no legislative purpose was served by requiring Dr. de la Torre to appear before the Committee merely to re-assert his Fifth Amendment right repeatedly and on a national stage, and by threatening Dr. de la Torre with criminal penalties for failure to submit to this whim. Am. Compl. ¶¶ 51–54. Unwilling to grapple with the specific allegations of the Amended Complaint on the merits, instead, Defendants falsely claim that they are "absolutely immune" from this Court's scrutiny because the "activities of the defendants that plaintiff challenges . . . all . . . fall squarely within the legislative sphere protected by the [Speech or Debate] Clause." MTD at 2. Not so.

Legislative acts "are not all-encompassing," and by obscuring Defendants' *ultra vires* and unconstitutional conduct that is specifically alleged in the Amended Complaint, Defendants ignore that immunity under the Speech or Debate Clause is unavailing here because Defendants' conduct giving rise to Dr. de la Torre's claims are not "an integral part of the deliberative and communicative processes [of] Members participat[ing] in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Indeed, the Speech or Debate Clause does not reach conduct "that is in no wise related to the due functioning of the legislative process," nor conduct that is "in no way essential to the deliberations of the Senate." *Id.* (citation omitted). Nor does the Clause "prohibit inquiry into illegal conduct simply because it has *some nexus* to legislative functions, or because it is merely related to, as opposed to part of, the due functioning

7

of the legislative process." *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10 (D.C. Cir. 2006) (citation omitted). "[C]ompulsory process" in a congressional investigation can be "used only in furtherance of a legislative purpose," and "[i]t is the responsibility of the Congress, in the first instance, to insure that" a legislative purpose exists. *Watkins v. United States*, 354 U.S. 178, 201 (1957).

As applied to this case, targeted discovery is appropriate to demonstrate that Defendants' relevant conduct—*i.e.*, acknowledging Dr. de la Torre's invocation of his Fifth Amendment rights in response to the Subpoena, yet refusing to honor it, and then punishing him for that invocation—were unconstitutional, *ultra vires* actions neither related to nor essential to the due functioning of the legislative process. Indeed, despite that Dr. de la Torre invoked his Fifth Amendment rights prior to the Hearing and informed Defendants that he would be unable to provide any substantive testimony on that ground, Defendants have continued their efforts to enforce the Subpoena and punish Dr. de la Torre for invoking his Fifth Amendment rights and depriving the Committee of a televised opportunity to ridicule him in front of the American public for standing on his constitutional rights. Am. Compl. ¶ 56–64. Defendants' conduct was not an integral part of the legislative process because "there is no congressional power to expose for the sake of exposure." *See Trump v. Mazars USA, LLP*, 591 U.S. 848, 863 (2020).

Jurisdictional discovery in this case would likely reveal evidence that Defendants' actions were nothing more than *ultra vires* conduct taken for the "personal aggrandizement of the investigators or to 'punish' those investigated." *See Watkins*, 354 U.S. at 187 ("Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible."). For example, discoverable information and evidence regarding the context surrounding the Committee's enforcement efforts will help Dr. de la Torre demonstrate

8

that the Committee's actions fell outside the Clause's protection because the Speech or Debate Clause provides no immunity for actions taken exclusively to expose a witness in public "where the predominant result can only be an invasion of the private rights of individuals." *Id.* at 200. Dr. de la Torre also expects jurisdictional discovery will reveal that the Committee understood Dr. de la Torre asserted his Fifth Amendment rights prior to the Hearing, as well as evidence to show that there was no legislative purpose to hauling him before the Committee solely to re-invoke his Fifth Amendment rights in public. Defendants appear to dispute this fact or at least call it into question, *see* Meet and Confer Statement (ECF No. 19) ("[T]he Senate found Plaintiff in default of the subpoena not because of ***any assertion by Plaintiff that he would rely on his Fifth Amendment privilege*** . . ." (emphasis added)), despite Dr. de la Torre's well-pled allegations and supporting irrefutable evidence that the Committee understood his Fifth Amendment invocation (and indeed, purported to reject it). *See* Am. Compl. ¶¶ 51–52.

Jurisdictional discovery will also reveal evidence that Defendants' continued enforcement actions after Dr. de la Torre's invocation lacked any legislative purpose and were conducted exclusively to harass and intimidate him. For example, jurisdictional discovery will likely reveal discoverable evidence of how and the extent to which Defendants planned to attack and ridicule Dr. de la Torre in public, rather than ask any legitimate questions of him, and whether so doing was simply for the personal aggrandizement of members of the Committee. Discovery will also yield discoverable information about the Committee's communications with members of the media and other third parties ahead of the hearing, which may illuminate evidence regarding the lack of any legislative purpose in how Defendants responded to Dr. de la Torre's Fifth Amendment invocation. In short, Dr. de la Torre has a good faith belief that issues critical to establishing the Court's jurisdiction over his claims will be clarified via jurisdictional discovery.

B.  **Jurisdictional Discovery Will Further Establish Dr. de la Torre's Standing**

Defendants similarly have opened the door to targeted jurisdictional discovery by contending that Dr. de la Torre lacks standing because the Committee and Senate's actions are "complete." MTD at 26. Defendants cannot make factual arguments regarding the "completeness" of their actions in an effort to dismiss this case by presenting an incomplete and one-sided picture of the facts and then refusing to provide any discovery on the topic. For example, Defendants conceal that the Committee has failed, as required by the HELP Committee Rules, to "take or cause to be taken, necessary steps to bring the matter to a vote in the Senate."[3] Defendants also fail to mention that individual defendants have made public comments calling for Dr. de la Torre to suffer additional penalties for invoking his constitutional rights.[4] Jurisdictional discovery will allow Dr. de la Torre to address the Committee's misleading claims regarding their inability to redress Dr. de la Torre's injuries, by acquiring discoverable information regarding the Committee's position on whether and to what extent Dr. de la Torre's purported obligations under the Subpoena remain live into the 119th Congress,[5] and any engagement by the Committee with

---

[3] *See* Senate Committee on Health, Education, Labor, and Pensions Rules of Procedure, 169 CONG. REC. S295 (DAILY ED. Feb. 9, 2023) (HELP Committee Rule 12).

[4] Defendant Ed Markey has stated, "Ralph de la Torre's resignation is not enough, and must be held accountable in the court of law." Press Release, Senator Edward Markey, *Senator Markey Statement on Resignation of Disgraced Steward Health CEO Ralph de la Torre* (Sept. 28, 2024), https://www.markey.senate.gov/news/press-releases/senator-markey-statement-on-resignation-of-disgraced-steward-health-ceo-ralph-de-la-torre. Similarly, Senator Elizabeth Warren stated, "Ralph is not off the hook yet — the authorities still need to prosecute Ralph's contempt charges and investigate him for other possible crimes he may have committed as Steward's CEO[.]" Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024), https://www.bostonglobe.com/2024/09/28/business/ralph-de-la-torre-steward-health-care-ceo-resigns/.

[5] The subpoena and its obligations could remain live into the next Congress given the Senate's stature as a "continuing body." *McGrain v. Daugherty,* 273 U.S. 135, 181—182 (1927). Likewise, the next iteration of the Committee could continue to seek testimony from Dr. de la Torre at a future hearing pursuant to the same Subpoena.

10

the U.S. Attorney's Office or other law enforcement entities. Such discoverable information would allow Dr. de la Torre to refute Defendants' redressability claims and establish his standing to bring suit.

Defendants also claim that none of Dr. de la Torre's injuries are "judicially redressable," because "the Speech or Debate Clause precludes courts from imposing liability on, or issuing equitable relief against, Members of Congress for actions taken during a committee hearing or for voting." MTD at 24. As such, gathering discoverable information to establish that none of Defendants' actions challenged by Dr. de la Torre are protected by the Speech or Debate Clause will also allow Dr. de la Torre to establish that Defendants' actions are not immune, and are thus judicially redressable for standing purposes.

## II.   THE SPEECH OR DEBATE CLAUSE DOES NOT SHIELD DEFENDANTS FROM JURISDICTIONAL DISCOVERY

Defendants suggest that the Speech or Debate Clause also provides a sweeping and blanket prohibition on civil discovery in this case. *See* Meet and Confer Statement at 4 (ECF 19). Defendants are wrong. Just as the Clause only immunizes members of Congress from suits challenging their actions within the legislative sphere, "[r]esponsive documents that do not fall within the 'legitimate legislative sphere' must be produced." *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 248 (S.D.N.Y. 2015). Indeed, "documents or other material that comes into the hands of congressmen may be reached . . . if the circumstances by which they come can be thought to fall outside 'legislative acts' or the legitimate legislative sphere." *Id.* at 240. Particularly relevant here, documents that "may illustrate the legislature's purpose" are not shielded by the Speech or Debate Clause and are properly discoverable. *See Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 60 (D.D.C. 2007).

11

In seeking this discovery, Dr. de la Torre inquires not into the motives of Defendants (nor does he need to, as Defendants' motives have always been plain), but documents and communications that reflect the legislative purpose of continuing to compel Dr. de la Torre to appear in public to re-invoke his Fifth Amendment rights. Indeed, "*documents that reflect legislative purpose, rather than the motives of individual legislators*" "*must be produced.*" *See id.* at 54–55 (emphasis added). Dr. de la Torre can inquire into the purpose of a legislative act without desiring an explanation of motivations that prompted such action. "After all, there may be a difference between why an individual Member sponsored or supported a bill and what that bill was designed to accomplish." *Id.* at 60.

In addition, several of the Committee's actions—including Committee members' public remarks and communications with members of the press—fall squarely outside of the Speech or Debate Clause's protection because political communication, specifically efforts to "transmit[] . . . information by individual Members in order to inform the public" are not protected by the Speech or Debate Clause, as they are "not a part of the legislative function." *See Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979); *see also Doe v. McMillan*, 412 U.S. 306, 311–19 (1973) (distributing official committee reports outside the legislative sphere not protected by Speech or Debate Clause); *Comm. on Ways & Means*, 161 F. Supp. 3d at 245 ("[T]he Speech or Debate Clause does not provide protection for information communicated by a Member or aide to a member of the public."). Discovery regarding those actions is also clearly permissible.

For these reasons, gathering additional information about the nature of the Committee's enforcement efforts will clarify the extent to which they enjoy the absolute immunity they claim. Defendants should not be permitted to claim absolute immunity based on factual assertions

regarding the purpose of their actions, while simultaneously asserting the same absolute immunity to preclude any discovery into those same assertions.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to grant his Motion for Leave to Conduct Limited Jurisdictional Discovery. Plaintiff asks only for a limited opportunity to test the factual bases of the jurisdictional arguments that Defendants assert in an effort to dismiss his lawsuit.

---

[6] In any instance, Defendants cannot make a blanket assertion of Speech or Debate Clause protection in response to the argument that Dr. de la Torre is entitled to jurisdictional discovery. If Defendants "believe that responsive documents are protected by the Speech or Debate Clause, they . . . [should] list those documents in a privilege log." *Comm. on Ways & Means*, 161 F. Supp. 3d at 248.

Dated: January 2, 2025

                Respectfully submitted,

By:   /s/  *Alexander J. Merton*
William A. Burck (D.C. Bar No. 979677)
Alexander J. Merton (D.C. Bar No. 1029439)
   (*pro hac vice*)
Kaylee A. Otterbacher (D.C. Bar No. 90018061)
   (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000
williamburck@quinnemanuel.com
ajmerton@quinnemanuel.com
kayleeotterbacher@quinnemanuel.com

*Counsel to Plaintiff Dr. Ralph de la Torre*