**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DR. RALPH DE LA TORRE, M.D.,

               Plaintiff,

v.

BERNARD SANDERS, in his capacity as
Chairman of the Committee on Health,
Education, Labor, and Pensions of the
United States Senate, *et al*.,

               Defendants.

Civil Action No. 1:24-cv-02776-TNM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    THE SPEECH OR DEBATE CLAUSE DOES NOT DEPRIVE THIS COURT'S JURISDICTION TO ADJUDICATE DR. DE LA TORRE'S CLAIMS ...........................7

   A.    The Speech or Debate Clause Does Not Immunize Actions That Fail To Advance a Legitimate Legislative or Public-Informing Function...........................8

   B.    The Speech and Debate Clause Does Not Immunize Defendants' Conduct Because Such Conduct Was Not Legitimate Legislative Activity .........................9

      1.    Forcing Dr. de la Torre to Appear Before the Committee Only To Assert His Fifth Amendment Right Serves No Legislative Purpose ........12

      2.    Punishing Dr. de la Torre For Standing On His Fifth Amendment Rights Serves No Legislative Purpose ...........................................................16

II.    DR. DE LA TORRE HAS STANDING TO BRING HIS CLAIMS.................................17

   A.    Dr. de la Torre's Allegations of Reputational Harm Are Sufficient to Establish Standing ..................................................................................................18

   B.    Defendants' Actions Have Chilled Dr. de la Torre's Exercise of his Fifth Amendment Rights, which is Sufficient to Establish Standing .............................21

   C.    Dr. de la Torre's Continued Threat of Prosecution is Sufficient to Confer Standing.................................................................................................................22

   D.    Dr. de la Torre Remains Under Continued Threat of Enforcement of the Subpoena By Compulsion .....................................................................................23

   E.    Dr. de la Torre's Injuries Are Properly Redressable by this Court .......................24

III.    DR. DE LA TORRE'S AMENDED COMPLAINT STATES TWO COGNIZABLE CLAIMS FOR RELIEF ..............................................................................25

   A.    The Amended Complaint Pleads Facts Sufficient for this Court To Plausibly Find That No Legislative Purpose Was Served By Trying To Enforce the Subpoena after Dr. de la Torre's Fifth Amendment Invocation........26

   B.    The Amended Complaint Pleads Facts Sufficient for this Court to Find That a Violation of the Fifth Amendment Occurred by Punishing Dr. de la Torre for Invoking His Rights.................................................................................28

IV.    DR. DE LA TORRE'S SUIT DOES NOT SEEK TO FORESTALL ANY CRIMINAL PROCEEDING ............................................................................................34

   A.    Plaintiff Does Not Seek to Interfere With Potential Criminal Matters .................35

   B.    This Court Is An Appropriate Forum To Adjudicate Dr. de la Torre's Claims....................................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Al-Nashiri,*
  835 F.3d 110 (D.C. Cir. 2016)................................................................35

*Angelo v. Dist. of Columbia,*
  648 F. Supp. 3d 116 (D.D.C. 2022) ....................................................22, 23

*Ansara v. Eastland,*
  442 F.2d 751 (D.C. Cir. 1971)................................................................36

*Anton v. Prospect Cafe Milano, Inc.,*
  233 F.R.D. 216 (D.D.C. 2006) ...........................................................29, 33

*Bank of Nova Scotia v. United States,*
  487 U.S. 250 (1988) ..............................................................................15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................7

*Bethune-Hill v. Virginia State Bd. of Elections,*
  114 F. Supp. 3d 323 (E.D. Va. 2015)................................................11, 12

*\*Bowles v. U.S.,*
  439 F.2d 536 (D.C. Cir. 1970)...............................12, 13, 27, 29, 30, 32

*Comm. for Full Emp. v. Blumenthal,*
  606 F.2d 1062 (D.C. Cir. 1979)..............................................................23

*Croixland Properties Ltd. P'ship v. Corcoran,*
  174 F.3d 213 (D.C. Cir. 1999)..................................................................7

*Deaver v. Seymour,*
  822 F.2d 66 (D.C. Cir. 1987)..................................................................35

*Doe v. McMillan,*
  412 U.S. 306 (1973) ................................................................................9

*Eastland v. U. S. Servicemen's Fund,*
  421 U.S. 491 (1975) ...................................................................8, 15, 26

*Fields v. Off. of Eddie Bernice Johnson,*
  459 F.3d 1 (D.C. Cir. 2006)...............................................................9, 17

*Foretich v. U.S.*,
  351 F.3d 1198 (D.C. Cir. 2003)...........................................................20, 21, 24

*Gravel v. United States*,
  408 U.S. 606 (1972) ................................................................8, 9, 11, 27

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992)..................................................................24

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) .............................................................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................17

*Manafort v. U. S. Dep't of Just.*,
  311 F. Supp. 3d 22 (D.D.C. 2018) ............................................................35

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of
  Judicial Conference of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001)...............................................................20, 21

*McSurely v. McClellan*,
  521 F.2d 1024 (D.C. Cir. 1975)................................................................17

*Miranda v. Gonzales*,
  173 F. App'x 840 (D.C. Cir. 2006) ...........................................................35

*North v. Walsh*,
  656 F. Supp. 414 (D.D.C. 1987)...............................................................35

*Parker v. District of Columbia*,
  478 F.3d 370 (D.C. Cir. 2007)................................................................23

*Quinn v. United States*,
  349 U.S. 155 (1955)..........................................................................30

*Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*,
  593 F.2d 1030 (D.C. Cir. 1978)...............................................................35

*Richardson v. Cap. One, N.A.*,
  839 F. Supp. 2d 197 (D.D.C. 2012), *aff'd*, 544 F. App'x 3 (D.C. Cir. 2013) ............. 6, 10, 26

*Rtskhiladze v. Mueller*,
  110 F.4th 273 (D.C. Cir. 2024)...............................................................20

*Sandvig v. Barr*,
  451 F. Supp. 3d 73 (D.D.C. 2020)............................................................23

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ......................................................................................... 7

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ............................................................................ 35

*Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of*
    *Representatives*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015) .............................................................. 25

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) .......................................................................... 17

*Simon v. E. Kentucky Welfare Rights Org.*,
    48 L. Ed. 2d 450 (1976) .................................................................................... 22

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 22

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) .......................................................................................... 27

*Trump v. Mazars USA, LLP*,
    591 U.S. 848 (2020) ................................................................................. 8, 9, 29

*United States v. Armstrong*,
    517 U.S. 456 (1996) .......................................................................................... 35

*United States v. Bannon*,
    101 F.4th 16 (D.C. Cir. 2024) ........................................................................... 28

*United States v. Bolton*,
    496 F. Supp. 3d 146 (D.D.C. 2020) .................................................................. 30

*United States v. Cross*,
    170 F. Supp. 303 (D.D.C 1959) ................................................................. 12, 15

*United States v. Kilpatrick*,
    821 F.2d 1456 (10th Cir. 1987) ........................................................................ 15

*United States v. Ortiz*,
    82 F.3d 1066 (D.C. Cir. 1996) .......................................................................... 33

*United States v. Pitts*,
    918 F.2d 197 (D.C. Cir. 1990) .................................................................... 13, 29

*United States v. Reese*,
    561 F.2d 894 (D.C. Cir. 1977) .......................................................................... 33

*United States v. Simmons,*
    663 F.2d 107 (D.C. Cir. 1979) ................................................................................. 13, 29

*United States v. Thornton,*
    733 F.2d 121 (D.C. Cir. 1984) ......................................................................................... 33

*United States v. Tsui,*
    646 F.2d 365 (9th Cir. 1981) ........................................................................................... 33

*Walker v. Jones,*
    733 F.2d 923 (D.C. Cir. 1984) ........................................................................................... 8

*\*Watkins v. United States,*
    354 U.S. 178 (1957) ............................................................................. 8, 9, 11, 16, 28, 29

*Wengui v. Clark Hill PLC,*
    2021 WL 4948023 (D.D.C. Oct. 25, 2021) ....................................................................... 34

*Woodruff v. DiMario,*
    197 F.R.D. 191 (D.D.C. 2000) ............................................................................................ 7

*Younger v. Harris,*
    401 U.S. 37 (1971) ........................................................................................................... 35

## Other Authorities

170 CONG. REC. S6407 (DAILY ED. Sept. 25, 2024) ............................................................ 19

ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION § 3-4.6(h)
    (2017) ............................................................................................................................ 13, 31

JUSTICE MANUAL § 9-11.154 .................................................................................................. 31

*\*Daniel Curbelo Zeidman, To Call or Not to Call: Compelling Witnesses to
    Appear Before Congress,* 42 FORDHAM URB. L.J. 569, 586 (2014)
    .................................................................................................... 12, 13, 22, 28, 32

Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre
    Will Resign,* THE BOSTON GLOBE (Sept. 28, 2024) ...................................................... 18

Joshua Pederson, *Did the Murder of an Insurance CEO Make You Angry? Maybe
    That's A Good Thing,* SAN FRANCISCO CHRONICLE (Jan. 1, 2025)
    https://www.sfchronicle.com/opinion/openforum/article/health-care-brian-
    thompson-20003245.php ..................................................................................................... 19

Plaintiff Ralph de la Torre, M.D. ("Dr. de la Torre") respectfully submits this opposition to the Motion to Dismiss ("Motion" or "MTD," ECF 18) Dr. de la Torre's Amended Complaint ("Amended Complaint" or "Am. Compl.," ECF 17) filed by Defendants Bernard Sanders, Bill Cassidy, M.D., Patty Murray, Robert P. Casey, Jr., Tammy Baldwin, Christopher Murphy, Tim Kaine, Margaret Wood Hassan, Tina Smith, Ben Ray Luján, John W. Hickenlooper, Edward J. Markey, Susan M. Collins, Lisa Murkowski, Mike Braun, Roger Marshall, M.D., Mitt Romney, Tommy Tuberville, Markwayne Mullin, and Ted Budd, as well as the U.S. Senate Committee on Health, Education, Labor, and Pensions (the "Committee," and collectively with each individual Defendant Senator, "Defendants").

## INTRODUCTION

Dr. de la Torre initiated this action against Defendants to redress their continuing violations of his constitutional rights, including by punishing him for invoking his Fifth Amendment rights in response to a subpoena (the "Subpoena") commanding his sworn testimony at a public hearing, as well as continuing to command his sworn testimony by compulsion without regard for the validity of his invocation. Because no law required Dr. de la Torre to appear in a publicly televised hearing before the Committee just to re-invoke his Fifth Amendment rights, Dr. de la Torre's invocation effectively deprived the Committee of an opportunity to ridicule him in front of the American public or lead the public to infer criminal misconduct by coercing him to invoke his Fifth Amendment rights in a televised shaming spectacle. Confronted with this reality, Defendants violated Dr. de la Torre's constitutional rights by deploying a campaign of unlawful, *ultra vires* activity that served no legitimate purpose, legislative or otherwise, other than to intimidate, dissuade, and ultimately punish him for standing on his Fifth Amendment rights.

In their Motion, Defendants falsely suggest that this Court does not have authority to review and redress Defendants' unlawful conduct because, according to Defendants, the Speech or Debate Clause provides them absolute immunity from Dr. de la Torre's claims. Not so. Immunity under the Speech or Debate Clause is not all encompassing, and it provides no immunity for conduct that falls outside the "sphere of legitimate legislative activity" when those acts impinge on the rights of private individuals. In this case, the facts alleged in the Amended Complaint demonstrate that the Speech or Debate Clause provides Defendants no sanctuary for the unlawful conduct that give rise to Dr. de la Torre's claims—*i.e.*, Defendants' actions to coerce Dr. de la Torre to appear at a public hearing only to re-invoke his Fifth Amendment rights, and then weaponizing Congress's civil and criminal contempt processes to punish him for refusing to do so—because those actions "did not perform any legislative or public-informing function."

Rather than grapple with the specific allegations in the Amended Complaint, Defendants attempt to cloak their misconduct as "legislative" actions that are normally immunized by the Speech or Debate Clause. Defendants' attempt to mischaracterize their misconduct as "legislative" in nature is of no moment, however, because the Speech or Debate Clause does not immunize members of Congress from lawsuits or liability for their actions that are outside of the legislative sphere, even if those actions are performed in their official capacity or prompted by legitimate legislative activity. Indeed, the Speech or Debate Clause provides no mechanism for Defendants to disregard constitutional rights and protections wholesale as they see fit, simply by claiming that their conduct ostensibly advances some illusory and undefined "legislative purpose."

Next, Defendants say that this Court lacks jurisdiction to adjudicate Dr. de la Torre's claims because, according to Defendants, Dr. de la Torre has not identified a concrete injury traceable to Defendants' conduct. Again, not so. The facts alleged in the Amended Complaint articulate how

Defendants' unlawful and *ultra vires* campaign to punish Dr. de la Torre for standing on his Fifth Amendment rights has damaged Dr. de la Torre's personal and professional reputation, chilled and deterred him from exercising his constitutional rights, and left him suffering from the ongoing threat of civil and criminal prosecution. Although Dr. de la Torre has not made a claim for monetary damages, Dr. de la Torre has appropriately established standing to bring his claims because a judicial determination that Defendants acted unlawfully in response to Dr. de la Torre's invocation of his Fifth Amendment rights provides "a significant measure of redress" for damages to Dr. de la Torre's reputation, as well as damages he continues to sustain from Defendants' undeterred and continuing violations and threats of additional punishment.

Defendants also argue that Dr. de la Torre fails to state a claim under Rule 12(b)(6) by falsely arguing that his Fifth Amendment invocation was valid only if he appeared before the Committee and invoked the privilege in response to specific questioning. Defendants are wrong. Indeed, Defendants have identified no rule or law that forces Dr. de la Torre to appear before the Committee in a public spectacle for the sole purpose of re-invoking his Fifth Amendment rights on a question-by-question basis. In fact, the opposite is true. Not only is Defendants' desire for "high court room drama" prohibited in a Committee chamber, their insistence that Dr. de la Torre cannot avail himself of Fifth Amendment protection, unless he does so in a televised public hearing, further demonstrates that their actions to effectuate this goal served no purpose other than their self-aggrandizing and punitive aims, including to publicly extract the precise inference of criminal misconduct from Dr. de la Torre that the Fifth Amendment is intended to protect.

Finally, Defendants continue to abdicate their personal responsibility and disparage Dr. de la Torre by insisting that his claims were brought only "to interfere with a threatened criminal proceeding," despite Defendants claiming in the same breath that any such proceeding is far too

speculative for standing purposes.  Not only are Dr. de la Torre's claims separate and independent from any potential investigation, indictment, or other criminal proceeding, but further, he simply seeks redress in the form of declaratory and injunctive relief as against these Defendants—not the Department of Justice.  Defendants maintain that Dr. de la Torre will have "an adequate federal forum in which to present his defenses," but even if such a criminal proceeding were to arise, it would not provide Dr. de la Torre a sufficient forum to hold Defendants accountable for their unlawful conduct as alleged in the Amended Complaint, nor would it provide an adequate forum to enjoin Defendants from continuing to violate Dr. de la Torre's constitutional rights.

Accordingly, this Court should deny Defendants' Motion to Dismiss the Amended Complaint in full.

## FACTS

On July 25, 2024, Defendants served Dr. de la Torre with the Subpoena commanding his testimony at a September 12, 2024 hearing titled, "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care" (the "Hearing").  Am. Compl. ¶ 3.  Because the Hearing would focus exclusively on subjects that could expose Dr. de la Torre to criminal liability, Dr. de la Torre invoked his Fifth Amendment rights and informed Defendants—more than a week before the Hearing—that he would be unable to testify.  *Id.* ¶ 4. The Committee understood that Dr. de la Torre invoked his Fifth Amendment rights.  *See* Am. Compl. ¶¶ 10, 51.  Indeed, in a September 5, 2024 letter in response to Dr. de la Torre's Fifth Amendment invocation, Defendants explicitly recognized that he was invoking his "Fifth Amendment privilege against self-incrimination" as a reason why "it would be inappropriate to compel Dr. de la Torre to appear before the Committee."  *Id.* ¶ 5.  Consequently, Defendants were well aware that Dr. de la Torre would not provide any substantive testimony at the Hearing in light of his Fifth Amendment invocation.  *Id.* ¶¶ 51–52, 72–74.

Faced with the reality that Dr. de la Torre's invocation would effectively deprive Defendants of a televised opportunity to ridicule him in front of the American public and lead the public to infer criminal misconduct by coercing him to invoke his Fifth Amendment rights in a televised shaming spectacle, *see* Am. Compl. ¶¶ 10, 53, Defendants launched a campaign of unlawful, *ultra vires* activity that served no legitimate purpose, legislative or otherwise, other than to intimidate, dissuade, and ultimately punish him for standing on his Fifth Amendment rights, *id.* ¶¶ 56–64.

Although forcing Dr. de la Torre to appear in a televised hearing only to re-invoke his Fifth Amendment rights would serve no legitimate legislative purpose, Defendants disregarded Dr. de la Torre's invocation by summarily "overruling" it and "reject[ing] any suggestion that Dr. de la Torre can refuse to appear for testimony before the Committee on this ground." Am. Compl. ¶ 5. Then, Defendants resorted to intimidation tactics to compel Dr. de la Torre's testimony despite his Fifth Amendment invocation and to dissuade him from standing on his Fifth Amendment rights. *Id.* ¶ 51. For example, Defendants promised to bring criminal contempt charges against Dr. de la Torre *unless* he submitted to the Committee's televised spectacle of public degradation and pillorying, where Dr. de la Torre would be forced to repeatedly refuse to answer questions on constitutional grounds, all while Defendants attacked him (including for remaining silent) and solicited vitriolic testimony from other witnesses calling Dr. de la Torre a "health care terrorist[]," advocating for his imprisonment, and labeling him as a "coward." *Id.* ¶¶ 5, 51.

In response to Dr. de la Torre's invocation of his Fifth Amendment rights, Defendants made it abundantly clear that they would put Dr. de la Torre's invocation itself at the heart of their televised circus and paint him as guilty for the sin of remaining silent in the face of these assaults on his character and integrity. Am. Compl. ¶ 5; *see also id.* ¶ 53 n.19 (statement of Senator

Elizabeth Warren, "… if Mr. de la Torre believes the answers will put him at risk for going to jail, he can take the Fifth Amendment *right out in public for everyone to see*.").   Indeed, after Dr. de la Torre re-invoked his Fifth Amendment rights on September 18, 2024, the Committee followed through on its promise to extract its pound of flesh and punish Dr. de la Torre for his invocation by announcing that it would pursue civil and criminal contempt resolutions against him as punishment for refusing to bend to their political and vindictive whims. *Id.* ¶ 56.  The Committee passed both resolutions on September 19, 2024, *id.* ¶ 58, and in the weeks preceding and immediately following the Committee's Hearing and Contempt votes, Defendants denounced Dr. de la Torre in press releases and other public remarks, instigating a wave of media coverage calling for Dr. de la Torre to be fired from his position at Steward and face criminal investigation (the very sort of potential criminal investigation that led Dr. de la Torre to invoke his Fifth Amendment rights in the first place), *id.* ¶ 47.

On September 23, 2024, Senator Sanders reported the criminal contempt resolution to the Senate floor for a full vote, but purposefully neglected to raise a single mention of Dr. de la Torre's invocation of the Fifth Amendment.  *Id.* ¶¶ 59, 63.  As a result of Senator Sanders concealing Dr. de la Torre's Fifth Amendment invocation from the discussion before the full Senate floor, on September 25, 2024, Defendants' criminal contempt resolution passed unanimously, and in addition to the continued threat of criminal punishment, Dr. de la Torre remains under threat of continued enforcement of the Committee's Subpoena.  *Id.* ¶¶ 60–63.

## LEGAL STANDARD

In evaluating a motion to dismiss under both Rules 12(b)(1) and 12(b)(6), this Court must treat the Amended Complaint's factual allegations as true, and grant Dr. de la Torre the benefit of all inferences that can be derived from those facts. *See Richardson v. Cap. One, N.A.*, 839 F. Supp. 2d 197, 199–200 (D.D.C. 2012), *aff'd*, 544 F. App'x 3 (D.C. Cir. 2013) ("[T]he Court must 'treat

the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'") (citations omitted); *see also Scheuer v. Rhodes*, 416 U.S. 232 (1974) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (" Accordingly, unless "it is clear that *no relief could be granted* under any set of facts that could be proved consistent with the allegations" in Dr. de la Torre's Amended Complaint, this Court must deny Defendants' Motion to Dismiss in full.  *See Croixland Properties Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999) (emphasis added); *see also Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000) ("[T]he court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

## ARGUMENT

I.    **THE SPEECH OR DEBATE CLAUSE DOES NOT DEPRIVE THIS COURT'S JURISDICTION TO ADJUDICATE DR. DE LA TORRE'S CLAIMS**

The facts alleged in the Amended Complaint establish that coercing Dr. de la Torre to appear before a public hearing only to re-invoke his Fifth Amendment rights, and then weaponizing Congress's civil and contempt processes to punish him for refusing to do so, are not legislative acts immunized by the Speech or Debate Clause because those actions do not perform any legislative or public-informing function.  In their Motion, Defendants go through great lengths to declare that the Speech or Debate Clause insulates *all* of Defendants' conduct from judicial scrutiny simply if they are "legislative" in nature, even if their conduct is patently illegal or otherwise deprives citizens of their constitutional rights.  MTD at 14–20.  Defendants are mistaken.

Although the Speech or Debate Clause provides absolute immunity for legitimate legislative acts—*i.e.*, conduct that serves a legitimate legislative or public-informing function[1]—the Clause provides no respite from this Court's judicial scrutiny in this case because none of Defendants' actions that gives rise Dr. de la Torre's claims were within the sphere of legitimate legislative activity. Because the Speech or Debate Clause does not immunize conduct that falls outside Congress's legislative role, the Speech or Debate Clause is wholly inapposite here.

A.    **The Speech or Debate Clause Does Not Immunize Actions That Fail To Advance a Legitimate Legislative or Public-Informing Function**

Although the Speech or Debate Clause provides absolute immunity for legitimate legislative acts, it is neither all-encompassing nor absolute. *See Watkins v. United States*, 354 U.S. 178, 187 (1957); *see also Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972) (the purported "absolute immunity secured by the [Speech or Debate] Clause . . . is 'not all-encompassing.'"). Instead, the Speech or Debate Clause protects *only* actions by members of Congress that "fall within the 'sphere of legitimate legislative activity.'" *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 501 (1975).

Indeed, the Speech or Debate Clause does not immunize conduct "that is in no wise related to the due functioning of the legislative process," nor conduct that is "in no way essential to the deliberations of the Senate." *See Gravel*, 408 U.S. at 625 (citation omitted). For example, because Congress has no power "to expose for the sake of exposure" nor "to expose where the predominant result can only be an invasion of the private rights of individuals," *see Watkins*, 354 U.S. at 200, immunity under the Speech or Debate Clause is unavailable for such conduct. Likewise, the Supreme Court has also recognized that investigations conducted "solely for the personal

---

[1]    *See Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)).

aggrandizement of the investigators or to 'punish' those investigated," such as Defendants' actions here, "are indefensible" and well outside of the reach of the Clause. *See id.* at 188; *see also Mazars*, 591 U.S. at 863.

Contrary to Defendants' suggestion, the Speech or Debate Clause does not immunize all illegal acts, even if they are "legislative" in nature, particularly when those acts serve no legitimate legislative function. *Compare* MTD at 19 (citing *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973)) ("Congressmen . . . are immune from liability for their actions within the legislative sphere even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes.") *with Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10 (D.C. Cir. 2006) ("The Speech or Debate Clause therefore does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions, or because it is merely 'related to,' as opposed to 'part of,' the 'due functioning' of the 'legislative process.'") (citation omitted). This Court is authorized to review acts that are "clearly legislative in nature," especially when "its execution impinges on a citizen's rights." *Gravel*, 408 U.S. at 618.

B.     **The Speech and Debate Clause Does Not Immunize Defendants' Conduct Because Such Conduct Was Not Legitimate Legislative Activity**

Despite what much of Defendants' Motion to Dismiss suggests, Dr. de la Torre's Amended Complaint does not challenge garden-variety conduct that the Speech or Debate Clause normally immunizes. Rather, the facts alleged in the Amended Complaint establish that, in fact, none of Defendants' conduct giving rise to Dr. de la Torre's claims—*i.e.*, actions that Defendants took to attempt to coerce Dr. de la Torre into appearing at the Hearing only to publicly re-invoke his Fifth Amendment rights, and then punishing him for refusing to so—serve any legitimate legislative or

public-informing function, and therefore fall outside of the Speech or Debate Clause's immunity altogether.[2]

Defendants do not dispute that these specific actions serve no legislative purpose, nor could they. *See Richardson*, 839 F. Supp. 2d at 199–200 ("[T]he Court must 'treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'") (citations omitted). Instead, Defendants attempt to obscure the specific actionable misconduct that gives rise to Dr. de la Torre's claims by dedicating five of its seven pages on the Speech or Debate Clause to generally proclaim that the Clause provides immunity for legitimate legislative acts, such as authorizing investigations, holding hearings, taking testimony, issuing subpoenas, voting on resolutions. *See, e.g.*, MTD at 14–20. This is both a strawman and of no moment here.

Attempting to pigeonhole its strawman into this case, Defendants mischaracterize Dr. de la Torre's very specific claims as general challenges to "actions taken as part of a congressional investigation," such as authorizing an investigation and issuing the Subpoena. *See* MTD at 16–17. The Amended Complaint, however, is replete with well-pleaded allegations that show the

---

[2]    While the Amended Complaint speaks for itself, it is worth noting that Dr. de la Torre's claims are not predicated on the Committee's motives, as Defendants suggest. *See* MTD at 19. While the record of Defendants' distain for Dr. de la Torre is palpable, it is the Committee's *actions* alone that prompt Dr. de la Torre's lawsuit, not their subjective motives, *see* Am. Compl. ¶ 51 ("[T]he Committee violated Dr. de la Torre's constitutional rights by promising to bring civil and criminal contempt proceedings against Dr. de la Torre unless he provided sworn testimony at the Committee's Hearing or appeared in person to invoke those rights . . ."); *id.* ¶ 53 ("[R]equiring Dr. de la Torre to attend the hearing only to repeat his Fifth Amendment invocation serves no valid legislative purpose to the Committee."). Defendants' suggestion that motives are irrelevant to determining the applicability of Speech or Debate Clause immunity merely conflates motives, on the one hand, with legislative purpose, on the other, and Defendants' attempt to obscure the distinction between these two considerations is both transparent and unavailing. *See Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp 30, 60 (D.D.C. 2007) ("After all, there may be a difference between why an individual Member sponsored or supported a bill and what that bill was designed to accomplish.").

Committee understood that forcing Dr. de la Torre to appear publicly to re-invoke his rights would not result in *any* substantive information that the Committee could use to conduct legislative business. *See* Am. Compl. ¶¶ 53–55, 71–74. Likewise, Defendants do not dispute that the purpose served by Defendants' insistence that Dr. de la Torre re-invoke his Fifth Amendment rights in a televised public spectacle, and then punishing him for refusing to do so, was to punish and expose him for the personal aggrandizement of the Defendants, and to "hold Dr. de la Torre accountable," subject him to a "day of reckoning," and force him to plead his Fifth Amendment rights "right out in public for everyone to see." *Id.* ¶ 53 & n.19, 73. Indeed, it is uncontested that no legislative purpose is served by forcing Dr. de la Torre to appear before the Committee and the nation solely to invoke his Fifth Amendment rights. While a forced public re-invocation of Dr. de la Torre's rights, interspersed with accusatorial questioning and grandstanding, might have served Defendants' political purposes, it served no legislative one.

While Defendants claim "absolute immunity" over their actions as a general matter, MTD at 2, they entirely fail to grapple with Dr. de la Torre's specific allegations of conduct that fell outside of the legislative sphere. To be sure, the applicability of the Speech or Debate Clause is Defendants' burden to bear in the first instance. *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 331 (E.D. Va. 2015) ("[T]he party claiming the privilege must prove that the activities are 'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation . . . .'") (quoting *Gravel v. United States*, 408 U.S. at 625); *Watkins*, 354 U.S. at 201 ("It is the responsibility **of the Congress**, in the first instance, to insure that" a legislative purpose exists.") (emphasis added). Defendants have failed to make any requisite showing that their actions were integral to the legislative process, nor could they, as they

11

do not (because they cannot) dispute that their actions had no legislative purpose.  A bare assertion of "absolute" immunity does not suffice, *Bethune-Hill*, 114 F. Supp. 3d at 331, thus Defendants' red herring must be rejected.

      **1.**    **Forcing Dr. de la Torre to Appear Before the Committee Only To Assert His Fifth Amendment Right Serves No Legislative Purpose**

Defendants do not cite to a rule or case that obligates a witness to appear before a publicly televised Committee in order to invoke the Fifth Amendment's protections, and indeed, the law does not require it.  This is for good reason, as no fact from which any legislation might be informed could validly be drawn from Dr. de la Torre's repeated re-invocation of his Fifth Amendment privilege.  *See United States v. Cross*, 170 F. Supp. 303, 309 (D.D.C 1959) ("If the witness refused to answer, invoking the protection of the Fifth Amendment, the Committee gained no new information—certainly none which would tend to influence legislation."); *Bowles v. U.S.*, 439 F.2d 536, 541–42 (D.C. Cir. 1970) (emphasis added) ("*[N]o valid purpose can be served* by informing the jury that a witness has chosen to exercise his constitutional privilege."); Daniel Curbelo Zeidman, *To Call or Not to Call: Compelling Witnesses to Appear Before Congress*, 42 FORDHAM URB. L.J. 569, 602 (2014) ("[W]hen Congress compels an individual to appear before a congressional committee to merely assert his or her right against self-incrimination, it receives no information . . . . [which] does not further the legislative process, because the only information it provides is inferential. Legislating based on inference is ineffective policy-making that is frowned upon by members of Congress.").

Several bodies, including members and committees of the Senate itself, have affirmed this approach.  In 1973, then-Senator Sam Ervin and the Senate Select Committee to Investigate Campaign Practices, investigating Watergate at the time, refused to call witnesses before the Committee merely to assert the Fifth Amendment, acknowledging that "no witness asserting his

Fifth Amendment privilege would be forced to appear publicly before television cameras to repeat his refusal to answer questions on constitutional grounds." *See* SAMUEL DASH, CHIEF COUNSEL: INSIDE THE ERVIN COMMITTEE – THE UNTOLD STORY OF WATERGATE, 191 (1976)); Am. Compl. ¶ 7, n.5. The Committee had "concluded that public display of such witnesses" called solely to invoke their Fifth Amendment rights "could serve only an improper purpose of showmanship and did not perform any legislative or public-informing function." *Id.*

The same approach is taken in criminal trials, where neither the prosecution nor a defendant may compel a witness to take the stand for the sole purpose of watching them invoke the Fifth Amendment's protections. *See, e.g.*, *United States v. Simmons*, 663 F.2d 107, 108 (D.C. Cir. 1979) ("[A] witness has the right to exercise [the Fifth Amendment] privilege without taking the stand."); *United States v. Pitts*, 918 F.2d 197, 200 (D.C. Cir. 1990) ("A witness may not be put on the stand for the purpose of allowing the jury to watch him take the Fifth.") (cleaned up); ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION § 3-4.6(h) (2017) ("The prosecutor should not seek to compel the appearance of a witness . . .if the witness states in advance that if called the witness will claim the constitutional privilege not to testify[.]"); *see also*, Daniel Curbelo Zeidman, *To Call or Not to Call: Compelling Witnesses to Appear Before Congress*, 42 FORDHAM URB. L.J. 569, 586 (2014) (recommending that Congress should not call a witness before a committee merely to invoke the Fifth Amendment, consistent with practice in criminal law, as "[i]n congressional hearings, members of Congress act as the prosecution"). Forcing a witness to the stand merely to invoke their Fifth Amendment privilege "only invite[s] the jury to make an improper inference," which the Fifth Amendment specifically prohibits. *Bowles*, 439 F.2d at 542.

Likewise, the D.C. Bar's Legal Ethics Committee has admonished the practice of hauling a witness before a congressional committee merely to invoke the Fifth Amendment, repeatedly

recognizing that "where an attorney has some question whether the witness will assert the privilege, there is no need to test that claim of privilege in public[.]" *See* D.C. Bar Legal Ethics Comm., Op. 358 (2011) ("Op. 378"); *see also* D.C. Bar Legal Ethics Comm., Op. 31 (1977) ("Op. 31").[3] Although Defendants flout these holdings as "non-binding advisory ethics opinions," they nevertheless concede their import: it is improper to summon a witness to appear before a Congressional committee when that witness will provide no information to the committee and compelling the witness's attendance serves no purpose other than to degrade that witness." *See* MTD at 43 n.9; Op. 378.

In this case, the Committee repeatedly acknowledged that they knew Dr. de la Torre would provide no information to the Committee on account of his Fifth Amendment invocation. *See* Am. Compl. ¶¶ 51–53 & n.19, 71–74. Moreover, the undisputed allegations in the Amended Complaint highlight that the Committee made clear that compelling Dr. de la Torre to attend the Hearing served no other purpose than to pillory and degrade Dr. de la Torre. Not only did Committee leadership and members foreshadow that members of the Committee would "hold Dr. de la Torre accountable" and create a "day of reckoning" at the Hearing, Am. Compl. ¶ 49, but it was precisely what occurred at the Hearing even in Dr. de la Torre's absence. *Id.* ¶¶ 5, 53–55. At the Hearing, the Committee solicited testimony from three witnesses who called Dr. de la Torre a "health care terrorist[]" and a "coward" who should be "put [] in jail because that's where he deserves to be." *Id.* ¶ 5 & n.3.

---

[3] Dr. de la Torre also notes that several members of the Committee's legal counsel—who conferred directly with Dr. de la Torre's counsel and seemingly advised Defendants' response to Dr. de la Torre—appear to be active members of the D.C. Bar, whose actions would indeed be governed by this "non-binding advisory" opinion.

Case 1:24-cv-02776-TNM    Document 21-1    Filed 01/06/25    Page 21 of 44

In an attempt to ignore several ethics opinions and the Senate's own internal precedent that is precisely on point with the situation at bar, Defendants seek to rely on *United States v. Kilpatrick*, 821 F.2d 1456, 1472 (10th Cir. 1987) and *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) to claim that it is permissible to call a witness before a grand jury solely to invoke the Fifth Amendment's privilege. These cases are inapposite, as both implicate a witness's testimony before a grand jury, where "the prosecution repeated the caution to the grand jury that it was not to draw any adverse inference from a witness' invocation of the Fifth Amendment," *Bank of Nova Scotia*, 487 U.S. at 259; *see also Kilpatrick*, 821 F.2d at 1472 n.19, a vital constitutional protection that would have been unavailable to Dr. de la Torre at the Hearing. Moreover, grand jury proceedings are confidential, unlike the public shaming spectacle to which Defendants sought to subject Dr. de la Torre. Neither case indicates any functional purpose that was served by the witness's attendance and subsequent invocation of the Fifth Amendment.

Accordingly, even if the Subpoena as-issued to Dr. de la Torre in July had a proper legislative purpose, it lost any such character when Defendants attempted to enforce the Subpoena over Dr. de la Torre's Fifth Amendment assertion, knowing that the Committee could not attain the information it sought.[4] *See United States v. Cross*, 170 F. Supp. 303, 306 (D.D.C 1959) (citing

---

[4] Defendants' statement that "[t]he Supreme Court's decision in *Eastland* is directly on point" illustrates its grave misunderstanding of Dr. de la Torre's claims. MTD at 18. While in *Eastland*, plaintiffs argued that the "'sole purpose' of the subpoena was to 'harass, chill, punish and deter ([plaintiff] and its members) in their exercise of their rights and duties under the First Amendment. . .'" the plaintiff in that case did not dispute that the subpoena at issue would have yielded information directly pertinent to the Senate Committee's investigation. In other words, there existed a valid legislative purpose in issuing and enforcing the subpoena in that case that requested certain banking records. Even though the plaintiff in *Eastland* argued that the subpoena's underlying purpose was to harass and deter plaintiff, there still existed an objective legislative purpose to the subpoena—it would have yielded information that would have assisted in "scrutinizing closely possible infiltration of subversive elements into an organization which directly affects the armed forces of this country." *Eastland*, 421 U.S. at 497 (citation omitted and

15

*Watkins*, 354 U.S. at 187)  (Congress "has no power to compel the testimony of a witness for other than a bona fide legislative purpose, even though the testimony be relevant to the subject matter of the authorized investigation.").

### 2. Punishing Dr. de la Torre For Standing On His Fifth Amendment Rights Serves No Legislative Purpose

After tarring and feathering Dr. de la Torre at the Hearing by soliciting testimony from other their cherry-picked witnesses to paint Dr. de la Torre as a criminal, *see* Am. Compl. ¶ 5 & n.3, Defendants engaged in additional unlawful and *ultra vires* conduct by further punishing him for standing on his constitutional rights and refusing to subject himself to a public character assassination.

Indeed, Defendants proclaimed at the Hearing that they would bring civil and criminal enforcement resolutions against Dr. de la Torre to punish him for refusing to willingly subject himself to the public humiliation that would result from being forced to re-assert his Fifth Amendment rights on a national stage. *Id.* at 56.  Defendants did, in fact, bring the resolutions a week later, even after Dr. de la Torre re-invoked the Fifth Amendment in correspondence to the Committee.  *Id.* ¶ 57.  Without a single mention of Dr. de la Torre's Fifth Amendment invocation, the Committee approved both contempt resolutions on September 19, 2024, as did the full Senate on September 25, 2024.  *Id.* ¶ 58.  Dr. de la Torre's Amended Complaint alleges that through these actions, the "Committee intends . . . to punish Dr. de la Torre *criminally* for asserting his Fifth Amendment rights[.]"  *Id.* ¶ 60.

---

alteration adopted).  That is why the Court in *Eastland* found that the subpoena had a valid legislative purpose.  The same is not true here.  Defendants knew, before the Hearing, that Dr. de la Torre would not have provided any information because he had already asserted his Fifth Amendment privilege. Am. Compl. ¶ 4.

Although Defendants attempt to frame this unlawful conduct as merely "voting on resolutions," MTD at 17–18, Defendants cannot disguise unlawful and unconstitutional conduct as "legislative" by merely claiming it smacks of a proper legislative purpose or maintains a nexus to legislative actions. *See Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d at 10; *McSurely v. McClellan*, 521 F.2d 1024, 1040 (D.C. Cir. 1975), *on reh'g*, 553 F.2d 1277 (D.C. Cir. 1976) ("Constitutional immunity may be withdrawn" when "no rational legislative purpose can be found for a committee's action . . ."). To argue otherwise would result in a blank check for members of Congress to disregard constitutional rights and protections as they see fit under the guise of an all-encompassing "legislative purpose." *Id*.

Because Defendants' actions fell well outside the legislative sphere, as alleged in Dr. de la Torre's Amended Complaint, the Speech or Debate Clause is no bar to this Court's jurisdiction.

## II.    DR. DE LA TORRE HAS STANDING TO BRING HIS CLAIMS

Defendants next argue that Plaintiff "has not established Article III standing." MTD at 20. Again, Defendants are wrong. At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presum[es] that general allegations embrace the specific facts that are necessary to support the claim.'" *Sierra Club v. EPA*, 292 F.3d 895, 898–99 (D.C. Cir. 2002) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The factual allegations in the Amended Complaint demonstrate that Defendants actions have damaged Dr. de la Torre's reputation, chilled and deterred him from exercising his constitutional rights, and left him suffering from the ongoing threat of civil and criminal prosecution. It is beyond reproach that as plead and read in the light most favorable to the Plaintiff, Dr. de la Torre suffered several concrete injuries, each of which is traceable to the Defendants' efforts to force him to publicly re-invoke his Fifth Amendment right and could be redressed by his requested relief.

17

A.    **Dr. de la Torre's Allegations of Reputational Harm Are Sufficient to Establish Standing**

The Amended Complaint is replete with facts that establish that the Committee punished Dr. de la Torre for exercising his Fifth Amendment rights.  In their crusade, Defendants engaged in substantial unlawful conduct serving no other purpose than to "publicly humiliate" Dr. de la Torre, branding him a "criminal" and staining reputation.  Am. Compl. ¶ 55, 65 ("Dr. de la Torre has suffered immense harm and damage, including reputational damage, as a result of the Committee's unlawful conduct.").

For example, the Committee's September 12, 2024, Hearing, September 19, 2024, Executive session, votes to report both resolutions, as well as subsequent press releases and public statements accompanying these actions, have damaged Dr. de la Torre's personal and professional reputation.  *Id.* ¶¶ 65–66. Defendants also baselessly lambasted Dr. de la Torre for ostensibly "pocket[ing] millions of dollars and us[ing] it to engage in international schemes, spy on corporate rivals, and purchase luxury goods," as well as for "hollow[ing] out a health system as [he] lined [his] pockets."  *Id.* at ¶ 47.  Relying on Defendants' own unrelenting public aspersions against Dr. de la Torre, media outlets have called for Dr. de la Torre to be fired from his former position at Steward and published calls for Dr. de la Torre to be "investigated" for alleged "other possible crimes he may have committed as Steward's CEO," *id.*[5] which has damaged Dr. de la Torre's reputation.

---

[5]  The Boston Globe not only criticized Steward's Board of Directors—referring to their failure to oust Dr. de la Torre as a "textbook case of corporate cronyism"—but admitted to "reach[ing] out, multiple times, to every person who served on Steward's board in the last four years about their oversight . . . and knowledge of de la Torre's financial dealings." Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE BOSTON GLOBE (Sept. 28, 2024), https://www.bostonglobe.com/2024/09/28/business/ralph-de-la-torre-steward-health-care-ceo-resigns/.  Even more, the San Francisco Chronicle recently went as far as to

In another example, as several Defendants were advocating for Dr. de la Torre's criminal punishment on the Senate floor, they concealed any reference to Dr. de la Torre's Fifth Amendment invocation, and instead falsely claimed that Dr. de la Torre "arrogantly refused" to testify and that his absence from the Hearing evidenced an intent to "disregard and evade a duly authorized subpoena." *See* 170 CONG. REC. S6407 (DAILY ED. Sept. 25, 2024) (statements of Senators Sanders and Cassidy); Am Compl. at ¶ 62.  The resulting criminal contempt resolution itself is a stain on Dr. de la Torre's record—while Defendants argue that "any harm from being 'held in contempt' would only be suffered if and when a person is criminally sanctioned[,]" MTD at 23—the Committee's pursuit of such condemnation, its presence in the public record, and the publicity it continues to generate, have harmed and continue to harm Dr. de la Torre's community standing, including, for example, by resulting in his announcement that he would be stepping down as Steward's CEO  just two days after the Senate's vote,  Am. Compl. at ¶ 65.

Faced with this actionable harm, Defendants falsely claim that Dr. de la Torre's claims of reputational harm "cannot be fairly traced to the actions of the defendant given the serious criminal investigation plaintiff faces separate from and predating his subpoena."[6] MTD at 29.    The D.C. Circuit, however, has consistently held that where "reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III

---

publish are article equating Dr. de la Torre to Brian Thompson, the recently murdered former CEO of UnitedHealthcare ("If you're not angry at [the actions of healthcare CEO's like Ralph de la Torre], you're not paying attention."). Joshua Pederson, *Did the Murder of an Insurance CEO Make You Angry? Maybe That's a Good Thing*, SAN FRANCISCO CHRONICLE, (Jan. 1, 2025) https://www.sfchronicle.com/opinion/openforum/article/health-care-brian-thompson-20003245.php.

[6]  The irony of challenging Plaintiff's exercise of his Fifth Amendment right not to testify at their hearing given potential criminal exposure while simultaneously arguing that Plaintiff cannot demonstrate traceable injury from their actions because he simultaneously faced an overlapping and publicized criminal investigation appears to be lost on Defendants.

standing to challenge the action." *Foretich v. U.S.,* 351 F.3d 1198, 1213 (D.C. Cir. 2003).[7]   In *Fortetich*, for example, the D.C. Circuit held that a plaintiff had standing to challenge an Act of Congress that "directly damage[d] his reputation and standing in the community by effectively branding him . . . an unfit parent." *Id.* at 1214. The Court further held that a "judicial determination that Congress acted unlawfully" in enacting the statute—even if the Statute is never enforced against the plaintiff—would provide "a significant measure of redress for the harm to [the plaintiff's] reputation." *Id.*  Similarly, in *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, the Court found that a Federal Judge had standing to challenge an Act of Congress where a report produced pursuant to the Act characterized the Judge as having engaged "in a pattern of abusive behavior [.]" 264 F.3d at 56–57.  In finding such actions injurious, the Court stressed the reprimand not only existed in official online publications, such as on the Court of Appeals website, but also as part of the public record.  *Id.* at 307.  It further found that declaring such reports unlawful would "relieve [the plaintiff] of much of the resulting injury." *Id.*  As such, Defendants' unredacted accusations regarding Dr. de la Torre's abilities and performance as a CEO are sufficient to confer standing.

In an alternative attempt to escape judicial scrutiny, Defendants claim both that Dr. de la Torre cannot show that Defendants' conduct was the *exclusive* cause of his injuries, MTD at 25, and Dr. de la Torre's resignation "does not establish a causal link to the defendants's [sic] conduct sufficient for standing," because such an injury is "self-inflicted."  MTD at 28.  The law, however,

---

[7] *See also, Rtskhiladze v. Mueller*, 110 F.4th 273, 278 (D.C. Cir. 2024) (finding plaintiff had standing based on reputational injury to assert claim for declaratory relief requiring DOJ to correct redacted Special Counsel report);  M*cBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 56–57 (D.C. Cir. 2001) (finding plaintiff had standing based on reputational injury to challenge Act of Congress pursuant to which harmful information about the plaintiff was published).

does not require plaintiffs to allege that defendants' actions are the exclusive cause of their harms. *See Foretich,* 351 F.3d 1198 at 1216 (rejecting the argument that plaintiff lacked standing because he could not prove the Act of Congress he challenged was the "sole" cause of his reputational damage, because the Act itself "caused significant harm" to the plaintiff and "declaratory relief will provide a significant measure of redress sufficient to satisfy the requirements of Article III standing."); *see also id.* at 1215 (listing cases granting partial relief to redress reputational injuries in various Circuits and noting that the D.C. Circuit has joined other Circuits in assuming "that a favorable decision will provide meaningful relief—even if not complete—to a party who allege an injury to his or her reputation.").  Moreover, Courts in this Circuit routinely cite resignations as evidence of reputational harm for the purposes of standing.  *See Foretich* 351 F.3d 1198 at 1209 ("The Act also damaged Dr. Foretich's professional reputation . . . he was asked to resign his position as Regent of the American College of Oral and Maxillofacial Surgeons [.]"); *McBryde,* 264 F.3d 52 at 72 (Tatel, J., Concurring) (concurring that plaintiff had standing based on reputational injury where report recommended the plaintiff resign).

**B.    Defendants' Actions Have Chilled Dr. de la Torre's Exercise of his Fifth Amendment Rights, which is Sufficient to Establish Standing**

Defendants do not contest that Defendants' unlawful conduct also deters Dr. de la Torre from continuing to stand on his Fifth Amendment rights.  In attempting to compel his testimony over his Fifth Amendment assertion and reporting the contempt resolutions, the Committee sought not only to punish Dr. de la Torre from pleading the Fifth, but also to discourage him from exercising his constitutional protections. Am. Compl. at ¶ 55 (describing the Committee's efforts to enforce its subpoena as a "crusade to deter [and] punish . . . Dr. de la Torre for continuing to invoke his Fifth Amendment rights . . ."); *see also* Zeidman, 42 FORDHAM URB. L.J. at 604—5 (compelling a witness "to testify merely to assert their constitutional right . . . actually serves to

denigrate the individual's right," as such actions "clearly convey[] an indifference to, if not disdain for, the Fifth Amendment," and "reveals a general disregard for the Fifth Amendment as a foundational constitutional right").

**C.    Dr. de la Torre's Continued Threat of Prosecution is Sufficient to Confer Standing**

Dr. de la Torre has standing because, as a result of Defendants' unlawful conduct, Dr. de la Torre suffered from and continues to suffer from the ongoing threat of criminal prosecution. Am. Compl. ¶ 11–12. Defendants contend that Dr. de la Torre's fear of criminal prosecution does not confer standing because he has "not yet been indicted by a grand jury," MTD at 24, and further suggest that Dr. de la Torre cannot establish "a sufficient causal link from the Defendants to any potential prosecution." MTD at 25. Specifically, Defendants stress that because injury from future prosecution depends on the actions of third parties, Dr. de la Torre has failed to show his injuries can be "fairly . . . traced to the challenged action[s] of the defendants." *Id.*[8] This is nonsense.

The facts alleged in the Amended Complaint show that Dr. de la Torre has standing to bring his claims because the Defendants uniquely targeted Dr. de la Torre with criminal contempt proceedings to punish him for exercising his Fifth Amendment rights, and those proceedings continue to present a "credible threat of prosecution." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014); *see also, Angelo v. Dist. of Columbia,* 648 F. Supp. 3d 116, 123–24 (D.D.C. 2022) (quoting *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007) (finding that standing based on the threat of prosecution does not require that prosecution be guaranteed, but

---

[8]    Defendants rely on *Simon v. E. Kentucky Welfare Rights Org.*, in which the Supreme Court found several organizations lacked standing to sue Treasury Department officers for a revenue ruling that offered favorable tax treatment to nonprofit hospitals that limited care to indigents because such officials had merely "encouraged" hospitals to deny service, 426 U.S. 26 (1976).

rather that plaintiffs demonstrate that they have been "singled out . . . or uniquely targeted" for prosecution).

Dr. de la Torre meets these requirements with ease.  The Senate's criminal contempt certification targets Dr. de la Torre alone, clearly creating for Plaintiff a "credible threat of prosecution." *Angelo,* 648 F. Supp. 3d 116 at 123.  Moreover, because Dr. de la Torre's conduct involves the exercise of his Fifth Amendment rights and is thus "constitutionally protected conduct," he need only demonstrate that he has "some reason in fearing prosecution." *See Sandvig v. Barr*, 451 F. Supp. 3d 73, 81 (D.D.C. 2020).  Here, the facts alleged clearly show "some reason" to fear prosecution—he was referred to the U.S. Attorney's Office for prosecution and the government has not disavowed its intention to prosecute him.  Even if the requested relief from this Court does not resolve the continued threat of prosecution, because the requested relief in this case would provide some measurable redress, the lack of full resolution of the criminal threat does not prohibit Dr. de la Torre from establishing standing.  *See Comm. for Full Emp. v. Blumenthal,* 606 F.2d 1062, 1066 (D.C. Cir. 1979) (the D.C. Circuit "require[s] no more than a showing that there is a substantial likelihood that the relief requested will redress the injury claimed to satisfy the second prong of the constitutional standing requirement (that the court's remedial powers would redress the claimed injuries)."

### D.    Dr. de la Torre Remains Under Continued Threat of Enforcement of the Subpoena By Compulsion

Defendants also argue that Dr. de la Torre lacks standing because "[t]he Committee's and the Senate's action is complete."[9]  MTD at. 26.  Although the Senate has not directed the Senate

---

[9]  Dr. de la Torre has moved for leave to conduct jurisdictional discovery on this precise issue, among others, because Defendants' self-serving statements that their actions are "complete" contradict the well-pleaded allegations in Dr. de la Torre's complaint, public record, and caselaw.

Legal Counsel to initiate a civil action against Dr. de la Torre to enforce the subpoena yet, *id.* at 12, the Committee's Rules require that the chairman "to take or cause to be taken, necessary steps to bring the [civil enforcement of the Subpoena] to a vote in the Senate," Am. Compl. ¶ 61. Accordingly, absent relief from this Court, Dr. de la Torre remains under ongoing threat that Defendants will continue to violate his constitutional rights as it commands his sworn testimony by compulsion without regard for his Fifth Amendment invocation.

      **E.**      <u>**Dr. de la Torre's Injuries Are Properly Redressable by this Court**</u>

Defendants also assert that none of the requested relief will redress Dr. de la Torre's injuries. As noted above, however, the D.C. Circuit has consistently held that a judicial determination that Congress acted unlawfully provides "a significant measure of redress" for damage to a plaintiff's reputation, even when the Congressional action at issue is not enforced against the plaintiff. *See Foretich*, 351 F.3d at 1214 (D.C. Cir. 2003). Accordingly, a declaratory judgment that Dr. de la Torre cannot be punished for asserting his Fifth Amendment rights would meaningfully redress the reputational damage Defendants' actions continue to inflict.

With respect to Dr. de la Torre's remaining injuries, Defendants argue judicial redress is impossible because "the Speech and Debate Clause precludes courts from imposing liability on, or issuing equitable relief against, Members of Congress for actions taken during a committee hearing and for voting." MTD at 24. Of course, Plaintiff is not seeking monetary damages—he is simply seeking a declaratory judgment that Defendants are violating his constitutional privilege against self-incrimination and associated negative injunctive relief. That relief is entirely proper

---

*See* Mot. for Leave to Conduct Jurisdictional Discovery (ECF 20). Accordingly, Dr. de la Torre is entitled to jurisdictional discovery on these issues prior to this Court's ruling on Defendants' Motion. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197(D.C. Cir. 1992) ("[R]uling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction.") (citation omitted).

in this case, because the Speech or Debate Clause does not provide immunity for actions that lack a legislative purpose, such as those alleged in this suit. *See supra* Section IA.

Moreover, Dr. de la Torre's injuries arise not just from "actions taken during a committee hearing or . . . voting," but from the various actions accompanying these efforts, including Defendants' public remarks and communications with the media that are beyond the reach of the Speech or Debate Clause's immunities. *See Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 245 (S.D.N.Y. 2015) ("[T]he Speech or Debate Clause does not provide protection for information communicated by a Member or aide to a member of the public[.]"). The injuries stemming from these actions, which are not protected by Defendants' immunity claims, are sufficient to confer standing.

## III.    DR. DE LA TORRE'S AMENDED COMPLAINT STATES TWO COGNIZABLE CLAIMS FOR RELIEF

In addition, Defendants argue that Dr. de la Torre fails to state a claim as a matter of law for both counts alleged in his Amended Complaint. *See* MTD at 36–44. Predominantly, Defendants regurgitate much of their Speech or Debate clause arguments and repackage them as 12(b)(6) arguments. For the same reasons that these arguments fail to grant Defendants immunity, so too do they fail here. Defendants hide behind general proclamations that Defendants cannot be held accountable for legislative acts. However, as explained above, the facts in Dr. de la Torre's well-pleaded Amended Complaint sufficiently establish that Defendants' conduct did not have a legislative purpose, and therefore, fall outside the scope of the Speech or Debate clause and sufficiently state a claim for relief.

A.    **The Amended Complaint Pleads Facts Sufficient for this Court To Plausibly Find That No Legislative Purpose Was Served By Trying To Enforce the Subpoena after Dr. de la Torre's Fifth Amendment Invocation**

In arguing that Dr. de la Torre fails to state a claim, Defendants continue to mischaracterize the actual conduct Dr. de la Torre challenges.  Contrary to Defendants' argument, Dr. de la Torre does not challenge the Committee's authority to initiate an investigation, issue a subpoena, or even the "propriety of making [Dr. de la Torre] a subject of the investigation and subpoena."  MTD at 36.  Instead, Dr. de la Torre's claims are limited: they focus only on Defendants' conduct that served no legislative purpose, that is, attempting to force Defendant to re-invoke his Fifth Amendment right during a nationally televised hearing and seeking to punish Defendant for asserting his constitutional rights.  Am. Compl.  ¶¶ 71–74; *see also Eastland*, 421 U.S. at 501 (explaining that the Speech or Debate Clause immunizes only actions that "fall within the 'sphere of legitimate legislative activity'").

The Amended Complaint pleads factual allegations sufficient for this Court to plausibly find that Defendants' conduct served no legislative purpose.  *See Richardson*, 839 F. Supp. 2d at 199 ("[T]he Court must 'treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'") (citations omitted).  Indeed, as alleged in the Amended Complaint, Dr. de la Torre informed the Committee over a week before the Hearing that he would not, consistent with his Fifth Amendment right, provide information that the Committee sought at the hearing.  Am. Compl. ¶ 4, 50, 71.  Given the subject matter of the hearing, Dr. de la Torre reasonably and correctly determined that he had a Fifth Amendment right not to testify pending potential overlapping criminal investigations.  *Id.* ¶¶ 47–50.  Despite this invocation, and despite knowing that Dr. de la Torre would not testify on Fifth Amendment grounds, the Committee engaged in a campaign to intimidate Dr. de la Torre, seeking to deter him from asserting his Fifth Amendment rights.  *Id.* ¶¶51–54.

26

Indeed, not only did the Committee threaten Dr. de la Torre with criminal prosecution unless he subjected himself to the public spectacle of re-invoking his Fifth Amendment rights at the Hearing, but when he refused, the Committee punished him by following through with their promises to berate him in public media sources. Defendants caused Dr. de la Torre to live in constant fear of criminal prosecution, merely because Dr. De la Torre invoked his core constitutional rights. These factual allegations alone, treated as true, are sufficient for this Court to plausibly find that none of the Defendants' conduct taken in response to Dr. de la Torre's Fifth Amendment invocation served any legislative purpose, and thus, were unlawful violations of his Fifth Amendment rights.

For the avoidance of doubt, even if some legislative purpose was served when the Committee initially issued the subpoena at issue in this case to Dr. de la Torre, any such legislative purpose ceased to exist when Defendants demanded his public appearance after he invoked his Fifth Amendment right. Once Dr. de la Torre invoked, Defendants took *ultra vires* steps to force his public attendance for no purpose other than to humiliate and punish him. *See Bowles*, 439 F.2d at 542 ("*[N]o valid purpose can be served* by informing the jury that a witness has chosen to exercise his constitutional privilege.") (emphasis added).

Desperate to apply at least some Speech or Debate Clause immunity, where none is warranted, Defendants suggest that this Court's authority to review Defendants' conduct in this case is "narrow." MTD at 36. Not so. In fact, the Supreme Court has repeatedly held that when "Congress was acting outside its legislative role," it must step in to "sustain the rights of private individuals." *Tenney v. Brandhove*, 341 U.S. 367, 376–77 (1951); *see also Gravel*, 408 U.S. at 624 n.15 (citations omitted). Indeed, the law does not permit Defendants' *ultra vires* actions to remain unchecked where "constitutional rights of witnesses" are not "respected by the Congress."

*See Watkins*, 354 U.S. at 187–88; *see also see also* Zeidman, 42 FORDHAM URB. L.J. at 604–05 (compelling a witness "to testify merely to assert their constitutional right . . . actually serves to denigrate the individual's right," as such actions "clearly convey[] an indifference to, if not disdain for, the Fifth Amendment," and "reveals a general disregard for the Fifth Amendment as a foundational constitutional right").

Defendants further demonstrate their misunderstanding of Dr. de la Torre's claims by citing cases that suggest that this Court should "not look to the motives alleged to have prompted" Defendants unlawful conduct. MTD at 37–38. As an initial matter, none of Dr de la Torre's claims are based on Defendants' motives. They are based on Defendants' unlawful actions. The facts alleged in the Amended Complaint demonstrate that Defendants' conduct served no legislative purpose and, in fact, served no purpose at all other than denigrate and punish. None of these allegations are an indictment on Defendants' subjective motives.

Defendants assert that "[w]hat matters is whether the subpoena is objectively related to a valid legislative purpose." MTD at 38 (quoting *United States v. Bannon*, 101 F.4th 16, 25 (D.C. Cir. 2024)). But that is not what is at issue here. Dr. de la Torre's claims are predicated on Defendants forcing him to come and publicly re-assert his Fifth Amendment right in public, an act which served absolutely no legislative purpose or function

### B.    The Amended Complaint Pleads Facts Sufficient for this Court to Find That a Violation of the Fifth Amendment Occurred by Punishing Dr. de la Torre for Invoking His Rights

Dr. de la Torre also pleaded facts sufficient for this Court to find that Defendants violated his Fifth Amendment rights by punishing him with criminal contempt proceedings for standing on those rights. The Fifth Amendment's protection applies to Congress just as it does any other branch of the government, *Watkins*, 354 U.S. at 187–88, and "recipients of legislative subpoenas retain their constitutional rights throughout the course of an investigation." *Trump v. Mazars USA*,

LLP, 591 U.S. 848, 863 (2020). In their Motion, Defendants contend that Dr. de la Torre failed to state a claim under Rule 12(b)(6) because "a witness before the Committee is not a defendant in a criminal trial and does not have a Fifth Amendment right to refuse to appear entirely when summoned to testify." MTD at 44. Defendants are incorrect.

As explained in detail above, the law does not require that Dr. de la Torre appear at the Hearing and subject himself to harassment before the Committee to avail himself of his Fifth Amendment rights. *See, supra*, Section I.B.1; *see also, e.g.*, *Bowles*, 439 F.2d at 542 (D.C. Cir. 1970) ( "[A] ***witness*** should not be put on the stand for the purpose of having him exercise his privilege before the jury.") (emphasis added); *see also Pitts*, 918 F.2d at 200 ("A witness may not be put on the stand for the purpose of allowing the jury to watch him take the Fifth.") (citation omitted); *Simmons*, 663 F.2d at 108 ("[A] witness has the right to exercise [the Fifth Amendment] privilege without taking the stand.").[10]

The allegations in the Amended Complaint demonstrate that Dr. de la Torre properly invoked his Fifth Amendment rights, and importantly, that Defendants understood and acknowledged that "Dr. de la Torre had invoked 'the Fifth Amendment privilege against self-incrimination' as a reason why 'it would be inappropriate to compel Dr. de la Torre to appear before the Committee.'" Am. Compl. ¶¶ 4-5, 50–51. This is all that is required to invoke the Fifth Amendment. Invocation requires no "special combination of words," and because Defendants understood that Dr. de la Torre's Fifth Amendments rights were implicated, Defendants were required to respect that invocation. *See Quinn v. United States*, 349 U.S. 155, 162–64 (1955).

---

[10] This is true not only in criminal cases, but also in civil cases. *See, e.g.*, *Anton v. Prospect Cafe Milano, Inc*., 233 F.R.D. 216, 219 (D.D.C. 2006) (denying motion to compel witness to testify in a civil case after recognizing that "a district judge may sustain a blanket assertion of the Fifth Amendment privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering any relevant question").

Rather than respecting his invocation, however, Defendants purported to "overrule" his invocation without further inquiry into the basis for his assertion and ultimately punished him for his invocation.[11]   Am. Compl. ¶¶   10, 74, 82.   As such, compelling his attendance at the Hearing served no purpose other than to publicly humiliate and embarrass him, and to create in the public's mind the precise inference that the Fifth Amendment protects against.  *See Bowles*, 439 F. 2d at 542.

In response, Defendants argue that Dr. de la Torre should have submitted to the Committee's whim because his Fifth Amendment invocation was "still only a statement of intention," and he could have, like other witnesses in the past, succumbed to the Committee's threat and testified "despite earlier insisting that [he] would rest on their Fifth Amendment privilege." MTD at 42.  But any argument that Dr. de la Torre might have changed his mind before the Committee is nothing more than speculation, and directly contradicts the well-pleaded allegations in the Amended Complaint "that he would not be able to provide testimony at the Hearing . . . because he was invoking his Fifth Amendment rights."  Am. Compl. ¶¶ 4, 51.  This Court need not credit Defendants' self-serving factual iterations that are outside of the pleadings, as doing so would improperly turn the pleading standard on its head.  *See United States v. Bolton*, 496 F. Supp. 3d 146, 161–62 (D.D.C. 2020) ("In ruling on a motion to dismiss, however, the Court may look only to the face of the complaint and must draw all reasonable inferences in favor of the plaintiff . . . Because at this stage the Court cannot consider [defendants'] contradictory arguments, it must permit [plaintiff's] claim . . . to proceed.").  What is more, that Congressional committees

---

[11]   To the extent Defendants attempt to dispute that Dr. de la Torre properly invoked his Fifth Amendment rights prior to the Hearing, at the pleadings stage, the Court "must draw all reasonable inferences in favor of the plaintiff." *United States v. Bolton*, 496 F. Supp. 3d 146, 161 (D.D.C. 2020).

may have successfully threatened other witnesses into abdicating their Fifth Amendment privilege in the past does not mean doing so is a permissible or constitutional exercise of authority in this case (or any case).

Defendants also reach to cases from other Circuits to argue that "even targets of criminal investigations may be compelled to appear before a grand jury." MTD at 40. But even Defendants cannot bring themselves to say that targets may be compelled to testify before a grand jury *over a Fifth Amendment assertion*, because such a practice is generally improper. *See* ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION § 3-4.6(h) (2017) ("The prosecutor should not seek to compel the appearance of a witness . . .if the witness states in advance that if called the witness will claim the constitutional privilege not to testify[.]"); JUSTICE MANUAL § 9-11.154 ("If a 'target' of the investigation . . . refuse[s] to testify on Fifth Amendment grounds, the witness ordinarily should be excused from testifying . . . ."). The witnesses in Defendants' cited cases made no Fifth Amendment invocation ahead of their appearance that could excuse them from testifying altogether.[12]

Knowing that there was no legislative purpose in forcing Dr. de la Torre to appear at the Hearing to invoke his Fifth Amendment rights publicly, Defendants take issue with Dr. de la Torre's blanket invocation of the Fifth Amendment, arguing that Dr. de la Torre cannot properly invoke his Fifth Amendment rights unless "in response to a specific question at a hearing." MTD at 41–42. According to Defendants, "only a defendant in a criminal matter has the absolute right

---

[12]    Defendants' citation to *Bank of Nova Scotia v. United States* illustrates their misunderstanding of Dr. de la Torre's claims. Punishing someone for invoking their privilege against self-incrimination clearly violates the Fifth Amendment, and nothing in *Bank of Nova Scotia* says otherwise.

to avoid taking the witness stand to testify or affirmatively assert a Fifth Amendment privilege." MTD at 39.  Defendants are mistaken.

Indeed, although Defendants acknowledge that "courts in some criminal trials have exercised their discretion and excused a non-defendant witness from having to take the stand and invoke the Fifth Amendment privilege in front of the jury," they falsely claim that these courts only "did so to protect the defendant's fair trial interests and not the rights of the witness."  MTD at 39–40.  Not so.  The reason these witnesses were not required to take the stand was because "***no valid purpose can be served*** by informing the jury that a witness has chosen to exercise his constitutional privilege."  *Bowles*, 439 F.2d at 541–42 (emphasis added).  The D.C. Circuit has repeatedly held that "a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury" based on the "constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege."  *Id.* at 541; *see also* Daniel Curbelo Zeidman, *To Call or Not to Call: Compelling Witnesses to Appear Before Congress*, 42 FORDHAM URB. L.J. 569, 600 (2014) ("Congress should follow the approach taken in criminal litigation and not compel witness testimony once counsel has informed Congress that the witness will assert his or her Fifth Amendment right.").  That is precisely the point Dr. de la Torre makes here—there was no valid purpose to forcing him to re-invoke his Fifth Amendment right in a public hearing, and Defendants violated his constitutional rights for punishing him for standing on those rights.

Separately, Dr. de la Torre had a reasonable basis to believe that answering *any* question at the Hearing might subject him to criminal liability, and thus, he was well within his rights to invoke a "blanket assertion of privilege" rather than invoking his Fifth Amendment rights on a question-by-question basis.  *See United States v. Thornton*, 733 F.2d 121, 125–26 (D.C. Cir. 1984).  Indeed, it is difficult to imagine a more appropriate case for such an assertion: for several weeks

prior to the investigation and issuance of the Subpoena, members of the Committee had been painting Dr. de la Torre as a villain and a criminal, going so far as to highlight ongoing criminal investigations and call for additional criminal investigations related to the very topics that would be covered at the Hearing.  Am. Compl. ¶¶ 47–49.  When "the only relevant matters" that the witness might have testified about were all privileged," as the case was here, a witness may be excused from testifying altogether.  *See United States v. Reese*, 561 F.2d 894, 899–900 (D.C. Cir. 1977); *see also United States v. Tsui*, 646 F.2d 365, 367–68 (9th Cir. 1981) (holding blanket assertion of Fifth Amendment warranted when "witness could legitimately refuse to answer all relevant questions"); *United States v. Ortiz*, 82 F.3d 1066, 1073 (D.C. Cir. 1996).

Dr. de la Torre faced a legitimate threat that the Hearing would entail an onslaught of questions subjecting him to criminal liability—which indeed was what ensued on September 12, 2024.  Am. Compl. ¶¶ 5, 47, 49–50, 53.  The Committee's questions were undeniably going to "concern [Dr. de la Torre's] involvement with, connection to, and knowledge of" Steward's bankruptcy and other events that members of the Committee had already determined Dr. de la Torre was guilty of, which were "precisely the event[s] from which [Dr. de la Torre] is potentially exposed to criminal liability."  *See Anton v. Prospect Cafe Milano, Inc.*, 233 F.R.D. 216, 219–20 (D.D.C. 2006).

Grasping once more at their desire to force Dr. de la Torre to publicly invoke his Fifth Amendment rights, Defendants speculate that Dr. de la Torre "cannot and does not know in advance the full scope of possible questions that Members may ask to further the Committee's investigatory and legislative purposes." MTD at 42.  As an initial matter, "[t]he Fifth Amendment privilege 'must be accorded liberal construction in favor of the right it was intended to secure,'" and a witness may only be compelled to testify "***if it clearly appears that he is at no risk*** of self-

incrimination." *Wengui v. Clark Hill PLC*, 2021 WL 4948023, at *2 (D.D.C. Oct. 25, 2021) (citations omitted) (emphasis added). Further, Defendants gave Dr. de la Torre an extensive roadmap to a preview of the questioning he could expect at the Hearing—all of which clearly put him at risk of incriminating himself. *See, e.g.*, Am. Compl. ¶ 47 (statement of Defendant Edward Markey, "Dr. de la Torre and his corporate executive enablers at Steward, Cerberus, and Medical Properties Trust pocketed hundreds of millions of dollars and used it to engage in international schemes, spy on corporate rivals, and purchase luxury goods."); (committee press release, "Under Dr. de la Torre's leadership, . . . Steward is the subject of a federal investigation over alleged fraud and violations of the Foreign Corrupt Practices Act."). Defendants knew full well that criminal prosecutors were potentially investigating these very same topics—some of them publicly called for further investigation. Am. Compl. ¶¶ 47. Accordingly, that Defendants knew that Dr. de la Torre's invocation was proper but punished him anyway is a clear violation of his constitutional rights.

## IV.    DR. DE LA TORRE'S SUIT DOES NOT SEEK TO FORESTALL ANY CRIMINAL PROCEEDING

In a futile attempt to cast doubt on the legitimacy of Dr. de la Torre's pleadings, Defendants falsely claim that Dr. de la Torre's claims are intended to interfere with any potential criminal proceeding arising from Defendants' unlawful conduct. MTD at 27. In reality, Dr. de la Torre's Amended Complaint neither seeks to enjoin nor interfere with any forthcoming criminal proceedings (which, as Defendants themselves point out, do not yet exist). *Id.* at 30. Dr. de la Torre simply seeks a declaratory judgment that Defendants are violating his constitutional rights and associated injunctive relief.

Defendants also contend that Dr. de la Torre "has an adequate federal forum in which to raise his arguments – the underlying criminal action." *Id.* at 31. But this confuses the proceedings.

Not only is this lawsuit separate and distinct from any potential future criminal proceeding, even if such a criminal proceeding were to materialize, it would not provide Dr. de la Torre an adequate opportunity to hold these Defendants accountable and seek redress for the injuries at issue in this case.

### A.    <u>Plaintiff Does Not Seek to Interfere With Potential Criminal Matters</u>

Although Defendants baselessly claim that Dr. de la Torre's lawsuit was "brought to interfere with a threatened criminal proceeding," MTD at 30, they provide no meaningful analysis of how the instant lawsuit threatens to do so.  All of Defendants' cited authorities claim that it is inappropriate for civil courts to enjoin criminal proceedings, but Dr. de la Torre seeks redress in the form of declaratory and injunctive relief as against *these Defendants*—not the Department of Justice or any other prosecutorial body.[13]

---

[13]    *Compare* Am. Compl. at 31–32 (requesting declaratory relief and that the Court enjoin Defendants "from attempting to civilly enforce the July 25, 2024 Subpoena," and "from causing Dr. de la Torre to suffer from additional punishment for invoking his Fifth Amendment rights in response to the . . . Subpoena to Dr. de la Torre issued July 25, 2024), *with Younger v. Harris*, 401 U.S. 37, 38–39 (1971) (civil action by indictee seeking to "to enjoin the . . . District Attorney of Los Angeles County[] from prosecuting him); *Manafort v. U. S. Dep't of Just.*, 311 F. Supp. 3d 22, 24 (D.D.C. 2018) (action by "Paul J. Manafort Jr., who has been indicted in two criminal cases" seeking to "set[] aside . . . the pending criminal indictments"); *Deaver v. Seymour*, 822 F.2d 66, 66–67 (D.C. Cir. 1987) (action to "enjoin preliminarily [court-appointed investigative counsel] efforts to obtain an indictment," after which the "district court temporarily restrained [counsel] from seeking an indictment"); *Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) (action seeking to "enjoin any criminal investigation related to his past conduct . . . and to immunize him from future prosecution"); *In re Al-Nashiri*, 835 F.3d 110, 113 (D.C. Cir. 2016) (habeas petitioner seeking to "dissolve the military commission convened to try him and . . . preliminarily enjoin that trial"); *Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1036 (D.C. Cir. 1978) (action against telephone companies seeking "declaratory and injunctive relief" that notice is required before telephone companies "turn over their long distance telephone billing records to Government law enforcement officials"); *United States v. Armstrong*, 517 U.S. 456, 459 (1996) (regarding "motion for discovery or for dismissal of the indictment"); *In re Sealed Case*, 829 F.2d 50, 51 (D.C. Cir. 1987) (challenge to independent counsel's legal authority to conduct a grand jury proceeding); *North v. Walsh*, 656 F. Supp. 414, 415 (D.D.C. 1987) (challenge to "the validity of an ongoing criminal investigation, which has not resulted in an indictment or criminal prosecution").

Dr. de la Torre has not been indicted.  There is no pending criminal suit.  To Dr. de la Torre's knowledge, there is not even an investigation regarding the contempt referral with which he could seek to interfere.  He does not seek an injunction of criminal proceedings, or of any individual at the Department of Justice or United States Attorney's Office.  He seeks no direct redress from any potential criminal matters.  Instead, he challenges Defendants' patently unconstitutional and *ultra vires* actions that are well outside the realm of their authority.  Dr. de la Torre is entitled to his day in court against Defendants in this case for their violations of his constitutional rights, regardless of any potential criminal indictment that may in the future arise.

B.    **This Court Is An Appropriate Forum To Adjudicate Dr. de la Torre's Claims**

Finally, Defendants argue that Dr. de la Torre, if indicted, will have "an adequate federal forum in which to present his defenses."  MTD at 35.  Defendants are seemingly confused.  As indicated above, Dr. de la Torre has not been indicted, there is no pending criminal proceeding against him, and thus, he does not have any "defenses" to advance at this time, or potentially at any time.[14]  On the other hand, Dr. de la Torre's claims seeking redress for Defendants' unlawful conduct are ripe for adjudication and redress now, regardless of whether or not any criminal proceeding ultimately arises.

Defendants' attempt to manufacture an equitable reason for this Court to abstain from adjudicating Dr. de la Torre's claims by citing to cases that suggest ancillary equitable proceedings would be inappropriate only relate to *ongoing* criminal investigations or prosecutions, not hypothetical or potential prosecutions.  *See supra*, note 13.  Defendants themselves stress the

---

[14]    Federal prosecutors maintain discretion to bring or not to bring criminal contempt proceedings.  *See Ansara v. Eastland*, 442 F.2d 751, 754, n.6 (D.C. Cir. 1971) (suggesting that "the Executive Branch . . . may decide not to present . . . [a contempt citation] to the grand jury . . . .").  As with its previous argument, the cases Defendants rely upon to suggest ancillary equitable proceedings would be inappropriate involve ongoing criminal investigations or prosecutions, not hypothetical or potential prosecutions.

conjectural nature of such a proceeding against Dr. de la Torre, arguing that because the Senate has merely adopted a resolution to certify Dr. de la Torre's alleged default to the United State Attorney "any injury from a *potential* prosecution ... is 'conjectural' and not 'imminent.'"  MTD at 26 (emphasis added).  The Court should reject Defendants' attempts to use the possibility of a future criminal case against Dr. de la Torre to avoid this Court's scrutiny.  Dr. de la Torre is before this Court now seeking relief that is well within the Court's power to provide: a judgment that Defendants violated his constitutional rights.

## CONCLUSION

For the foregoing reasons, Dr. de la Torre respectfully requests that Defendants' Motion to Dismiss be DENIED.  In the event the Court decides to grant the Motion to Dismiss in any respect, Plaintiff respectfully requests leave to amend his Amended Complaint with the benefit of jurisdictional discovery.

Dated: January 6, 2025

        Respectfully submitted,


        By: */s/ Alexander J. Merton*
        William A. Burck (D.C. Bar No. 979677)
        Alexander J. Merton (D.C. Bar No. 1029439)
          (*pro hac vice*)
        Kaylee A. Otterbacher (D.C. Bar No. 90018061)
          (*pro hac vice*)
        QUINN EMANUEL URQUHART & SULLIVAN, LLP
        1300 I Street NW, Suite 900
        Washington, District of Columbia 20005-3314
        (202) 538-8000
        williamburck@quinnemanuel.com
        ajmerton@quinnemanuel.com
        kayleeotterbacher@quinnemanuel.com

        *Counsel to Plaintiff Dr. Ralph de la Torre*