# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
DR. RALPH DE LA TORRE, M.D.,     )
    )
    Plaintiff,     )
    )    Civil Action No. 1:24-cv-02776-TNM
    v.     )
    )
BERNARD SANDERS, in his capacity as     )
Chairman of the Committee on Health, Education,     )
Labor, and Pensions of the United States Senate,     )
*et al.*,     )
    )
    Defendants.     )
_____)

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Morgan J. Frankel, Bar #342022
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    PLAINTIFF'S OPPOSITION MISCHARACTERIZES THE COMMITTEE'S
      ACTIONS REGARDING THE SUBPOENA AND PLAINTIFF'S DEFAULT  . . . . . . . 4

      A.    Plaintiff Was Not Punished for Invoking the Fifth Amendment . . . . . . . . . . . . . 4

      B.    The Committee Set Forth A Clear Legislative Purpose To Acquire
            Information Relevant To The Investigation Of Steward Health Care's
            Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.    The Committee Never "Acknowledged" That Dr. de la Torre Would
            Provide No Information If He Appeared At The Hearing . . . . . . . . . . . . . . . . . . . 7

II.   PLAINTIFF FAILS TO DEMONSTRATE THAT THIS COURT HAS
      JURISDICTION TO HEAR HIS CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Defendants Are Absolutely Immune Under the Speech or Debate Clause,
            and Plaintiff Provides No Legal Basis for Evading That Jurisdictional Bar . . . . 14

      B.    Plaintiff Has Not Established Standing to Bring His Claims . . . . . . . . . . . . . . . 14

III.  PLAINTIFF'S CIVIL SUIT IS AN IMPROPER ATTEMPT TO INTERFERE
      WITH A CRIMINAL PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   PLAINTIFF'S ALLEGATIONS DO NOT STATE A CLAIM AS A MATTER
      OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.    The Committee's Subpoena Had A Valid Legislative Purpose . . . . . . . . . . . . . 20

      B.    The Committee Did Not Violate Plaintiff's Fifth Amendment Rights . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PLAINTIFF'S REQUEST TO TAKE JURISDICTIONAL DISCOVERY SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.      Plaintiff's Jurisdictional Discovery Is Incompatible With Defendants' Immunity From Suit Under The Speech Or Debate Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II.     Plaintiff Fails To Identify Specific, Limited Discovery That Would Demonstrate The Court's Jurisdiction Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.    Plaintiff's Requested Discovery Would Itself Be Largely Precluded By The Clause. . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

## CASES

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72
(D.D.C. 2019), *aff'd sub nom.*, *Ambellu v. Re'ese Adbarat Debre Selam
Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*,
No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) . . . . . . . . . . . . . . . . . 27, 28, 32

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . 28

*Bain v. Office of Att'y General.*, 648 F. Supp. 3d 19 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . . 21

*\*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . 28

*Bowles v. United States*, 439 F.2d 536 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*\*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) . . . . . . . . .  14, 36

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080 (D.C. Cir. 1998) . . . . . . 28

*Clyde v. Walker*, 619 F. Supp. 3d 193 (D.D.C. 2022), *aff'd*,  2023 WL 6939987
(D.C. Cir. Oct. 20, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Clyde v. Walker*, No. 22-5263, 2023 WL 6939987 (D.C. Cir. Oct. 20, 2023) . . . . . . . . . . . . . . 34

*Colo. Wild Horse & Burro Coal., Inc. v. Kempthorne*, 527 F. Supp. 2d 3
(D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the
Treasury*, 575 F. Supp. 3d 53 (D.D.C. 2021), *aff'd*, 45 F.4th 324 (D.C. Cir. 2022) . . . . 21

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*\*Doe v. McMillan*, 412 U.S. 306 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 32

*Dombrowski v. Eastland*, 387 U.S. 82 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*\*Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491 (1975) . . . . . . . . .  8, 10-12, 14, 20-22, 29, 34

*FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008). . . . . . . . . . . . . . . 28, 32

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . 33

\*Gravel v. United States, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 36

*GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) . . . . . . . . . . 27

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
    720 F.3d 939 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jewish War Veterans of the U.S.A. v. Gates*, 506 F. Supp. 2d 30
    (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 34, 35

*Judicial Watch, Inc. v. Kerry*, 156 F. Supp. 3d 69 (D.D.C. 2016), *rev'd and
    remanded on other grounds*, 844 F.3d 952 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . 28

*Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd*, 998 F.3d
    989 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

\*Judicial Watch, Inc. v. Schiff, 998 F.3d 989 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . 10, 21, 29

*Judicial Watch, Inc. v. Tillerson*, 293 F. Supp. 3d 33 (D.D.C. 2017),
    *aff'd*, 744 F. App'x 3 (D.C. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lemon v. Kurtzmen*, 403 U.S. 602 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 35

*Massie v. Pelosi*, 590 F. Supp. 3d 196 (D.D.C. 2022), *aff'd*, 72 F.4th 319 (D.C.
    Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

\*Massie v. Pelosi, 72 F.4th 319 (D.C. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of
    the Jud. Conf. of the U.S.*, 264 F.3d 52 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 15

*McCarthy v. Pelosi*, 480 F. Supp. 3d 28 (D.D.C. 2020), *aff'd*, 5 F.4th 34 (D.C.
    Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 30

*McSurely v. McClellan*, 553 F.2d, 1277 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Meadows v. Pelosi*, 639 F. Supp. 3d 62 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988) . . . . . . . . 32, 36

*Musgrave v. Warner*, 104 F.4th 355 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . 10, 12, 30, 33, 34, 36

*Musgrave v. Warner*, 2022 WL 4245489 (D.D.C. Sept. 15, 2022), *aff'd*, 104
        F.4th 355 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277 (D.D.C. 2011) . . . . 28, 30

*North v. Walsh*, 656 F. Supp. 414 (D.D.C. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Powell v. McCormick*, 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Quinn v. United States,* 349 U.S. 155 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Saline Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schilling v. Speaker of U.S. House of Representatives*, 633 F. Supp. 3d 272 (D.D.C.
        2022), *aff'd on other grounds*, 102 F.4th 503 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . . 30

*Spenser v. Kemna*, 523 U.S. 1 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tenney v. Brandhove*, 341 U.S. 367 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Dowdy*, 479 F.2d 213 (4th Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Helstoski*, 442 U.S. 477 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Thornton*, 733 F.2d 121 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Watkins v. United States*, 354 U.S. 178 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13, 20

*Wilkinson v. United States*, 365 U.S. 399 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Younger v. Harris,* 401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATUTES**

2 U.S.C. § 192. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2 U.S.C. § 194. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**CONGRESSIONAL MATERIALS**

*Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the Senate
Comm. on Health, Education, Labor, and Pensions, S. Rep. No. 118-230 (2024) . . . . . . . 4-6, 20

**MISCELLANEOUS AUTHORITIES**

Mark Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*,
THE BOSTON GLOBE, (Sept. 28, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

_____

\* Cases and authorities chiefly relied upon are denoted with an asterisk.

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Defendants moved to dismiss the amended complaint on the grounds that (a) the Court lacks jurisdiction because defendants are absolutely immune from plaintiff's claims under the Speech or Debate Clause and plaintiff lacks standing, (b) plaintiff's suit is an inappropriate attempt to use a civil action to forestall a criminal investigation, and (c) the amended complaint's allegations fail to state a claim as a matter of law. *See* Memo. of P. & A. in Supp. of Defs.' Mot. to Dismiss Am. Compl., ECF No. 18-1 ("Defs.' Memo." or "defendants' opening memorandum"). Plaintiff filed an opposition to that motion, Memo. of P. & A. In Supp. of Pl.'s Opp. to Defs.' Mot. to Dismiss Am. Compl., ECF No. 21-1 ("Pl.'s Opp."), and defendants hereby offer the following points in reply.

As an initial matter, plaintiff's opposition is riddled with mischaracterizations of defendants' actions. Foremost is the assertion that he was "punished" by defendants for invoking his Fifth Amendment right against self-incrimination. As the record in this case demonstrates, the Committee did not punish plaintiff for invoking the Fifth Amendment. In fact, the Committee advised plaintiff that he could properly assert a Fifth Amendment right in response to questions from the Committee at the hearing and valid assertions of such rights would be respected. When plaintiff nonetheless defied the subpoena and failed to appear at the hearing, the Committee and the Senate adopted a resolution to certify his default to the U.S. Attorney for action under 2 U.S.C. § 192. It was plaintiff's failure to appear – *not* any attempt to invoke the Fifth Amendment – that resulted in the Committee and Senate certifying plaintiff's default to the U.S. Attorney.

Similarly without foundation are plaintiff's repeated assertions that defendants do not contest plaintiff's claim that there was no legislative purpose in requiring plaintiff's appearance

1

at the hearing, *see* Pl.'s Opp. at 10, and that the Committee acknowledged that plaintiff would provide no information if he did appear at the hearing, *see id.* at 14. Far from being uncontested, the Committee has set forth a clear legislative purpose in subpoenaing plaintiff and requiring his appearance before the Committee – to acquire information relevant to the Committee's investigation of Steward Health Care's bankruptcy. And while plaintiff's counsel vaguely indicated that plaintiff had "constitutional concerns" with appearing for testimony, the Committee required plaintiff's appearance with the expectation that he would provide relevant testimony on the subject or assert a valid privilege where applicable. Indeed, any suggestion as to what questions plaintiff would have been asked and how plaintiff would have responded at the hearing is only speculation because he did not appear.

These mischaracterizations highlight the fact that plaintiff's opposition fails to offer any valid legal arguments that overcome the jurisdictional and other grounds for dismissal set forth in defendants' motion. First, under established Supreme Court and D.C. Circuit precedent, the Speech or Debate Clause deprives this Court of jurisdiction over plaintiff's suit against the Committee and its Members challenging their actions in voting to issue the subpoena and to enforce its legal requirements. Arguments like plaintiff's that the Clause does not bar his suit because defendants' plainly legislative actions were outside of their legal authority, violated his constitutional rights, and were motivated by an intent to punish and shame plaintiff, thus serving no legislative purpose, have all been rejected by courts. Plaintiff cites no case that permits a suit such as plaintiff's to proceed against Members of Congress, nor does he offer any material distinction from the established precedents that bar jurisdiction over such suits.

Plaintiff's opposition also fails to demonstrate that the amended complaint's allegations establish Article III standing. Plaintiff asserts that he suffered three injuries from defendants'

conduct: harm to his reputation, a chilling on his exercise of his Fifth Amendment rights, and the threat of punishment for his failure to appear at the hearing. None satisfy the requirements of standing. First, plaintiff fails to identify any specific, concrete injuries he suffered from any alleged reputational harm. Nor does plaintiff show how his exercise of Fifth Amendment rights has been chilled; to the contrary, plaintiff's suit is premised on his (inaccurate) claim that he exercised his Fifth Amendment rights. Furthermore, there is no "credible threat" of prosecution or enforcement against plaintiff *from* defendants. The Senate passed the resolution certifying plaintiff's default, and the President Pro Tempore provided that certification to the U.S. Attorney; consequently, any threat of prosecution now faced by plaintiff would be traceable not to defendants but to the U.S. Attorney and any grand jury to which the matter is presented. Hence, plaintiff cannot show any on-going credible threats of enforcement or prosecution *from* defendants.

Nor does plaintiff's opposition offer a legal basis for initiating a civil case to short circuit a criminal investigation and potential prosecution against him. Plaintiff's suit asserts two claims attacking the Committee's action: that its subpoena lacked a legislative purpose and that voting to certify his lack of compliance with the subpoena violated his Fifth Amendment rights. *See* Am. Compl., Counts I and II, ECF No. 17. Both claims effectively ask the Court to rule that he did not violate 2 U.S.C. § 192 by not appearing at the hearing. In other words, plaintiff's suit is nothing more than a preemptive defense to a possible criminal prosecution masquerading as a civil action. The forum for such legal arguments is a criminal proceeding if plaintiff is indicted.

Finally, neither of the two counts plaintiff asserts in his amended complaint state a claim as a matter of law, as the Committee had a clear legislative purpose in subpoenaing him to the hearing and the Committee did not violate plaintiff's Fifth Amendment rights by requiring him to appear and assert any Fifth Amendment privilege in response to questions from the Committee.

**ARGUMENT**

**I.    PLAINTIFF'S OPPOSITION MISCHARACTERIZES THE COMMITTEE'S ACTIONS REGARDING THE SUBPOENA AND PLAINTIFF'S DEFAULT**

**A.    Plaintiff Was Not Punished for Invoking the Fifth Amendment**

Multiple times in his opposition plaintiff asserts that the Committee "punish[ed] him for invoking his Fifth Amendment rights in response to the subpoena."  Pl.'s Opp. at 1; *see also, e.g*, *id.* at 18.  As the record demonstrates, the Committee and the Senate voted to certify plaintiff's default on the subpoena *not* because plaintiff invoked his Fifth Amendment rights, but because he failed to appear at the hearing and testify or assert privilege as required by the subpoena.

The Committee subpoenaed plaintiff's appearance at its September 12, 2024 hearing into the bankruptcy of Steward Health Care.  A week before the hearing, plaintiff's counsel sent a three-page letter informing the Committee that plaintiff would not attend the hearing as required by the subpoena and proffered four reasons for that decision, the last of which, in a brief mention, obliquely called the subpoena "a veiled attempt to sidestep Dr. de la Torre's constitutional rights by seeking sworn testimony on matters for which the Committee has pre-determined his guilt" and suggesting that participation in the hearing "would be inconsistent with . . . Dr. de la Torre's core constitutional rights."  *Proceeding Against Dr. Ralph de la Torre for Contempt of the Senate*, Report of the Senate Committee on Health, Education, Labor, and Pensions, S. Rep. No. 118-230 (2024), ECF No. 18-2, ("HELP Committee Report"), at 14, App. III (Sept. 4, 2024 Letter from Alexander Merton, Esq. to Chairman Sanders).

Interpreting counsel's letter as "either a request for Dr. de la Torre to be excused [from the hearing] or an objection to appearing before the Committee," the Committee declined counsel's request and overruled the objections raised.  *Id.* at 28.  In response to the reference to "constitutional

4

rights," the Committee advised plaintiff's counsel that if plaintiff wished to assert the Fifth Amendment, the "privilege against self-incrimination . . . does not permit witnesses to refuse to appear when summoned to testify before a congressional committee, but, rather, that constitutional privilege must be asserted by witnesses in declining to answer specific questions put to them." *Id.* The Committee specifically reassured plaintiff that "the Committee respects the constitutional rights of witnesses" and valid assertions of privilege made in response to questions. *Id.*

Without any further communication to the Committee and despite the Committee's having denied his request to be excused and advised how he could assert privilege at the hearing, plaintiff defied the subpoena and failed to appear. As plaintiff lacked any legal ground for refusing to appear, the Committee found plaintiff in default of the subpoena and voted to report a resolution to certify plaintiff's default to the U.S. Attorney.

Far from punishing plaintiff for asserting his Fifth Amendment right, the Committee specifically informed plaintiff how he could properly assert his rights at the hearing and assured plaintiff that it would respect a Fifth Amendment invocation at the proper time. Despite this assurance, plaintiff willfully refused to attend the hearing. It was that failure to appear – *not* any attempt by plaintiff to invoke the Fifth Amendment – that resulted in the Committee's and the Senate's certifying plaintiff's default to the U.S. Attorney.[1]

---

[1] Plaintiff baselessly asserts that the Senate's adoption of the certification resolution was tainted "[a]s a result of Senator Sanders concealing Dr. de la Torre's Fifth Amendment invocation from the discussion before the full Senate floor, on September 25, 2024," which resulted in the "resolution pass[ing] unanimously[.]" Pl.'s Opp. at 6. Leaving aside that it is wholly impermissible for plaintiff, or a court, to question the Senate's passage of a resolution based on allegations that Members were not fully informed about the legislation during debate, plaintiff's claim that Senator Sanders concealed plaintiff's objection from the Senate is so clearly incorrect as to be preposterous. Senator Sanders submitted to the Senate the HELP Committee Report accompanying the criminal contempt resolution, which contained plaintiff's counsel's letters to the Committee setting forth the grounds raised to excuse plaintiff from the hearing and
(continued...)

**B.     The Committee Set Forth A Clear Legislative Purpose To Acquire Information Relevant To The Investigation Of Steward Health Care's Bankruptcy**

Plaintiff's opposition asserts that "Defendants do not dispute that these specific actions [plaintiff challenges] serve no legislative purpose."  Pl.'s Opp. at 10; *see also id.* at 11.  To the contrary, defendants specifically explained the legislative purpose served in summoning Dr. de la Torre.  *See* Defs.' Memo. at 9-10.  After plaintiff declined the Committee's invitation to testify at a hearing "examin[ing] the management decisions of Steward Health Care (Steward), how those decisions led the hospital system to file for bankruptcy, and the impact those decisions have had on patient care, health care workers, and the hospital it operates,"  HELP Committee Report at 16, App. III (Letter to Ralph de la Torre, M.D., from Chairman Bernard Sanders and Ranking Member Bill Cassidy, M.D., June 25, 2025), the Committee voted to authorize Chairman Sanders to issue a subpoena to require his attendance at a hearing.  As explained by the Chair and Ranking Member, as "Steward's bankruptcy has nationwide implications impacting more than 30 hospitals across eight states," that financial failure presented serious issues regarding the provision of health care and the effect "that private equity is having on our healthcare system[.]"  HELP Committee Report at 34, 37, App. V (Excerpt of Tr. of Sept. 12, 2024, HELP Committee Hearing).   It was important for the Committee to gather relevant facts "to inform legislative solutions . . . to keep this from happening again."  *Id.* at 40.  Testimony from plaintiff, the CEO of Steward Health Care, would assist the Committee in its legislative inquiry of the matter.

That plaintiff maintains that he would have asserted the Fifth Amendment in response to

_____

[1](...continued)
the Committee's response thereto.  *See* 170 Cong. Rec. S6332 (daily ed. Sept. 23, 2024); HELP Committee Report, S. Rep. No. 118-230.  Senator Sanders also placed before the Senate a letter plaintiff's counsel sent to the Chairman *after the hearing* explicitly mentioning for the first time plaintiff's Fifth Amendment privilege.  *See* 170 Cong. Rec. S6406 (daily ed. Sept. 25, 2024).

all questions at the hearing does not negate the Committee's legislative purpose in requiring

plaintiff to appear for testimony and to assert any privileges in response to questions.

### C.   The Committee Never "Acknowledged" That Dr. de la Torre Would Provide No Information If He Appeared At The Hearing.

Plaintiff asserts that, while the Committee would not excuse his appearance, "the

Committee repeatedly acknowledged that they knew Dr. de la Torre would provide no information to

the Committee on account of his Fifth Amendment invocation."  Pl.'s Opp. at 14.  That is simply

not the case.  As the record here shows, the Committee received a letter indicating counsel's belief

that plaintiff's appearance would be inconsistent with his "core constitutional rights," and the

Committee declined to excuse his appearance.  As explained in defendants' opening memorandum,

Defs.' Memo. at 41-44, in light of (a) the broad scope of questioning possible at a congressional

hearing – the full scope of which a witness cannot anticipate, and (b) the fact that Senate

committees have had witnesses express an intention to assert the Fifth Amendment privilege but

then decide to testify at hearings, defendants did not know for certain, much less "acknowledge,"

that plaintiff would assert the Fifth Amendment on all possible questions and provide no information

to the Committee.  Indeed, any claim as to what questions plaintiff would have been asked and

how he would have responded must remain speculative since plaintiff chose not to appear.

## II.   PLAINTIFF FAILS TO DEMONSTRATE THAT THIS COURT HAS JURISDICTION TO HEAR HIS CLAIMS

### A.   Defendants Are Absolutely Immune Under the Speech or Debate Clause, and Plaintiff Provides No Legal Basis for Evading That Jurisdictional Bar.

As defendants explained in their opening memorandum, Defs.' Memo. at 16-18, the

activities that plaintiff challenges here – the issuance of the subpoena requiring his appearance,

the refusal to excuse that appearance, the conduct of the Committee during its September 12

hearing, and the Committee Members' votes to report resolutions to the Senate – are all acts that

fall squarely within the legislative sphere protected by the Clause under Supreme Court and D.C. Circuit precedent.  As such, defendants are absolutely immune from plaintiff's claims, and the Court lacks jurisdiction over this suit.

In arguing that the Speech or Debate Clause does not bar his claims, plaintiff's opposition fundamentally misunderstands the nature of the privilege provided and the role that the Clause serves in securing legislative independence.  Plaintiff asserts that "Defendants go through great lengths to declare that the Speech or Debate Clause insulates *all* of Defendants' conduct from judicial scrutiny simply if they are 'legislative' in nature, even if their conduct is patently illegal or otherwise deprives citizens of their constitutional rights. MTD at 14–20. Defendants are mistaken."  Pl.'s Opp. at 7.  Yet, that is precisely what the Supreme Court has held – namely, that the Clause's immunity shields Members from suit for all of their legislative acts, on the sole basis that they are "legislative," regardless of whether those actions are alleged to be illegal or unconstitutional.  *See Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) ("Congressmen . . . are immune from liability for their actions within the legislative sphere even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes.") (internal quotation marks and citation omitted); *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 503 (1975) ("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an *absolute bar* to interference.") (emphasis added); *see also Massie v. Pelosi,* 72 F.4th 319, 323-24 (D.C. Cir. 2023) ("Immunity attaches even if a plaintiff alleges that a member has violated . . . the Constitution.").  Indeed, plaintiff's argument that, even if the actions he challenges are legislative acts, they are not protected by the Clause's immunity because they were "*ultra vires*" and violated his constitutional rights, has been raised and rejected repeatedly.  *See Rangel v. Boehner*, 785 F.3d 19,

24 (D.C. Cir. 2015) ("This 'familiar' argument – made in almost every Speech or Debate Clause case – has been rejected time and again.  An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution[.]  Such is the nature of absolute immunity, which is – in a word – absolute.") (internal citations omitted.)

Plaintiff confuses the test for application of Speech or Debate Clause immunity with the question of whether a legislative action was validly taken.  Plaintiff relies heavily upon *Watkins v. United States*, 354 U.S. 178 (1957), arguing that "because Congress has no power 'to expose for the sake of exposure' nor 'to expose where the predominant result can only be an invasion of the private rights of individuals,' immunity under the Speech or Debate Clause is unavailable for such conduct."  Pl.'s Opp. at 8 (quoting *Watkins*, 354 U.S. at 200).  Relying on *Watkins*, plaintiff argues that "investigations conducted 'solely for the personal aggrandizement of the investigators or to "punish" those investigated,' such as Defendants' actions here, 'are indefensible' and well outside of the reach of the Clause."  Pl.'s Opp. at 8-9 (quoting *Watkins*, 354 U.S. at 188, and citing *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020)).  Yet, *Watkins* reached no such conclusions regarding the protections of the Speech or Debate Clause, as Members of Congress were not parties, and *Watkins* was not a Speech or Debate Clause case.  Indeed, the Court's opinion did not even mention the Clause.  Rather, *Watkins* involved the prosecution of a witness for contempt of Congress, and the Court there was determining whether plaintiff could be held criminally liable for his conduct before a congressional committee.  *See* 354 U.S. at 181-82, 187-88, 214-15.  The language plaintiff quotes addressed the scope of Congress' investigative power with regard to a witness' criminal liability, *not* whether Members had Speech or Debate Clause immunity for actions taken against the witness.

As to *that* question – the immunity of defendants under the Speech or Debate Clause –

the Supreme Court has instructed that the Clause should be interpreted "broadly" to reach all

legislative acts, that is, all actions "within the sphere of legitimate legislative activity," *Eastland*,

421 U.S. at 503, which encompasses "anything 'generally done in a session of the House by one

of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. at 311 (quoting

*Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)).  The Speech or Debate Clause thus protects

actions that are part of –

> the deliberative and communicative processes by which Members participate in
> committee and House proceedings with respect to the consideration and passage
> or rejection of proposed legislation or with respect to other matters which the
> Constitution places within the jurisdiction of either House.

*Gravel v. United States,* 408 U.S. 606, 625 (1972); *see also McCarthy v. Pelosi,* 5 F.4th 34, 39

(D.C. Cir. 2021); *Massie*, 72 F.4th at 322 ("An act may be considered legislative if it fits within

one of *Gravel*'s categories.").

The actions plaintiff challenges are investigative actions – issuing a subpoena, ruling on

objections, and voting to report a resolution certifying a witness' default – that, under applicable

precedent, clearly satisfy the test for acts falling within the "legislative sphere" protected by the

Clause.  *See Eastland*, 421 U.S. at 504 ("The power to investigate and to do so through compulsory

process plainly falls within th[e] definition" of the legislative sphere protected by the Clause);

*Doe v. McMillan*, 412 U.S. at 313 ("authorizing an investigation," "holding hearings," "preparing

a [committee] report," and "authorizing the publication and distribution" of report are all legislative

acts protected by the Clause) and at 311-312 ("voting by Members and committee reports are

protected"); *Gravel*, 408 U.S. at 617 ("resolutions, and the act of voting are . . . covered" by the

Clause);  *Musgrave v. Warner*, 104 F.4th 355, 363-65 (D.C. Cir. 2024) (committee investigation

is "legislative act" and committee report of investigation "is a legislative document" protected by

the Clause); *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) ("Committee's

issuance of subpoenas . . . was a legislative act protected by the Speech or Debate Clause.”); *Massie*, 72 F.4th at 322-23 (enactment and enforcement of House resolution “are squarely within the jurisdiction of the House, and therefore are legislative acts”); *McCarthy*, 5 F.4th at 38-40.

Plaintiff’s opposition does not address the application of the “legislative sphere” test set forth in *Gravel* and subsequent cases to defendants’ actions here, but instead calls these precedents “a strawman,” claiming that he is not raising a general challenge to actions taken as part of a congressional investigation, Pl.’s Opp. at 10-11, but rather attacking the “legislative purpose” behind the specific actions of defendants here.  Plaintiff cannot brush away applicable precedent so breezily, however.  Under those cases, the actions at issue here *are* “legislative acts” that fit within the test set out in *Gravel* and are absolutely immune under the Clause.  Plaintiff’s effort to evade the absolute protections of the Clause for these plainly legislative acts by alleging that the Committee’s actual purpose behind these activities was to “punish” plaintiff, *id.* at 9, and subject him to “public shaming,” *id.* at 15, is misguided.  Under such an argument, any plaintiff could overcome Speech or Debate immunity merely by pleading that a legislative act, such as issuance of a subpoena, was done for an “improper purpose.”  Such pleading games would render the Clause’s immunity from suit effectively meaningless.  *See Eastland*, 421 U.S. at 508–09 (“If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it.”).[2]  Moreover, where an “activity is arguably within the ‘legitimate legislative

---

[2]  Plaintiff maintains, citing *Jewish War Veterans of the U.S.A. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007), that “Defendants’ suggestion that motives are irrelevant to determining the applicability of Speech or Debate Clause Immunity merely conflates motives . . . with legislative purpose[.]”  Pl.’s Opp. at 10 n.2.  But *Jewish War Veterans* involved a third-party subpoena issued to Members of Congress in an Establishment Clause case, not a suit against Members, challenging the display of a Latin cross at a war memorial.  The opinion there referenced seeking
(continued...)

sphere[,]' the Speech or Debate Clause bars inquiry even in the face of a claim of 'unworthy motive.' " *McSurely v. McClellan*, 553 F.2d, 1277, 1295 (D.C. Cir. 1976); *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("The claim of an unworthy purpose does not destroy the privilege."); *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) ("[I]t is generally true that the Speech or Debate Clause forbids not only inquiry into acts that are manifestly legislative but also inquiry into acts that are purportedly legislative, 'even to determine if they are legislative in fact. . . .'" (quoting *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir.1973)).

Equally unavailing are plaintiff's references to statements by Committee Members critical of plaintiff, *see* Am. Compl. ¶ 8; Pl.'s Opp. at 14, in an attempt to show that defendants' legislative actions were taken for improper reasons and, thus, defendants should not be immune from suit arising from those acts. *See, e.g.*, Pl.'s Opp. at 11 (challenged acts were taken "for the personal aggrandizement of the Defendants"). As the Supreme Court has explained, "in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it." *Eastland*, 421 U.S. at 508; *see Musgrave*, 104 F.4th at 365 ("In assessing whether the Committee's investigation is a 'legislative act[ ],' however, 'we do not look to the motives alleged to have prompted it.'" (quoting *Eastland*, 421 U.S. at 508)); *Meadows v. Pelosi*, 639 F. Supp. 3d 62, 76 (D.D.C. 2022) (rejecting contention that congressional subpoena was invalid because "statements

---

[2](...continued)
information from Members regarding "legislative purpose" as it related to the then-applicable Establishment Clause test set forth in *Lemon v. Kurtzmen*, 403 U.S. 602 (1971), that examined whether the governmental action had "a secular legislative purpose." *Jewish War Veterans*, 506 F. Supp. 2d at 43-46. The court was not analyzing "legislative purpose" to determine the applicability of the Speech or Debate Clause to documents withheld by the Members, but rather was referencing the relevance of *non*-Speech-or-Debate-protected materials to the *Lemon* test. *See id.* at 60 (finding subpoena to Members could require production of documents "dealing with overall legislative purpose [of the federal law] that are both relevant and *not covered by the Speech or Debate Clause*.") (emphasis added).

and actions of [committee] members" revealed their "true purpose" was "to engage in ad-hoc law enforcement and expose possible wrongdoings of their political adversary"). Parsing statements by Members of Congress to infer motives behind why a committee took a particular legislative act would intrude on Congress' legislative business and undermine legislative independence.

Even the primary case plaintiff relies on, *Watkins*, forswears looking to motives of individual committee members to demonstrate that the purpose of an investigation was merely to expose the witness to public shaming and invective.

> Petitioner has earnestly suggested that the difficult questions of protecting these [constitutional] rights from infringement by legislative inquiries can be surmounted in this case because there was no public purpose served in his interrogation. His conclusion is based upon the thesis that the Subcommittee was engaged in a program of exposure for the sake of exposure. The sole purpose of the inquiry, he contends, was to bring down upon himself and others the violence of public reaction . . . . In support of this argument, petitioner has marshalled an impressive array of evidence that some Congressmen have believed that such was their duty, or part of it.

> We have no doubt that there is no congressional power to expose for the sake of exposure. . . . *But a solution to our problem is not to be found in testing the motives of committee members for this purpose. Such is not our function.* Their motives alone would not vitiate an investigation which had been instituted by a House of Congress if that assembly's legislative purpose is being served.

354 U.S. at 199-200 (internal footnotes and citations omitted) (emphasis added); *see Wilkinson v. United States*, 365 U.S. 399, 412 (1961) ("[I]t is not for us to speculate as to the motivations that may have prompted the decision of individual members of the subcommittee to summon the petitioner.").

Finally, plaintiff raises the specter of unchecked congressional power, arguing that granting immunity for "unlawful and unconstitutional conduct" because it is "legislative" "would result in a blank check for members of Congress to disregard constitutional rights and protections as they see fit under the guise of an all-encompassing 'legislative purpose.'" Pl.'s Opp. at 17 (citations omitted). Yet, the potential for abuse created by the Clause is the trade-off required to guarantee

legislative independence in our system.  As the D.C. Circuit explained, although "Americans might suffer injustices (perhaps even unconstitutional ones)" from congressional investigative actions, that "did not permit courts to scrutinize the purposes and methods of congressional inquiry.  Rather, the legislative privilege is 'absolute' where it applies at all," and while "[t]hose distressed by the investigation had no judicial remedy so long as Congress acted in a procedurally regular manner[,] 'risk of such abuse . . . was "the conscious choice of the Framers.""" *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) (quoting *Eastland*, 421 U.S. at 510).

In sum, defendants' actions challenged by plaintiff's suit fall within the legislative sphere, and defendants are, therefore, absolutely immune under the Speech or Debate Clause.

**B.    Plaintiff Has Not Established Standing to Bring His Claims.**

As explained in defendants' opening memorandum, *see* Defs.' Memo. at 20-30, plaintiff's amended complaint fails to allege a concrete and particularized injury fairly traceable to defendants and redressable in this suit.  Plaintiff counters that he has suffered three injuries that support his standing: (1) a reputational injury, Pl.'s Opp. at 18-21, (2) an injury from being chilled in the exercise of his Fifth Amendment rights, *id.* at 21-22, and (3) an injury from the continued threat of prosecution and civil enforcement against him, *id.* at 22-23.  None of these qualify for Article III standing on the record here.

First, plaintiff asserts that "Defendants engaged in substantial unlawful conduct" that included "the Committee's September 12, 2024, Hearing, September 19, 2024, Executive session, votes to report both [the criminal contempt and civil enforcement] resolutions, as well as subsequent press releases and public statements accompanying these actions, [that] have damaged Dr. de la Torre's personal and professional reputation."  Pl.'s Opp. at 18.  Yet, none of these alleged actions caused a cognizable reputational harm sufficient for standing.

14

As to the Committee's hearing, Executive session, and votes on the resolutions, those actions are completed and whatever reputational injury plaintiff purportedly suffers from them only constitutes a "lingering," "secondary effect" that is a "byproduct of government action," insufficient to support standing.  *See Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) ("Our case law makes clear that where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III."); *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Jud. Conf. of the U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (no on-going reputational injury to federal judge, other than collateral consequences, from one-year suspension and three-year disqualification that had already expired); *cf. also Spenser v. Kemna*, 523 U.S. 1, 16 n.8 (1998) (rejecting argument that "a finding that an individual has committed a serious felony renders the interest in vindicating . . . reputation ... constitutionally sufficient to avoid [Article III] mootness") (internal quotation marks omitted).  Additionally, a court cannot provide redress for any damage to plaintiff's reputation from these actions because courts have no authority to direct Congress or its Members "to retract" these completed legislative actions.  *See Hearst v. Black*, 87 F.2d 68, 72 (D.C. Cir. 1936) ("Nothing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others.").  Even if a court could do so, no relief against defendants can reverse Senate action here as the Senate has already passed the Committee's resolution certifying plaintiff's default to the U.S. Attorney for criminal contempt and the President Pro Tempore has sent that certification.[3]

---

[3] As to the Committee's resolution for civil enforcement against plaintiff, the 118th Congress has adjourned and, as the Senate did not act prior to adjournment on that resolution, that resolution has lapsed and is no longer pending in the Senate, so there is nothing to "retract."

Nor are the defendants' "press releases and public statements" that plaintiff references sufficient to demonstrate a reputational injury from the Committee's reporting of the contempt resolution. Plaintiff does not sue defendants because of their statements at the Committee hearing and executive session (a suit that would be barred by the Speech or Debate Clause) nor because of their press statements against him (a suit that would run up against the immunity for federal officials under the Federal Tort Claims Act). Rather, plaintiff challenges the Committee's declining to excuse plaintiff's appearance and adopting the resolution to certify his default for criminal prosecution. Plaintiff cannot bootstrap standing to challenge that resolution based on alleged injuries arising from separate public statements by some defendants. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006). ("Standing is not dispensed in gross," and a plaintiff cannot, "by virtue of his standing to challenge one government action, challenge other governmental actions that did not injure him").

Plaintiff's attempt to analogize his alleged injury to that in *Foretich*, 351 F.3d 1198, is unavailing. *See* Pl.'s Opp. at 20-21. In *Foretich*, the plaintiff challenged an Act of Congress as an unconstitutional Bill of Attainder, alleging that the law "embodie[d] a congressional determination that he engaged in criminal acts of child abuse," 351 F.3d at 1211, harming his reputation by giving "the imprimatur of government authority . . effectively denounc[ing] Dr. Foretich as a danger to his own daughter." *Id.* at 1215. Here, plaintiff claims reputational harm from criticism of his management of Steward Health Care and comments about criminal investigations of his actions as CEO of that company. *See, e.g.*, Am. Compl. ¶¶ 47, 65. The Committee's resolution certifying plaintiff's failure to appear at the hearing, however, does not address, much less "embody," anything regarding plaintiff's actions at Steward or relative to any criminal investigations thereof; it merely cites plaintiff's default on the subpoena. Hence, unlike

in *Foretich*, the government action here provided no "imprimatur" to negative remarks on

plaintiff's actions as CEO of Steward Health Care.  *Cf. Saline Parents v. Garland*, 88 F.4th 298,

306 (D.C. Cir. 2023) ("Appellants have not offered anything to show that the Government

labeled them in any way, let alone impugned their reputations. Any reputational injury

Appellants believe they have suffered is therefore insufficient to satisfy Article III.").

In addition, in *Foretich*, the plaintiff identified specific professional harms suffered from

the negative affect on his reputation, namely "he was denied a position at a [] university," "was

asked to resign his position" at a professional organization, and "[his] business suffered a 30%

decline following adoption of the Act . . . [f]orc[ing him] to seek employment" in a different

geographical area.  *Foretich*, 351 F.3d at 1209.  In contrast, plaintiff here does not identify any

such concrete harm from his "reputational injury," but only alleges that he voluntarily resigned as

CEO, Am. Compl. ¶ 66, when he "amicably separated" from Steward Health Care.  *See* Mark

Arsenault and Jessica Bartlett, *Steward Health Care CEO Ralph de la Torre Will Resign*, THE

BOSTON GLOBE, (Sept. 28, 2024), https://www.bostonglobe.com/2024/09/28/business/

ralph-de-la-torre-steward-health-care-ceo- resigns/, *cited in* Am. Compl. ¶ 65 n.24.[4]

As to plaintiff's claim that he is chilled in exercising his rights because defendants' conduct

"deters Dr. de la Torre from continuing to stand on his Fifth Amendment rights," Pl.'s Opp. at 21,

that assertion is contradicted by the record here.  Far from identifying any chill, plaintiff alleges

that he defied the subpoena based on the exercise of his Fifth Amendment rights.  In truth, he was

not chilled by the Committee in exercising his Fifth Amendment right.  He independently chose,

against the advice of the Committee, not to appear at the hearing to assert a privilege.

---

[4] Also, unlike in *Foretich*, where plaintiff sued the United States, plaintiff here sues
Members of Congress, implicating Speech or Debate Clause immunity, which bars entering
equitable relief – in the form of either an injunction or declaratory judgment – against defendants.

Finally, plaintiff's argument that he is harmed because he remains under "credible threat" of criminal and civil enforcement also fails to give him standing. His claim of a credible threat of criminal prosecution contradicts his own statements disclaiming any imminence of a criminal prosecution and forgoing seeking any injunctive relief to prevent any potential criminal proceedings. *See* Pl.'s Opp. at 36. Moreover, as explained in defendants' opening memorandum, Defs.' Memo. at 25-26, the Senate has finished its action certifying plaintiff's default to the U.S. Attorney and that certification has been delivered. Accordingly, any on-going harm plaintiff suffers from the threat of criminal indictment would be traceable to the U.S. Attorney and a federal grand jury, and not defendants. And any redress to remove the "credible threat of prosecution" would have to run against those government entities, not defendants.[5]

## III.   PLAINTIFF'S CIVIL SUIT IS AN IMPROPER ATTEMPT TO INTERFERE WITH A CRIMINAL PROCEEDING

As explained in defendants' opening memorandum, *see* Defs.' Memo. at 30-36, plaintiff's suit is a transparent and improper attempt to interfere in potential criminal proceedings through an ancillary civil action. In response, plaintiff mischaracterizes the nature of his suit and claims that he simply seeks redress for "violations of his constitutional rights, regardless of any potential criminal indictment that may in the future arise." Pl.'s Opp. at 36. Review of the amended complaint, however, demonstrates that the relief sought would interfere with potential criminal contempt proceedings. Although plaintiff claims he "seeks no direct redress from any potential criminal matters," *id.*, his amended complaint is replete with allegations that he is "under ongoing threat of criminal prosecution." Am. Compl. ¶¶ 11, 65; *see* Pl.'s Opp. at 6, 22-23.

_____

[5]   As to plaintiff's concern over the threat of civil enforcement, as mentioned above, *supra* at 16 n.3, the resolution for civil enforcement lapsed at the end of the 118th Congress and is no longer pending in the Senate. Accordingly, no "credible threat" of civil enforcement exists that could qualify as a concrete and imminent harm to plaintiff.

Indeed, the relief sought in the amended complaint specifically includes requests that the Court declare that the subpoena and the Committee's vote in favor of the criminal contempt resolution violated his Fifth Amendment rights, declare that he properly invoked his Fifth Amendment rights, and enjoin the Committee from causing him "to suffer from additional punishment for invoking his Fifth Amendment rights" in response to the subpoena. Am. Compl. at 31, Prayer for Relief.. The requested relief effectively seeks a pre-indictment ruling that no crime was committed because the subpoena was invalid and he properly asserted his Fifth Amendment rights to avoid appearing at the Committee's hearing. In other words, plaintiff is attempting to unwind actions taken against him to prevent enforcement of the criminal contempt of Congress statute, 2 U.S.C. §§ 192, 194, under which the Committee and the Senate voted to certify plaintiff's default to the U.S. Attorney for presentation to a grand jury.

Plaintiff's attempt to distinguish Supreme Court and D.C. Circuit authority on this issue by arguing that he seeks relief "as against *these Defendants* – not the Department of Justice or any other prosecutorial body," Pl.'s Opp. at 35, is not persuasive. The fundamental principles set forth in *Younger v. Harris,* 401 U.S. 37 (1971) and *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), are not limited to civil suits against particular defendants. The question is whether the relief requested would interfere with an ongoing criminal investigation or prosecution. For the reasons set forth above and explained in defendant's opening memorandum, Defs.' Memo. at 30-36, the answer is yes, regardless of the government defendant named.

Plaintiff also argues that "this Court is an appropriate forum to adjudicate" his claims because unlike in the cases cited by defendants, "there is no pending criminal proceeding against him, and thus, he does not have any 'defenses' to advance at this time." Pl.'s Opp. at 36. This argument is expressly contradicted by plaintiff's own allegations that he is under a "continued"

and "credible" threat of criminal prosecution.  *Id.* at 6, 22-23.  It also ignores that the D.C.

Circuit in *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)*,* relied on these principles, even

though there was not yet an indictment, to reject "entertain[ing] the claim of a person subject to a

criminal investigation that the investigation is unlawful and must therefore be enjoined."  *Id.* at

62 n.60 (citing *Deaver*, 822 F.2d at 67-68; *North v. Walsh*, 656 F. Supp. 414, 420 (D.D.C. 1987)).

Plaintiff has an adequate forum to raise his objections should he need to in defense of any

criminal action that may be brought against him.  Because plaintiff's suit is an improper attempt

to use a civil suit to undercut any criminal proceeding against him for his failure to comply with

the Committee's subpoena, it should be dismissed.

## IV.    PLAINTIFF'S ALLEGATIONS DO NOT STATE A CLAIM AS A MATTER OF LAW

### A.    The Committee's Subpoena Had A Valid Legislative Purpose

The Committee issued a subpoena to plaintiff to gather information regarding Steward

Health Care's bankruptcy and its effect on the health care system.  *See* HELP Committee Report,

S. Rep. No. 118-230, at 40, App. V (statement of Ranking Member Cassidy at Sept. 12 hearing).

The Committee also sought to understand the impact "that private equity is having on [the

nation's] health care system."  *Id.* at 37 (statement of Chariman Sanders at Sept. 12 hearing).

As the Supreme Court recently affirmed, "the congressional power to obtain information

is 'broad' and 'indispensable.' It encompasses inquiries into the administration of existing laws,

studies of proposed laws, and 'surveys of defects in our social, economic or political system for

the purpose of enabling the Congress to remedy them.'" *Trump v. Mazars*, 591 U.S. at 862

(quoting *Watkins*, 354 U.S. at 187, 215).  A valid subpoena is one that seeks information on "a

subject on which legislation 'could be had.'" *Id.* at 863 (quoting *Eastland*, 421 U.S. at 506).  The

Committee's subpoena to plaintiff, which plainly serves a legislative purpose on a matter

pertinent to the Committee's legislative responsibilities and as to which legislation "could be had," easily satisfies the limited, "narrow" scope of inquiry courts undertake in reviewing the legislative purpose of congressional investigative activities. *See Eastland*, 421 U.S. at 506; *Judicial Watch, Inc. v. Schiff*, 998 F.3d at 992; *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, 575 F. Supp. 53, 69 (D.D.C. 2021) ("The inquiry by a court into legislative purpose is . . . narrow."), *aff'd*, 45 F.4th 324 (D.C. Cir. 2022).

Plaintiff responds that "Defendants mischaracterize" his claim because "Dr. de la Torre does not challenge the Committee's authority to initiate an investigation, issue a subpoena, or even the 'propriety of making [Dr. de la Torre] a subject of the investigation and subpoena.'" Pl.'s Opp. at 26. This argument flatly contradicts plaintiff's amended complaint, which expressly states "Count I" - "Subpoena does not advance a valid legislative purpose." Am. Compl. at 26; *see also id.* ¶ 72. Plaintiff cannot change the gravamen of his claim in the opposition to a motion to dismiss. *See Bain v. Office of Att'y General*, 648 F. Supp. 3d 19, 43 (D.D.C. 2022) ("[A] plaintiff may not amend her complaint through her opposition to a motion to dismiss . . . .").

Even limiting the focus, as plaintiff urges, *see* Pl.'s Opp. at 26, to the Committee's action requiring plaintiff to appear at the hearing and assert any Fifth Amendment privilege in response to questions, does not negate the valid legislative purpose. A congressional committee's process in issuing and pursuing compliance with its subpoena, including handling objections raised by a witness and proposing to the Senate an enforcement resolution, serves the same legislative purpose that undergirds the subpoena itself. Plaintiff cannot isolate any individual part of that process to claim a lack of legislative purpose. As the subpoena had a clear legislative purpose, the Committee's

process to enforce compliance with that subpoena furthers that same legislative purpose.[6]

Plaintiff's suit essentially asks this Court to second guess the Committee's decision to subpoena plaintiff and make him appear at the hearing as part of its investigation regarding Steward Health Care's bankruptcy. The Supreme Court has admonished that courts should not engage in such micromanagement of the legislative branch, because "[t]he wisdom of congressional approach or methodology is not open to judicial veto." *Eastland*, 421 U.S. at 509.

Plaintiff's allegations that the subpoena and the Committee's actions enforcing it lack a legislative purpose fail to state a claim.

### B. The Committee Did Not Violate Plaintiff's Fifth Amendment Rights

As explained in defendants' opening memorandum, *see* Defs.' Memo. at 39-44, a witness before the Committee is not a defendant in a criminal trial and does not have a Fifth Amendment right to refuse to appear entirely when summoned to testify. In response, plaintiff claims that "Defendants violated his Fifth Amendment rights by punishing him with criminal contempt proceedings for standing on those rights." Pl.'s Opp. at 28. As noted above, *supra* at 4-5, plaintiff's unsupported allegations that he was "punished" for asserting his Fifth Amendment rights misstate the record. Moreover, in asserting that "the law does not require that Dr. de la Torre appear at the Hearing . . . to avail himself of his Fifth Amendment rights," Pl.'s Opp. at 28, plaintiff ignores Supreme Court precedent and fundamentally misunderstands the nature of congressional hearings.

In arguing that defendants violated his Fifth Amendment rights, plaintiff fails to grapple

---

[6] Any contumacious witness can argue that the congressional certification of default to the U.S. Attorney for prosecution serves "no legislative purpose" because it only punishes his contempt but does not compel production of any information relevant to legislative consideration. However, the process by which a committee considers and rules on objections and enforces compliance with its subpoenas effectuates Congress' constitutional power to compel testimony from witnesses, and the legislative purpose of such action flows from the purpose served by the subpoena for which the witness' non-compliance is being sanctioned.

with the Supreme Court's decision in *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). The Supreme Court in that case explicitly rejected the argument plaintiff is making here, finding "no Fifth Amendment violation occurred as a result of the Government's calling seven witnesses to testify despite an avowed intention to invoke their Fifth Amendment privilege." *Id.* at 258. Plaintiff attempts to distinguish *Bank of Nova Scotia* by arguing it "implicate[s] a witness's testimony before a grand jury," not a congressional hearing, Pl.'s Opp. at 15, and "[p]unishing someone for invoking their privilege against self-incrimination clearly violates the Fifth Amendment, and nothing in *Bank of Nova Scotia* says otherwise." *Id.* at 31, n.12. This run-around argument not only misstates the record, *supra* at 4-5, but also ignores the fundamental finding of *Bank of Nova Scotia* as it relates to the Fifth Amendment – namely, that the legal obligation of a witness to appear for testimony pursuant to subpoena does not violate the Fifth Amendment even when the government is informed or has reason to believe that the witness intends to assert his Fifth Amendment rights. Indeed, the Supreme Court expressly found that "[t]he Government was not required to take at face value the unsworn assertions made by these witnesses outside the grand jury room." *Bank of Nova Scotia,* 437 U.S. at 259. Just as the Supreme Court noted there, the Committee here was not required to accept vague assertions made by plaintiff's counsel prior to the hearing, and like the witnesses in that case*,* plaintiff did not have a Fifth Amendment right excusing him from appearing entirely when summoned to testify.

Instead of meaningfully addressing *Bank of Nova Scotia,* plaintiff cites to and cherry-picks language from other cases to support his claim that he is being "punished" in violation of his Fifth Amendment rights for not appearing at the Committee's hearing. Relying primarily on *Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (en banc), plaintiff claims that the Fifth Amendment "specifically prohibits" calling to the stand a witness who has indicated an

23

intent to invoke his Fifth Amendment right.  Pl. Opp. at 13; *see also id.* at 29, 32.  In *Bowles,* a court in a criminal trial exercised its discretion and excused a non-defendant witness from having to take the stand and invoke the Fifth Amendment privilege *in front of the jury*, where the witness established that he would invoke the Fifth Amendment privilege.  439 F.2d at 541.  The court did so in order to protect the defendant's right to a fair trial and jury deliberations, *not* the right of the witness.  *Id.* at 541-52.  Such concerns are simply not implicated in congressional hearings because there is no jury whose deliberations could be tainted by observing a witness invoke the Fifth Amendment, nor a defendant whose fair trial rights must be protected.  Moreover, unlike in a criminal trial, where questioning of a witness is limited to matters relevant to the charges against the defendant, a committee hearing may address a broad subject with many possible areas of inquiry, making any pre-appearance intention to assert a Fifth Amendment privilege as to all possible questions particularly speculative.

Plaintiff cites *Quinn v. United States,* 349 U.S. 155 (1955), to argue that he "properly invoked his Fifth Amendment rights" in advance of the hearing and "[r]ather than respecting his invocation . . . Defendants purported to 'overrule' his invocation without further inquiry into the basis for his assertion and ultimately punished him for his invocation."  Pl.'s Opp. at 29, 30.  As explained above, the Committee did not "overrule" plaintiff's invocation of the Fifth Amendment, but told him how to assert it.  *See supra* at 5.  Moreover, in *Quinn*, the witness *appeared* before the congressional committee pursuant to subpoena and invoked the Fifth Amendment in response to specific questions *at the hearing*, as required of witnesses.  349 U.S. at 157-58, 162-63.[7]

---

[7]  As the Supreme Court explained, "[w]hen a witness declines to answer *a question* because of constitutional objections and the language used is not free from doubt, the way is always open for the committee to inquire into the nature of the claim before making a ruling." *Quinn*, 349 U.S. at 164 (emphasis added.)   Here, the Committee was not able to inquire into the

(continued...)

Finally, plaintiff's citation to *United States v. Thornton*, 733 F.2d 121 (D.C. Cir. 1984), to claim that "he was well within his rights to invoke a 'blanket assertion of privilege' rather than invoking his Fifth Amendment rights on a question-by-question basis," Pl.'s Opp. at 32, belies the facts of that case. In *Thornton,* the D.C. Circuit held that the district court did not err in sustaining a witness' blanket assertion of Fifth Amendment privilege during a criminal pre-trial hearing where the witness had been arrested at the same time as the defendant. *Id.* at 124-27. However, unlike the situation in this case, the witness in *Thornton* took the stand at the hearing, answered preliminary questions, and subsequently invoked the Fifth Amendment privilege to decline to answer a specific question on the topic. Plaintiff here failed to even appear at the Committee's hearing and assert his privilege in response to questions.

If plaintiff here believed he "faced a legitimate threat that the Hearing would entail an onslaught of questions subjecting him to criminal liability," Pl.'s Opp. at 33, he assuredly had the constitutional right to avail himself of his privilege under the Fifth Amendment and not answer questions when the response might tend to incriminate him, as the Committee had informed him. Plaintiff did not, however, have a Fifth Amendment right to ignore a duly-issued congressional subpoena and refuse to appear entirely when summoned to testify.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Amended Complaint, the Court should grant the motion and dismiss plaintiff's amended complaint.

---

[7](...continued)
nature of any Fifth Amendment assertion in response to a question for the simple reason that plaintiff willfully chose not to appear at the Committee's hearing and assert any Fifth Amendment privilege in response to specific questions.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO CONDUCT LIMITED DISCOVERY**

**INTRODUCTION**

Plaintiff moves the Court for leave to conduct jurisdictional discovery to challenge defendants' argument that the Court lacks subject matter jurisdiction because defendants are absolutely immune from plaintiff's suit under the Speech or Debate Clause. Yet, plaintiff cites to no similar case that allowed for such discovery against defendant Members of Congress who have raised Speech or Debate Clause immunity in seeking dismissal of claims against them. That is because such discovery is incompatible with the immunity from suit provided by the Clause, and plaintiff's motion should be denied on that ground alone. His motion should also be denied because it fails to make a detailed showing of the specific, limited discovery he seeks that would yield additional facts that could affect the Court's jurisdictional analysis, as required to be granted leave to conduct jurisdictional discovery. Finally, plaintiff's motion should be denied because the discovery he seeks, to the extent he has articulated what he envisions, is itself largely precluded by the Speech or Debate Clause.[8]

**BACKGROUND**

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3(c), counsel for the parties conferred on December 12, 2024, regarding scheduling and discovery in this case and submitted a Joint Meet and Confer Statement with a proposed schedule to the Court on

---

[8] While plaintiff's motion briefly mentions seeking discovery regarding plaintiff's Article III standing, *see* Memo. in Supp. of Pl.'s Mot. for Leave to Conduct Limited Jurisdictional Disc. ("Pl.'s Disc. Mot.") at 10-11, ECF No. 20-1, the discovery regarding standing that he identifies is either about the Speech or Debate Clause issue, *id.* at 11 (seeking discovery of Speech or Debate immunity to challenge defendants' redressability arguments), or relates to the "completeness" of Senate action enforcing the subpoena against him, which is available from the public record and warrants no discovery.

December 24, 2024.  ECF No. 19.  In that joint statement, plaintiff maintained that "discovery should proceed in the normal course under the Federal and Local Rules," ECF No. 19, at 2, 4, and defendants stated their position that, because "Defendants are absolutely immune from suit, not merely liability, under the Speech or Debate Clause, an immunity that relieves them not only from the consequences of litigation's results but also from the burden of defending themselves . . . , no discovery is appropriate in this case, and, at a minimum, any discovery should be postponed until after the Court resolves Defendants' pending motion to dismiss."  *Id.* at 2, 4, 7.  On December 28, the Court entered a Minute Order providing a briefing schedule on defendants' motion to dismiss and stating that "[n]o action is necessary in this case until resolution of the Motion to Dismiss."  Minute Order of 12/28/2024.

On January 2, 2025, plaintiff filed the instant motion asking the Court for permission to conduct jurisdictional discovery, and, as stated in plaintiff's proposed order but not the motion, for the Court to take no further action on the motion to dismiss until such discovery is complete.

## ARGUMENT

### PLAINTIFF'S REQUEST TO TAKE JURISDICTIONAL DISCOVERY SHOULD BE DENIED

As demonstrated by the primary case plaintiff relies on to support the Court's authority to grant jurisdictional discovery, *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000), such discovery generally arises in cases where the defendant challenges *personal* jurisdiction and the plaintiff seeks to discover facts regarding defendant's contacts with the forum state.  Here, plaintiff seeks discovery regarding the Court's subject matter jurisdiction, and "while there is precedent in this Circuit for jurisdictional discovery to show subject matter jurisdiction, it is a far less common application."  *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 82 (D.D.C. 2019), *aff'd sub nom.*, *Ambellu v. Re'ese Adbarat*

*Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (noting jurisdictional discovery involving narrow searches for "existence vel non of internal governmental policies" proceeded in two cases involving the question of sovereign immunity under the FTCA exception for policymaking and discretionary function actions).  While such discovery may be permitted in certain, limited circumstances, "[j]urisdictional discovery is not a vehicle Plaintiffs may use to hunt for any kernel of fact marginally relevant to the court's subject-matter jurisdiction, nor is it 'a talisman whose mere utterance can ward off an impending motion to dismiss.'"  *Judicial Watch, Inc. v. Kerry*, 156 F. Supp. 3d 69, 79 (D.D.C. 2016) (quoting *NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011)), *rev'd and remanded on other grounds*, 844 F.3d 952 (D.C. Cir. 2016).

In order to obtain jurisdictional discovery, "a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce[,]'" *NBC-USA Housing, Inc.*, 774 F. Supp. 2d at 295 (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003), and "'must have at least a good faith belief that such discovery will enable it to show that the court' enjoys jurisdiction over the suit."  *Judicial Watch, Inc. v. Tillerson*, 293 F. Supp. 3d 33, 47 (D.D.C. 2017) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)), *aff'd*, 744 F. App'x 3 (D.C. Cir. 2018). "[W]hatever the context, 'jurisdictional discovery cannot be based on mere conjecture or speculation,'" *Ambellu*, 406 F. Supp. 3d at 82 (quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008)), "[a]nd jurisdictional discovery is not appropriate if it 'would amount to nothing more than a fishing expedition.'" *Id.* (quoting *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)).

I.      **Plaintiff's Jurisdictional Discovery Is Incompatible With Defendants'
        Immunity From Suit Under The Speech Or Debate Clause**

Defendants moved to dismiss plaintiff's claims against them on the grounds, *inter alia*,

that those claims are barred by Speech or Debate Clause immunity.  *See* Defs.' Memo. at 14-20.

The Supreme Court has emphasized repeatedly that Speech or Debate Clause immunity "not only

provides a defense on the merits but also protects a legislator from *the burden of defending*

*himself*."  *Powell v. McCormick*, 395 U.S. 486, 502-03 (1969) (emphasis added); *see also*

*Eastland*, 421 U.S. at 503 ("legislators acting within the sphere of legitimate legislative activity

'should be protected not only from the consequences of litigation's results but also from *the*

*burden of defending themselves*.'") (emphasis added) (quoting *Dombrowski v. Eastland*, 387 U.S.

82, 85 (1967)).  Immunity from the burdens of suit protects the independent functioning of the

legislative branch, because "legislative independence is imperiled" when a "civil action . . .

creates a distraction and forces [congressmen] to divert their time, energy, and attention from

their legislative tasks to defend the litigation."  *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992

(D.C. Cir. 2021) (quoting *Eastland*, 421 U.S. at 503)).  Accordingly, to effectuate the Clause's

protections, legislators' immunity under the Clause must be decided at the outset of a lawsuit and

is appropriately done on the allegations in the complaint and judicially-noticeable public records.

*See Eastland*, 421 U.S. at 511 n.17 ("[T]he purposes which the Clause serves require that

[motions to dismiss on Speech or Debate Clause grounds] be given the most expeditious

treatment by district courts because one branch of Government is being asked to halt the

functions of a coordinate branch.").

Defendants' motion to dismiss relied on no matters outside of the complaint, except for

public records subject to judicial notice, and that motion can and should be decided on that record

in accordance with well-established Speech or Debate Clause practice.[9]   Allowing plaintiff to

conduct discovery before resolving defendants' immunity would undermine the very purpose of

the Clause as an immunity *from suit* by burdening Members with defending intrusive litigation

and discovery requests regarding their legislative activities, thereby improperly intruding into the

independent conduct of Members' legislative functions.   It is therefore not surprising that

plaintiff has cited no similar Speech or Debate Clause case where a court has granted

jurisdictional discovery like that he seeks.   This Court should accordingly deny his motion for

discovery.

## II.    Plaintiff Fails To Identify Specific, Limited Discovery That Would Demonstrate The Court's Jurisdiction Here.

The Court should also deny plaintiff's motion because it fails to make the required "detailed

showing" of specific information plaintiff seeks through discovery that would demonstrate that

the Court has jurisdiction over this suit.  *See NBC-USA Housing, Inc.*, 774 F. Supp. 2d at 295;

*Judicial Watch v. Tillerson*, 293 F. Supp. 3d at 47.   Indeed, far from identifying specific, limited

discovery requests, plaintiff describes the discovery he seeks in general, abstract terms, *see, e.g.*,

Pl.'s Disc. Mot. at 8 (plaintiff seeks "discoverable information and evidence regarding the

context surrounding the Committee's enforcement efforts"), or in terms of legal conclusions that

he claims will be revealed.  *Id.* at 8 ("targeted discovery is appropriate to demonstrate that

Defendants' relevant conduct . . . w[as] unconstitutional, *ultra vires* actions neither related to nor

---

[9]  There are numerous examples of Speech or Debate Clause defenses being resolved on motions to dismiss before discovery.  For some recent cases, see, e.g., *Musgrave v. Warner*, 2022 WL 4245489 (D.D.C. Sept. 15, 2022), *aff'd*, 104 F.4th 355 (D.C. Cir. 2024); *Massie v. Pelosi*, 590 F. Supp. 3d 196 (D.D.C. 2022), *aff'd*, 72 F.4th 319 (D.C. Cir. 2023); *Schilling v. Speaker of U.S. House of Representatives*, 633 F. Supp. 3d 272 (D.D.C. 2022), *aff'd on other grounds*, 102 F.4th 503 (D.C. Cir. 2024); *Clyde v. Walker*, 619 F. Supp. 3d 193 (D.D.C. 2022), *aff'd*, 2023 WL 6939987 (D.C. Cir. Oct. 20, 2023); *McCarthy v. Pelosi*, 480 F. Supp. 3d 28 (D.D.C. 2020), *aff'd*, 5 F.4th 34 (D.C. Cir. 2021); *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd*, 998 F.3d 989 (D.C. Cir. 2021).

essential to the due functioning of the legislative process."); *id.* at 9 ("Dr. de la Torre also expects jurisdictional discovery will reveal that the Committee understood Dr. de la Torre asserted his Fifth Amendment rights prior to the Hearing, as well as evidence to show that there was no legislative purpose to hauling him before the Committee solely to re-invoke his Fifth Amendment rights in public."); *id.* ("Jurisdictional discovery will also reveal evidence that Defendants' continued enforcement actions after Dr. de la Torre's invocation lacked any legislative purpose and were conducted exclusively to harass and intimidate him. For example, jurisdictional discovery will likely reveal discoverable evidence of how and the extent to which Defendants planned to attack and ridicule Dr. de la Torre in public, rather than ask any legitimate questions of him, and whether so doing was simply for the personal aggrandizement of members of the Committee.").[10]

To the extent plaintiff attempts to articulate any particularized discovery, he mentions seeking "information about the Committee's communications with members of the media and other third parties ahead of the hearing," *id.* at 9, and about "any engagement by the Committee with the U.S. Attorney's Office or other law enforcement entities." *Id.* at 10-11. But plaintiff offers nothing more than speculation to support discovery into these areas, *see, e.g.*, *id.* at 9 (asserting that discovery "may illuminate evidence regarding the lack of any legislative purpose in how Defendants responded to Dr. de la Torre's Fifth Amendment invocation"), which is

---

[10]  Indeed, much of plaintiff's suggested discovery appears to focus on the legal merits of his two claims – that the Committee's subpoena lacked a legislative purpose, Am. Compl. Count I, and that the Committee's actions violated plaintiff's Fifth Amendment rights, Am. Compl. Count II.  Of course, discovery regarding the merits of the claims raised in the complaint is not *jurisdictional* discovery.  Accepting plaintiff's assertion that the Speech or Debate Clause jurisdictional question raises "inextricable mixed questions of law and fact," Pl.'s Disc. Mot. at 6, that cannot be decided without discovery, would effectively weaken the constitutional immunity from suit provided by the Clause by turning application of Speech or Debate immunity into a factual dispute necessitating discovery and other fact-finding litigation procedures.

insufficient to support jurisdictional discovery generally, *FC Inv. Grp. LC*, 529 F.3d at 1094

("[A] request for jurisdictional discovery cannot be based on mere conjecture or speculation."),

much less a request for jurisdictional discovery in the face of a claim of Speech or Debate

immunity.  Such requested discovery "amount[s] to nothing more than a fishing expedition" that

is not appropriate for jurisdictional discovery.  *Ambellu*, 406 F. Supp. 3d at 82; *see also*

*MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 862-63 (D.C. Cir. 1988) (courts

should not permit "a fishing expedition into congressional files.").

      Moreover, under applicable Speech or Debate Clause precedents, the discovery plaintiff

seeks is neither necessary nor relevant to the resolution of the motion to dismiss, and therefore

his request should be denied.  *See Colo. Wild Horse & Burro Coal., Inc. v. Kempthorne*, 527 F.

Supp. 2d 3, 7 (D.D.C. 2007) ("Discovery is properly denied in connection with a motion to

dismiss on jurisdictional grounds when the court 'do[es] not see what facts additional discovery

could produce that would affect [its] jurisdictional analysis.'") (quoting *Mwani v. bin Laden*, 417

F.3d 1, 17 (D.C. Cir. 2005)).  Plaintiff claims that jurisdictional discovery "is appropriate to

demonstrate that Defendants' relevant conduct . . . [was] unconstitutional, *ultra vires* actions

neither related to nor essential to the due functioning of the legislative process."  Pl.'s Disc. Mot.

at 8.  Yet, as explained earlier, the question of whether the defendants' investigative actions in

issuing the subpoena, declining to excuse plaintiff from attending the hearing, and voting to

report a resolution to certify his default to the U.S. Attorney, were unconstitutional or otherwise

illegal does not implicate whether such actions were part of the legislative sphere covered by the

Speech or Debate Clause.  *See supra* at 8-9; Defs.' Memo. at 19-20; *Doe v. McMillan*, 412 U.S.

at 312-13 ("Congressmen . . . are immune from liability for their actions within the legislative

sphere *even though* their conduct, if performed in other than legislative contexts, would in itself

be unconstitutional or otherwise contrary to criminal or civil statutes.") (internal quotation marks and citation omitted) (emphasis added). Accordingly, discovery on that question does not affect the Speech or Debate Clause analysis. *See Mwani*, 417 F.3d at 17 (quoting *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994)) (affirming denial of jurisdictional discovery when not apparent what facts such discovery would produce that would affect court's jurisdictional analysis).

Plaintiff further argues that "[j]urisdictional discovery will also reveal evidence that Defendants' continued enforcement actions after Dr. de la Torre's invocation lacked any legislative purpose and were conducted exclusively to harass and intimidate him," and were "simply for the personal aggrandizement of members of the Committee." Pl.'s Disc. Mot. at 9. This argument misunderstands the application of Speech or Debate immunity. In applying the Clause, the question is not what the motive for an action is; rather, the question is whether the action is part of the legislative sphere. As explained in detail in defendants' motion to dismiss, *see* Defs.'s Memo. at 16-19; *supra* at 10-11, under established precedent, the Speech or Debate Clause provides absolute immunity for the defendants' actions challenged by plaintiff here. Plaintiff's allegations that the subpoena lacks a legislative purpose cannot remove the protections of the Clause from these core legislative actions, *see supra* at 11-13, nor create any basis for seeking discovery from defendants.

Indeed, the D.C. Circuit recently affirmed the denial of a plaintiff's request to conduct discovery to test the "legislative purpose" in deciding the application of the Speech or Debate Clause. *Musgrave*, 104 F.4th 355. In *Musgrave*, plaintiff sued a Senate committee and its chairman to require the disclosure of a non-public Senate committee report, and the Senate defendants moved to dismiss the complaint on, *inter alia*, Speech or Debate Clause grounds. *Id.*

at 359.  In opposing the motion, plaintiff requested discovery about "the report's purpose," including "communications . . . between the committee and the Executive Branch," *id.* at 359-60, 365-66, in support of his argument that the Clause did not bar his suit because the committee report had a non-legislative purpose.  The Court of Appeals upheld the district court's denial of the requested discovery, explaining that "the Speech or Debate Clause 'protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" *Id.* at 366 (quoting *Eastland*, 421 U.S. at 508).  Accordingly, "the creation of the [committee] report was a legislative act *regardless of its purpose*," *id.* (emphasis added), and, therefore, plaintiff was unable to show "that any requested discovery could produce information that would affect the Speech-or-Debate analysis."  *Id.* at 366.  That reasoning applies equally to plaintiff's motion here.

Plaintiff's citation to *Jewish War Veterans*, 506 F. Supp. 2d 30, *see* Pl.'s Disc. Mot. at 11-12, does not support a contrary conclusion.  That case did not involve a civil suit against Members of Congress, which would implicate the jurisdictional bar of the Speech or Debate Clause's *immunity* from suit, but rather third-party subpoenas to Members that raised Speech or Debate *privilege* issues, *see Clyde v. Walker*, No. 22-5263, 2023 WL 6939987, at *1 n.4 (D.C. Cir. Oct. 20, 2023) (Clause's privilege from non-disclosure, unlike its immunity from suit, "shield[s] Members against certain forms of questioning but do[es] not deprive the court of jurisdiction"), and hence did not involve any issue regarding "jurisdictional discovery."

Plaintiff argues that *Jewish War Veterans* supports his request for discovery into the purpose of Defendants' legislative acts to challenge the applicability of the Speech or Debate Clause.  Pl.'s Disc. Mot. at 12 ("Indeed, 'documents that reflect legislative purpose, rather than the motives of individual legislators' 'must be produced.') (quoting *Jewish War Veterans*, 506 F.

Supp. 2d at 54-55).  As explained above, *supra* at 11 n.2, plaintiff misconstrues *Jewish War Veterans*'s reference to "legislative purpose" as suggesting that discovery is permissible to test the legislative purpose of Members in applying the Speech or Debate Clause.  In fact, the court there permitted discovery of documents *not* to test an assertion of the Speech or Debate Clause, but rather to understand the "legislative purpose" of a federal statute as it related to the then-applicable Establishment Clause test set forth in *Lemon v. Kurtzmen*, 403 U.S. 602 (1971), that examined whether the governmental action had "a secular legislative purpose."  *Jewish War Veterans*, 506 F. Supp. 2d at 43-46; *see id.* at 60 (finding that plaintiffs could discover documents "dealing with overall legislative purpose [of the law] that are both relevant and *not covered by the Speech or Debate Clause.*") (emphasis added).  Unlike plaintiff's request here, *Jewish War Veterans* did not concern discovery of privileged documents from Members of Congress to evaluate the purpose behind plainly legislative acts.  That case provides no support for granting plaintiff's request for jurisdictional discovery.

Finally, plaintiff suggests that he needs discovery regarding the "completeness" of the Committee's actions regarding enforcement of the subpoena.  Pl.'s Disc. Mot. at 10.  No such discovery is needed as the record indicates that Senate action on the two enforcement resolutions approved by the Committee – (1) the resolution certifying plaintiff's default to the U.S. Attorney for action for criminal contempt under 2 U.S.C. § 192, and (2) the resolution authorizing a civil enforcement action against plaintiff – is complete.  The Senate agreed to the resolution certifying plaintiff's default to the U.S. Attorney, *see* 170 Cong. Rec. S6407 (daily ed. Sept. 25, 2024), and that certification has been delivered.  With regard to civil enforcement, the 118th Congress has adjourned and, as the Senate did not take action on that resolution prior to adjournment, the resolution lapsed and is no longer pending in the Senate.  No discovery on this issue would

provide any additional information relevant or necessary to resolving defendants' motion to dismiss.

### III.    Plaintiff's Requested Discovery Would Itself Be Largely Precluded By The Clause.

The Speech or Debate Clause provides Members of Congress not only with immunity from suit, but also with "a testimonial and non-disclosure privilege" that protects Members "from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see also Gravel*, 408 U.S. at 616 ("We have no doubt that Senator Gravel may not be made to answer – either in terms of questions or in terms of defending himself from prosecution – for the events that occurred at the subcommittee meeting."); *Musgrave*, 104 F.4th at 361; *Brown & Williamson*, 62 F.3d at 420; *MINPECO, S.A.*, 844 F.2d at 859.  Indeed, "[d]iscovery procedures can prove just as intrusive" to legislators as being named a defendant. *MINPECO, S.A.*, 844 F.2d at 859.

Plaintiff's request to take discovery from the defendants regarding matters such as "the context surrounding the Committee's enforcement efforts," Pl.'s Disc. Mot. at 8, and defendants' plans for the hearing and questions for Dr. de la Torre, *id.* at 9, are matters that are absolutely privileged under the Speech or Debate Clause.  *See Howard*, 720 F.3d at 946 (Clause protects Members and staff "from being compelled to answer questions about legislative activity or produce legislative materials," including regarding "preparations for legislative activities"); *see also Gravel*, 408 U.S. at 625 (Clause protects from inquiry all activities that are part "of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction

of either House.").

Plaintiff argues that "Committee members' public remarks and communications with members of the press" are outside the Clause's protection, and therefore, "[d]iscovery regarding those actions is clearly permissible."  Pl.'s Disc. Mot. at 12.[11]  But those actions are not the basis of any of plaintiff's legal claims and, therefore, cannot be the basis for jurisdictional discovery related to Speech or Debate Clause immunity for the claims that plaintiff does assert.  Furthermore, these public statements do not waive Members' Speech or Debate Clause privilege for the underlying legislative acts they relate to.  *Cf. United States v. Helstoski*, 442 U.S. 477, 490-91 (1979) (assuming *arguendo* that a Member of Congress "may waive the Speech or Debate Clause's protection against being prosecuted for a legislative act," such "waiver can be found only after explicit and unequivocal renunciation of the protection.").   Thus, discovery into any underlying legislative acts referenced in press statements would still be precluded by the Clause's non-disclosure privilege.

---

[11]  Plaintiff misstates the reach of the Clause when he asserts that Members' public remarks "fall squarely outside the Speech or Debate Clause's protection."  Pl.'s Disc. Mot. at 12. The application of the Clause to protect remarks by Members depends not on whether the remarks are public, but whether they are part of the legislative sphere.  For instance, statements made by Members of Congress during debate in the Senate chamber or in Senate committee meetings are public and yet clearly protected by the Clause as part of the legislative process.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to conduct jurisdictional discovery should be denied.

Respectfully submitted,

/s/ Morgan J. Frankel
Morgan J. Frankel, Bar #342022
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Thomas E. Caballero
Senior Assistant Senate Legal Counsel

Vivian M. Rivera
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel), (202) 224-3391 (fax)

Dated: January 16, 2025          Attorneys for Defendants