# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DR. RALPH DE LA TORRE, M.D.**, <br><br> Plaintiff, <br><br> v. <br><br> **BILL CASSIDY, M.D.**, in his capacity as Chairman of the Committee on Health, Education, Labor and Pensions of the United States Senate, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-02776 (TNM) |

## <u>MEMORANDUM OPINION</u>

Dr. Ralph de la Torre sues 20 U.S. Senators on the Health, Education, Labor and Pensions (HELP) Committee.[1]  The doctor challenges the Committee's subpoena compelling his testimony at a hearing because, he alleges, it violated his Fifth Amendment rights.  But the Court need not reach these claims because the Constitution's Speech and Debate Clause grants Congress absolute immunity from suits based on legislative actions.  This is one of those suits.  Because all named Defendants' challenged actions are immune, the Court must dismiss the case for lack of subject-matter jurisdiction.

## I.

For nearly 15 years, Dr. Ralph de la Torre was the "founder, chairman, and CEO of Steward Health Care System," "the largest physician-led, minority owned, integrated health care system in the United States."  Am. Compl., ECF No. 17 ¶¶ 1, 41.  He attended Harvard Medical

---

[1] Under Federal Rule of Civil Procedure 25(d), these Senators sued in their official capacity are automatically substituted with the current members of the HELP Committee, insofar as the membership has changed.  Notice Def. Sens. No Longer Serving on Comm., ECF No. 24.

School and holds a Masters' degree from the Massachusetts Institute of Technology.  Am. Compl. ¶ 1.  After many years of business, Steward Health Care suffered "significant financial headwinds" during the COVID-19 pandemic.  Am. Compl. ¶ 44.  The company filed for bankruptcy in spring 2024.  Am. Compl. ¶ 2.

A few months later, the HELP Committee asked Dr. de la Torre to testify at a hearing entitled, "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care."  S. Rep. No. 118-230, at 3 (2024).  The hearing began the Committee's investigation into the cause and effects of the Steward Health Care bankruptcy.  *See* U.S. Gov't Accountability Office, Cong. Rec. Daily Digest–July 25, 2024, at D776.  The HELP Committee has jurisdiction over "[m]easures relating to education, labor, health, and public welfare." Senate Rule XXV(*l*)(1), Senate Manual, S. Doc. No. 118-1, at 33 (2024).  The Senate also has directed the Committee to "study and review, on a comprehensive basis, matters relating to health, education and training, and public welfare, and report thereon from time to time."  Senate Rule XXV(*l*)(2), Senate Manual, S. Doc. No. 118-1, at 34 (2024).

Sen. Bernie Sanders, Chairman of the HELP Committee, said publicly that he would "hold Dr. de la Torre accountable for his greed," calling Steward Health Care an "elaborate Ponzi scheme."  Am. Compl. ¶ 49; *see Sanders Leads HELP Committee Investigation into Bankruptcy of Steward Health Care and Subpoenas its CEO*, Sanders.Senate.gov (July 25, 2024) (press release).[2]  Dr. de la Torre declined to testify voluntarily.  Am. Compl. ¶ 50.  The Committee responded with a subpoena.  S. Rep. No. 118-230, at 2 (2024); Am. Compl. ¶¶ 3, 50–52.  The doctor replied in writing that he was invoking his Fifth Amendment rights to avoid

---

[2] https://perma.cc/X8E2-ZGFR.

attending the hearing.  S. Rep. No. 118-230, App. III at 12–15; Am. Compl. ¶ 4.[3]  He also explained that Steward Health Care had "denied authorization" for him to testify on the hospital's behalf and that a "federal court's order" "prohibited" him from "revealing certain information obtained in Steward's [ongoing] bankruptcy proceeding."  S. Rep. No. 118-230, App. III at 12–14; Am. Compl. ¶ 4 n.1.

The next day, the Committee rejected his explanations.  S. Rep. No. 118-230, at 2; Am. Compl. ¶¶ 5, 51.  It maintained that the Fifth Amendment may not be invoked to evade a congressional subpoena but rather that individuals must appear, then invoke the Fifth Amendment to specific questions.  S. Rep. No. 118-230, at 2.  And, along those lines, the Committee asserted that he also could not be relieved of his duty to appear for his other cited reasons.  S. Rep. No. 118-230, App. IV at 29.  The HELP Committee promised "criminal penalties" for his "failure to comply with the Committee's subpoena."  *Id.*; Am. Compl. ¶ 5.

Senators on the Committee then criticized Dr. de la Torre in press releases, calling for his firing and blaming him for the bankruptcy.  Am. Compl. ¶¶ 5 n.3, 8, 47 (collecting negative press releases).  During the hearing held in Dr. de la Torre's absence, Sen. Sanders called him "the poster child for this outrageous type of corporate greed that is permeating our for-profit healthcare system."  S. Rep. No. 118-230, at App. V, 33.  The Committee publicly announced that it would pursue contempt-of-Congress resolutions against him.  Am. Compl. ¶ 56.  The doctor again wrote to the Senate emphasizing his reliance on the Fifth Amendment.  Am. Compl. ¶¶ 9, 57.

---

[3] The Committee suggests that Dr. de la Torre was unclear in his first invocation because he only referenced "constitutional rights" that would be "sidestep[ped] . . . by seeking sworn testimony on matters for which the Committee has pre-determined his guilt."  Mot. Dismiss, ECF No. 18-1, at 16; S. Rep. 118-230, App. III at 14.  But the Court takes Dr. de la Torre's allegations as true at the motion-to-dismiss stage.  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  So it adopts his allegation that he was referencing his Fifth Amendment rights—which he explicitly invoked shortly after, as explained above.

The Committee still unanimously passed both civil and criminal contempt resolutions against Dr. de la Torre.  Am. Compl. ¶¶ 10, 56–61; 170 Cong. Rec. S6405 (daily ed. Sept. 25, 2024).[4]  The criminal resolution directed the President of the Senate to certify the report to the United States Attorney for the District of Columbia for presentation to a grand jury.  Am. Compl. ¶ 58; S. Res. 837, 118th Cong. (Sept. 25, 2024).  The civil resolution directed the Senate Legal Counsel to bring a civil action to enforce the subpoena.  Am. Compl. ¶ 58; 170 Cong. Rec. S6405 (daily ed. Sept. 25, 2024).  Only the criminal contempt resolution has been passed on the Senate floor, by voice vote.  Am. Compl. ¶¶ 61–63; S. 837, 118th Cong. (2024); 170 Cong. Rec. S6407 (daily ed. Sept. 25, 2024).

Dr. de la Torre resigned as CEO of Steward Health.  Am. Compl. ¶¶ 65–66.  He alleges that the media has picked up the Committee members' pejorative "health care terrorist," publishing it in the Boston Globe and elsewhere.  Am. Compl. ¶¶ 65 & nn.23–24, 66 & nn.25–27 (citing media reports).  Dr. de la Torre now sues the HELP Committee and 20 of its members. Am. Compl. ¶¶ 67–86.  The Committee moved to dismiss, attacking this Court's jurisdiction over the Complaint.  Mot. Dismiss Am. Compl., ECF No. 18.  In response, Dr. de la Torre requested jurisdictional discovery.  Juris. Disco. Mot., ECF No. 20.  Both motions are fully briefed and ripe for consideration.

## II.

The Committee seeks to dismiss this case for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *Massie v. Pelosi*, 72 F.4th 319, 321 (D.C. Cir. 2023).  Because federal courts

---

[4] Dr. de la Torre alleges that Sen. Sanders concealed his Fifth Amendment invocation from the Senate because he did not mention the Fifth Amendment in his statements on the Senate floor.  Am. Compl. ¶¶ 59, 61–63.  But the Committee correctly points out that Sen. Sanders attached the HELP Committee Report when sending the resolution to the Senate, which contained Dr. de la Torre's letters invoking the Fifth Amendment.  Def. Reply Mot. Dismiss, ECF No. 23, at 12 n.1; S. Rep. No. 118-230, App. III at 12–14, 16–17, App. IV at 28–29.

have limited purview, they must presume that a "cause lies outside [their] limited jurisdiction." *Kokkonen v. Guardian Life Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of overcoming that presumption. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Dr. de la Torre contends that Congress bears the burden of proving Speech and Debate Clause immunity. Opp. Mot. Dismiss at 11–12. For that proposition, he cites two cases that do not persuade this Court. First, he cites an Eastern District of Virginia opinion whose Supreme Court citation supports only the substantive privilege standard, not the burden-shifting proposition. *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 331 (E.D. Va. 2015) (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972)). Second, he cites *Watkins v. United States*, 354 U.S. 178, 201 (1957), which states that Congress should ensure that Committees are properly instructed "on what they are to do with the power delegated to them" to "insure that compulsory process is used only in furtherance of a legislative purpose." This does not place the burden to prove Speech and Debate privilege on Congress; it admonishes Congress to give its committees defined legislative tasks, which eases courts' review of, for example, an arrest for contempt of Congress. *See infra* Parts III–IV (explaining the proper scope of review for legislative purpose). So Dr. de la Torre still bears the burden of proving federal subject-matter jurisdiction under the usual rule.

The Court accepts factual allegations in the Complaint as true, but those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom. Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024). The Court "may consider materials outside the pleadings in deciding whether to grant a motion

to dismiss for lack of jurisdiction." *Id.* (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

The Court need not find jurisdiction over the merits of this case to rule on the motion for jurisdictional discovery. *Musgrave v. Warner*, 104 F.4th 355, 365 (D.C. Cir. 2024) (so holding in a Speech and Debate Clause case). When a "party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). District courts should not deny a motion for jurisdictional discovery in a Speech and Debate Clause case unless they determine that either the "discovery [is] itself precluded by the Speech or Debate Clause" or that "no facts that additional discovery could produce would affect the Speech-or-Debate Clause analysis." *Musgrave*, 104 F.4th at 365.

### III.

The Court turns first, as it must, to Speech and Debate Clause immunity. Dr. de la Torre must show that it is inapplicable to avoid dismissal. "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015).[5]

"The Speech and Debate Clause has been read broadly to effectuate its purposes." *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (cleaned up). Its purpose is to "insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). The Clause's history, which has been fully

---

[5] The Court may address Article III standing and immunity in any order because both are jurisdictional. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory sequencing of jurisdictional issues.") (cleaned up); *Rangel*, 785 F.3d at 22 (addressing Speech and Debate immunity before Article III standing based on *Sinochem*'s command). Because the Court will dismiss based on immunity, it need not address Article III standing. *Rangel*, 785 F.3d at 22.

documented elsewhere, confirms this separation-of-powers purpose. *Schilling*, 633 F. Supp. 3d at 275–79.

The Court begins with the text:

"The Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

U.S. Const. art. I, § 6, cl.1.

These words explain the central debate here. In short, "Senators and Representatives" "shall not be questioned in any other Place" for their "Speech or Debate in either House." *Id.* As caselaw has developed over the years, the principle has settled as follows: For any act that involves congressional speech or debate—or the broader precedential interpretation, any "legislative act"—absolute immunity applies. A legislator may not be "questioned in any other Place." *Id.* But for any other *non-legislative* act, and particularly those involving "Treason, Felony and Breach of Peace," immunity from both "question[ing]" and "Arrest" evaporates. *Id.* A court only may inquire into an act that is not "essential to legislating." *Eastland*, 421 U.S. at 507–08 (cleaned up). The parties pull at this distinction like taffy, but keeping the Constitution's text in mind clarifies the firm divide between immune acts and all others.

"In determining whether particular activities other than literal speech or debate fall within the legitimate legislative sphere we look to see whether the activities took place in a session of the House by one of its members in relation to the business before it." *Eastland*, 421 U.S. at 503 (cleaned up). "More specifically, we must determine whether the activities are an integral part of the deliberative and communicative processes by which Members participate in

committee and House proceedings," *id.* at 504, "with respect to either (1) the consideration and passage or rejection of proposed legislation or (2) other matters which the Constitution places within the jurisdiction of either House," *Massie*, 72 F.4th at 322; *accord McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021). When immunity applies, it does so equally to committees of Congress and their members. *See, e.g.*, *Musgrave*, 104 F.4th at 358 (holding that Speech and Debate immunity applied to a Senate Committee and its chair). It also covers civil and criminal, private and government actions. *Eastland*, 421 U.S. at 502–03.

The Amended Complaint targets several actions with varying degrees of precision. Dr. de la Torre seeks (1) declaratory relief that the subpoena did not advance a valid legislative purpose, and (2) declaratory and injunctive relief that the Committee's "[a]ctions" violated his Fifth Amendment rights. Am. Compl. ¶¶ 67–86. Dr. de la Torre's prayer for relief clarifies which "[a]ctions" he targets besides the subpoena: "all subsequent actions related to enforcement of the Subpoena"; "the vote of the Committee on September 19, 2024 approving the Contempt Resolutions as well as subsequently presenting S. Res. 837 for a full Senate vote"; "[e]njoining the [Committee] from attempting to civilly enforce the July 25, 2024 Subpoena"; and "[e]njoining the [Committee] from causing Dr. de la Torre to suffer from additional punishment for invoking his Fifth Amendment rights." Am. Compl. at 31–32.

Each of these acts is immune. "Issuance of subpoenas . . . has long been held to be a legitimate use by Congress of its power to investigate." *Eastland*, 421 U.S. at 504; *McSurely v. McClellan*, 521 F.2d 1024, 1036–37 (D.C. Cir. 1975). This holds true for committee subpoenas acting "on behalf of one of the Houses." *Eastland*, 421 U.S. at 505.

Equally immune are the vote, the Committee's report, the resolutions, referring those resolutions to the House or Senate, and "Member[s'] conduct at legislative committee hearings."

*McMillan*, 412 U.S. at 311–12 ("Thus voting by Members and committee reports are protected and a Member's conduct at legislative committee hearings . . . may not be made the basis for a civil or criminal judgment against a Member because that conduct is within the sphere of legitimate legislative activity.") (cleaned up); *id.* at 312 (holding the same for referring a Committee report to the Speaker of the House); *Gravel*, 408 U.S. at 617 ("Committee reports, resolutions, and the act of voting are equally covered[.]").  These actions "fall comfortably within the scope of the Speech or Debate Clause."  *Rangel*, 785 F.3d at 24.  This immunity covers claims for both injunctive and declaratory relief against such legislative actions.  For example, the *Eastland* Court reversed a declaratory relief judgment against Members of Congress, which the appellate court had concluded was "preferable to any coercive order."  *Eastland*, 421 U.S. at 499–503.

Dr. de la Torre also vaguely challenges "all subsequent actions related to enforcement of the Subpoena."  Am. Compl. at 31–32.  He has not mentioned any pending criminal prosecution or arrest, and there has been no civil enforcement, so the only actions remaining for him to challenge are the criminal and civil resolutions' passage and referral to the Senate.  *See also* Mot. Dismiss at 19 n.1 ("The Senate has taken no action on the resolution to direct the Senate Legal Counsel to initiate a civil action against Dr. de la Torre to enforce the subpoena.").  And those actions, as discussed, are immune.  *See also McCarthy*, 5 F.4th at 41 ("The salient distinction under the Speech or Debate clause is not between enacting legislation and executing it.  The pivotal distinction instead is between legislative acts and non-legislative acts."); *Massie*, 72 F.4th at 323 ("The Speech or Debate Clause protects the execution of legislation when the executing actions themselves constitute legislative acts.") (cleaned up).

Finally, the doctor requests that the Court enjoin the Committee from any future actions that would "caus[e him] to suffer from additional punishment for invoking his Fifth Amendment rights." Am. Compl. at 31–32. He disclaims requesting an injunction or any "interfere[nce] with any forthcoming criminal proceedings"—which the parties agree "do not yet exist." Opp. Mot. Dismiss, ECF No. 21, at 40. Even when pressed by opposing counsel, he doubles down that he is only targeting the Committee and the Senate. *Id.* So the Court leaves to the side any potential unnamed actors that could enforce either contempt order.

His nebulous reference to other future actions is thus construed as challenging the actions that the *Senators themselves and the Committee* could take. Such an inquiry necessarily implicates the Speech and Debate Clause. Immunity applies based on the nature of Senators' actions, not their status as legislators. *See supra* at 6–7; U.S. Const. art. I, § 6, cl.1. So to demonstrate subject-matter jurisdiction, Dr. de la Torre must identify future non-immune actions to target. He has not. He does not allege, for example, that any Senator or the Committee has committed or plans to commit "Treason, Felony [or] Breach of Peace" to enforce the subpoena against him. U.S. Const. art. I, § 6, cl. 1. He only alleges that their conduct has violated his constitutional rights, an entirely different matter from alleging that they have committed any kind of qualifying non-immune, non-legislative action. *E.g.*, Opp. Mot. Dismiss at 18–20; *see infra* Part IV (discussing the scope of non-immune actions). His scattershot attempt to enjoin future actions does not rise beyond the "speculative" standard required to allege subject-matter jurisdiction. *See generally Rosenboro v. Kim*, 944 F.2d 13, 19 (D.C. Cir. 1993) (stating that more is required to substantiate subject-matter jurisdiction than "purely speculative or unsupported allegations of injury").

The doctor does not challenge the one action *preceding* the subpoena for which the Supreme Court has recognized very "narrow" review to determine whether it is an immune legislative act: "[t]he propriety of making [Dr. de la Torre] a subject of the investigation and subpoena." Am. Compl. at 31–32; *Eastland*, 421 U.S. at 506.[6]  "[A]lthough the power to investigate is necessarily broad it is not unlimited." *McSurely*, 521 F.2d at 1038.  Yet this Committee decision, too, would pass muster as proper "legislative" action that falls within Speech and Debate immunity.

"The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *McSurely*, 521 F.2d at 1038.  The Committee need only show that its investigation is "facially legislative." *Id.*  "Even the most cursory look at the facts presented by the pleadings reveals the legitimacy of the [Committee's] subpoena." *Eastland*, 421 U.S. at 506.  Sen. Sanders said during the committee hearing that investigating Steward Healthcare "is just one extreme example of the damaging role in [his] view, that private equity is having on our healthcare system."  Def. Ex. A, ECF No. 18-2, at 38–39.  He also wanted to examine Steward's management and how it impacted "patient care, health care workers, and the hospital it operates." *Id.* at 17–18 (Committee's letter to Dr. de la Torre discussing the topics for the hearing).

The HELP Committee is charged with "study[ing] and review[ing], on a comprehensive basis, matters relating to health, education and training, and public welfare . . . ." *See supra* Part I (citing Senate Rules XXVI.1(*l*)(1)–(2)).  "[T]he inquiry was intended to inform Congress in an area where legislation may be had. . . . [I]t is clear that the subpoena to discover [Dr. de la

---

[6] The Court has an independent obligation to determine whether subject-matter jurisdiction exists even though Dr. de la Torre has forfeited such a challenge.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Torre's] testimony may fairly be deemed within the [ C]ommittee's province." *Eastland*, 421 U.S. at 506–07 (cleaned up).

Dr. de la Torre tries to distinguish *Eastland* because he says that the Committee "knew, before the Hearing, that Dr. de la Torre would not have provided any information." Opp. Mot. Dismiss, ECF No. 21, at 21–22 n.4; Am. Compl. ¶¶ 4, 51–53, 71–74. But the relevant question is *not* whether the witness intended to invoke his Fifth Amendment rights. Indeed, the Supreme Court has blessed contempt-of-Congress convictions even for Bill-of-Rights-wielding-witnesses. *See Barenblatt v. United States*, 360 U.S. 109, 134 (1959) (First Amendment challenge to a contempt conviction); *In re Chapman*, 166 U.S. 661, 673 (1897) (on habeas review of a contempt conviction, rejecting a Fifth Amendment Double Jeopardy challenge against a predecessor contempt-of-Congress statute).

The "narrow" inquiry is whether the Committee was inquiring into a matter on which "legislation may be had." *Eastland*, 421 U.S. at 506. And the answer to that question is incontrovertibly yes. Dr. de la Torre has only argued that the investigation served no legislative purpose because of his Fifth Amendment invocation, not that it was unrelated to the Committee's realm of legislation. Opp. Mot. Dismiss at 13–23. While the Senate previously has declined to call witnesses invoking their Fifth Amendment rights, Opp. Mot. Dismiss at 18–19, that is a matter of discretion, not requirement. *See, e.g.*, *Chapman*, 166 U.S. at 673. Dr. de la Torre is right that the Fifth Amendment does not evaporate in the face of a Congressional investigation, but its protection does not extend to allowing suit against the Committee or its Members for immune legislative acts. *See infra* Part IV (explaining the Fifth Amendment's role in congressional-contempt convictions).

The D.C. Circuit noticed tension "[a]t first blush" between (1) the Supreme Court's direction to consider whether an investigation is relevant to a Committee's legislative realm, and (2) the Supreme Court's "refus[al] to question whether any rational legislative purpose could be served" by an immune legislative activity. *McSurely*, 521 F.2d at 1038–39. The problem disappears upon further examination: All that a Committee must do is have a "facially legitimate purpose in directing its investigation toward the problems" it is charged with solving; beyond that, "[i]t would appear impossible for the courts to make detailed assessments of the propriety of each individual item of information obtained from a particular source . . . without engaging in exactly the kind of inquiry into motives that the Speech or Debate Clause was intended to foreclose." *Id.* In other words, determining whether an investigation is a legislative activity turns on the objective relationship with the Committee's assignment, not the Committee's purpose in seeking the particular witness. The former inquiry is necessary to ensure that the investigation is an immune legislative act; the latter is prohibited once an action is deemed immune.

Finally, Dr. de la Torre also neglected to address a factually similar bankruptcy case—one of the few in which the Supreme Court found that a committee had *exceeded* its proper investigatory scope. *Kilbourn v. Thompson*, 103 U.S. 168 (1880); *see supra* note 6 (noting the Court's sua sponte duty to consider arguments against subject-matter jurisdiction). In *Kilbourn*, the Supreme Court concluded that a committee had authorized an improper investigation unrelated to its charter when it investigated an ongoing bankruptcy case. *Id.* at 194–205. The United States was a creditor. *Id.* at 194. "Some of the creditors, including the United States, were dissatisfied with the settlement." *McGrain v. Daugherty*, 273 U.S. 135, 170–71 (1927) (glossing *Kilbourn*). "The court pointed out that the resolution contained no suggestion of

contemplated legislation; [and] that the matter was one in respect to which no valid legislation could be had." *Id.* at 171. So the *Kilbourn* Court concluded that Congress was exercising "judicial power," which was solely vested in the judiciary, by interfering in a bankruptcy matter unrelated to its legislative purview. *Kilbourn*, 103 U.S. at 192–93. The Court approved of a writ of habeas corpus against the sergeant-at-arms who had arrested a witness for contempt of Congress during the investigation. *Id.* at 196.

The Supreme Court has confirmed since *Kilbourn* that the only similarity between it and this case is tangentially factual. The opinion has been cabined by several subsequent cases and oft-criticized for its "loose language." *See, e.g.*, *United States v. Rumely*, 354 U.S. 41, 46 (1953). As Dr. de la Torre points out, *Watkins* suggests that *Kilbourn* "teaches that such an investigation into individual affairs is invalid if unrelated to any legislative purpose." *Watkins*, 354 U.S. at 198. But *Eastland*, 20 years *after Watkins*, showed how to answer whether an investigation relates to a Committee's purview: "narrow[ly]." 421 U.S. at 506. More, *Eastland* firmly clarified that *Kilbourn* stands for the proposition that the "Sergeant at Arms was held unprotected" because the arrest "was not essential to legislating." *Eastland*, 421 U.S. at 508 (cleaned up). In sum, *Kilbourn* merely presents a case that involved an arrest that was not essential to legislating and an investigation wholly unrelated to the committee's charter. Neither condition exists here.

This case challenges acts that are either integrally essential to legislating—thus, immune—or that satisfy this Court's "narrow" review under *Eastland*. The HELP Committee was charged with investigating healthcare matters; this bankruptcy involved a large healthcare system. Def. Ex. A at 40 (stating that the system involved "more than 30 hospitals across eight states") (statement of Sen. Cassidy). Sen. Sanders clarified that the purpose was to assess the

role of private equity in the broader healthcare system, so he never claimed a desire to interfere in the pending bankruptcy. *Id.* at 38–39; *see supra* Part I.  The investigation was "facially legislative." *McSurely*, 521 F.2d at 1038–39.  Even if Dr. de la Torre had made the argument, it would not succeed.

## IV.

Dr. de la Torre contends that the test for whether an action is an immune legislative action turns on whether the action served a proper legislative purpose.  Opp. Mot. Dismiss at 14–23.[7]  And the HELP Committee's purpose, he argues, was improper.  It merely wanted to "pillory and degrade" him with a "forced public re-invocation" of his Fifth Amendment rights, "interspersed with accusatorial questioning and grandstanding." *Id.* at 17, 20.  While this "might have served Defendants' political purposes, it served no legislative one." *Id.* at 17.  More, he says, this "tarring and feathering" punished him for exercising his Fifth Amendment rights. *Id.* at 22.

Dr. de la Torre's "familiar argument—made in almost every Speech or Debate Clause case"—that the "defendants' conduct cannot be legislative because it was, in his view, illegal," "has been rejected time and time again." *Rangel*, 785 F.3d at 24.  Immunity applies even to an action that "if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *McMillan*, 412 U.S. at 312–13.  "The claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377.  Recall that the only purpose argument that could succeed would be that the Committee's investigation was completely unrelated to its legislative purview—a question that does not consider the purpose of an individual witness or his refusals to answer. *See supra* Part III.

---

[7] The parties agree that the legislators' individual motives are irrelevant.  Mot. Dismiss at 44–45; Opp. Mot. Dismiss at 16 n.2; *accord Watkins*, 354 U.S. at 200.

The Supreme Court and the D.C. Circuit have refuted identical arguments that legislators' purpose was merely to harass and humiliate. In *Eastland*, the Court rejected the argument that a committee's "sole purpose" was to "force public disclosure of beliefs, opinions, expressions and associations of private citizens which may be unorthodox or unpopular," so that the investigation was really intended to "harass, chill, punish and deter [the witnesses] in their exercise of their rights and duties under the First Amendment." 421 U.S. at 495, 509–10; *accord McSurely*, 521 F.2d at 1038. In short, "[t]hose distressed by [a congressional] investigation ha[ve] no judicial remedy so long as Congress acted in a procedurally regular manner." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995).

The Framers certainly knew the Clause's immunity privilege could be abused. *See Schilling*, 633 F. Supp. 3d at 275–80. The "risk of such abuse was the conscious choice of the Framers' buttressed and justified by history." *Eastland*, 421 U.S. at 510. The legislature's independence remained paramount because of the "harm that judicial interference may cause." *Id.* at 511.

Dr. de la Torre relies on cases that stand for an entirely different proposition: Illegal, non-legislative actions *flowing from* immune legislative acts may be reviewed. "That the House could with impunity order an unconstitutional arrest afforded no protection for those who made the arrest . . . . The Speech or Debate Clause could not be construed to immunize an illegal arrest even though directed by an immune legislative act." *Gravel*, 408 U.S. at 618–19; *see id.* at 621 (applying the same logic if the legislators themselves executed an illegal arrest); *see McMillan*, 412 U.S. at 306–24 (finding legislative immunity for creating a committee report, but no immunity for publicly disseminating the report that contained children's private information); *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10 ("The Speech or Debate Clause therefore

does not prohibit inquiry into illegal conduct simply because it has *some nexus* to legislative

functions . . . .") (cleaned up) (emphasis original); *United States v. Brewster*, 408 U.S. 501, 524

(1971) (holding that taking a bribe is not a legislative act); *United States v. Rose*, 28 F.3d 181,

186–89 (D.C. Cir. 1994) (holding that no immunity protected a congressman's testimony about

his own ethics violations).  Recall that these conclusions flow from the Constitution's text:  For

non-legislative acts, particularly those involving "Treason, Felony and Breach of Peace,"

immunity from both "question[ing]" and "Arrest" evaporates.  U.S. Const., art. I, § 6, cl.1.

       Dr. de la Torre's challenge fails because he targets only immune actions, not reviewable

non-legislative ones.  As he points out, contumacious witnesses have successfully challenged

their arrests and convictions—non-legislative acts—after refusing to appear or answer questions

at congressional hearings.  *See, e.g.*, *Quinn v. United States*, 349 U.S. 155, 163–65 (1955)

(dismissing a contempt indictment based on a Fifth Amendment challenge); *Rumely*, 345 U.S. at

41 (affirming vacatur of contempt conviction after witness's First Amendment challenge);

*McGrain*, 273 U.S. at 176–82 (approving a contempt conviction on habeas review against an

improper-legislative-purpose challenge).  Exercising the contempt power through arrest or

conviction is not a legislative act.  *See Watkins*, 354 U.S. at 192 ("Unlike the English practice,

from the very outset the use of contempt power by the legislature was deemed subject to judicial

review.").  Much of the dicta Dr. de la Torre cites about Congress avoiding unnecessary inquiry

into private affairs arises in these arrest and conviction contexts.  *See Gravel*, 408 U.S. at 618

(stating, glossing *Kilbourn*, that "the [congressional] resolution was subject to judicial review

insofar as its execution impinged on a citizen's rights"); *see also McGrain*, 273 U.S. at 173

("[N]either house is invested with general power to inquire into private affairs and compel

disclosure . . . .").  But Dr. de la Torre has not been arrested or convicted, so there is no non-legislative action of this type to target.

Dr. de la Torre also sometimes conflates these cases' constitutional reasoning with their statutory reasoning.  Many of them assessed whether the questions asked were "pertinent" to the committee's purpose because that is a dispositive issue in the contempt-of-Congress statute.  2 U.S.C. § 192 ("Every person who having been summoned as a witness by the authority of either House of Congress . . . who, having appeared, refuses to answer any question *pertinent to the question under inquiry*, shall be deemed guilty of a misdemeanor . . . .") (emphasis added); *e.g.*, *Watkins*, 354 U.S. at 207; *Quinn*, 349 U.S. at 156; *United States v. Bannon*, 101 F.4th 16, 25 (D.C. Cir. 2024).  So even for reviewable non-legislative actions, what Dr. de la Torre calls the general "purpose" question can be both of constitutional stature and a creature of mere statutory interpretation.  *See Quinn*, 349 U.S. at 160–70 (remanding with direction to acquit a witness convicted for contempt-of-Congress on *both* Fifth Amendment invocation grounds and lack of "pertinency" under the statute).  And again, the statutory reasoning would only be relevant when interpreting the contempt statute after conviction.

Dr. de la Torre relies heavily on *Watkins* for the proposition that Congress may not "expose for the sake of exposure."  *Watkins*, 354 U.S. at 200.  But that case does not even mention the Speech and Debate Clause; it is a Due Process case invalidating a contempt conviction.  *Id.* at 209–15.  The conviction suffered from the "vice of vagueness" because the committee failed to show that the questions the witness refused to answer were "pertinent" to the inquiry as the contempt statute requires.  *Id.*  Two decades after *Watkins*, the Supreme Court cited it in the same passage declaring that purpose was irrelevant to the legislative-act inquiry: "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would

18

lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 508–09 (citing *Watkins* for the proposition that individual legislators' motives are irrelevant as well).[8]

In sum, Dr. de la Torre's challenge cannot succeed here because this Court's review is limited to an arrest, conviction, or other *non-legislative* action to determine whether it impinged a citizen's rights. An act that is core to the legislative process is absolutely immune to any "question[]." *E.g.*, *Eastland*, 421 U.S. at 508–09. There is no non-legislative action here for Dr. de la Torre to challenge. He has not been convicted or arrested based on the Senate's criminal contempt resolution, the civil contempt resolution has not been enforced, and his vague reference to future enforcement does not suggest any other non-legislative actions from these named defendants. *See supra* Parts I–II. So he must save his fire for challenging a challengeable action.[9]

## V.

Dr. de la Torre also moves for jurisdictional discovery, which he insists will illuminate the Committee's true "purpose" for the investigation. Mot. Juris. Disco., ECF No. 20. Recall that district courts should allow a motion for jurisdictional discovery in a Speech or Debate Clause case unless they determine that either the "discovery [is] itself precluded by the Speech or

---

[8] Dr. de la Torre invokes *Trump v. Mazars* to argue that investigations are not immune when they are conducted for personal aggrandizement or punishing the investigated individual. Opp. Mot. Dismiss at 14–15; 591 U.S. 848 (2020). But that opinion rested on unique separation-of-powers concerns when committees subpoenaed the President's information. *Id.* at 853 ("We have never addressed a congressional subpoena for the President's information."). It has little bearing here.

[9] Both parties rely on cases about the Fifth Amendment's invocation before grand or petit juries. Opp. Mot. Dismiss at 18–21; Mot. Dismiss at 47–48. Those cases do not deal with the intersection between the Speech and Debate Clause and the Fifth Amendment, so they are inapt. *E.g.*, *Bowles v. United States*, 439 F.2d 536, 542 (D.C. Cir. 1970).

Debate Clause" or that "no facts that additional discovery could produce would affect the Speech-or-Debate Clause analysis." *Musgrave*, 104 F.4th at 365. This is such a case.

The Court has already reviewed all the documents it requires to determine that the investigation's purpose was "facially legislative." *McSurely*, 521 F.2d at 1038–39; *see supra* Parts I, III (reviewing the Senate Rules and Sen. Sanders's discussion of the investigation's relevance to the Committee's legislative task); Mot. Dismiss Reply, ECF No. 22, at 13. No further facts would affect this "narrow" inquiry. *Eastland*, 421 U.S. at 506.

Dr. de la Torre says that a list of six types of documents would reveal facts affecting the immunity inquiry. Reply Mot. Juris. Disco., ECF No. 25, at 18–20. But each targets the Committee's knowledge about his Fifth Amendment invocation. *Id.* Recall that the Committee's knowledge about a witness invoking the Fifth Amendment is irrelevant to whether these challenged acts are legislative. *See supra* Parts III–IV (illustrating that immunity applies even to "unconstitutional" legislative acts or legislative acts motivated by ill will). The immunity inquiry centers on whether an action is core to the legislative process, a question barnacled with binding precedent. *See supra* Part III. Fifth Amendment defenses would mainly be important to assessing a non-legislative action's validity, like an arrest or conviction, which are not at issue here. *See supra* Part IV.

Dr. de la Torre retorts that his jurisdictional discovery requests include non-legislative acts. Mot. Juris. Disco. at 16–17. For example, he says that the Committee's "public remarks and communications with members of the press" are outside the Speech or Debate Clause's protection. *Id.* at 16. He is right that these are not core legislative acts subject to immunity. *McMillan*, 412 U.S. at 311–19; *Brewster*, 408 U.S. at 512 (stating that "news letters to constituents, news releases, and speeches delivered outside Congress" are not "protected by the

Speech or Debate Clause").  But "when the actions upon which a plaintiff seeks to predicate liability are legislative acts, the Speech or Debate Clause operates as a jurisdictional bar, conferring absolute immunity from suit." *Musgrave*, 104 F.4th at 361.  And each action Dr. de la Torre *challenges* is "a legislative act protected regardless of its purpose." *Id.* at 366; Am. Compl. at 31–32 (prayer for relief).  Neither of his counts targets legislators' speech to the press or public addresses.  Am. Compl. ¶¶ 67–89.  So purpose-driven discovery into *non-legislative* acts cannot help him illuminate the status of legislative acts.  *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) ("As the preparation and the publication of the [] statement fall within the sphere of the subcommittee's [immune] legislative activities, the fact of its [non-legislative] transmittal [] does not entitle the [appellant] to the [discovery] information they seek."); *accord In re Sealed Case*, 80 F.4th 355, 367 (D.C. Cir. 2023).[10]

Finally, the Supreme Court has strongly admonished courts to tread carefully when authorizing discovery in Speech and Debate cases.  Once an action is deemed legislative, immunity is "absolute." *Rangel*, 785 F.3d at 24.  That immunity both provides "a defense on the merits" and "protects a legislator from the burden of defending himself." *Powell v. McCormack*, 395 U.S. 486, 502–03 (1969); *accord Eastland*, 421 U.S. at 503 (calling a "private civil action" a "distraction that forces Members to divert their time, energy, and attention from their legislative

---

[10] The parties debate whether *Jewish War Veterans* applies here. *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007).  That case dealt with the Establishment Clause, which required investigating "legislative purpose" under the then-applicable *Lemon* test. *Id.* at 43–46; Opp. Mot. Juris. Disco., ECF No. 23, at 18–19 n.2.  The Speech and Debate Clause applied only when deciding which documents could be discovered for this legislative-purpose inquiry; in other words, the Speech and Debate protection in that case was only one of documentary privilege, not of immunity. *Jewish War Veterans*, 506 F. Supp. 2d at 54–55 ("The Members maintain that the Speech or Debate Clause allows them to resist producing the documents sought . . . .").  The production privilege is not jurisdictional, but immunity is. *Musgrave*, 104 F.4th at 361 ("Two strands of [the Speech or Debate Clause's] protection are relevant here. . . . [T]he immunity strand operates as a jurisdictional bar, whereas the privilege strand does not deprive the court of jurisdiction.").  So the *Jewish War Veterans* discussion is orthogonal to the immunity analysis here.

tasks to defend the litigation").  "The privilege would be of little value if they could be subjected

to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader . . . ."

*Tenney*, 341 U.S. at 377; *see Eastland*, 421 U.S. at 511 n.17 ("Although the Speech or Debate

Clause has never been read so broadly that legislators are absolved of the responsibility of filing

a motion to dismiss, [] the purpose which the Clause serves require that such motions be given

the most expeditious treatment by district courts . . . .").

In short, "[b]ecause [Dr. de la Torre] has not shown that any requested discovery could

produce information that would affect the Speech-or-Debate analysis, there is no basis [] to allow

it."  *Musgrave*, 104 F.4th at 366.  Documents illuminating the Committee's knowledge about his

Fifth Amendment invocation are irrelevant to the immunity question.  The Court thus will deny

Dr. de la Torre's motion for jurisdictional discovery.[11]

### VI.

For all these reasons, the Court will grant the Committee's motion to dismiss and deny

Dr. de la Torre's motion for jurisdictional discovery.  Dismissal will be without prejudice

because the case is dismissed for want of subject-matter jurisdiction.  *Jud. Watch v. Schiff*, 998

F.3d at 993 (doing so for a motion-to-dismiss in a Speech and Debate Clause case).  An

appropriate Order will issue today.


Dated: September 16, 2025                              _____
                                                       TREVOR N. McFADDEN, U.S.D.J.

---

[11] Dr. de la Torre's citations to foreign sovereign immunity precedent are inapt because those are governed by a complex statutory scheme rather than Speech and Debate Clause cases.  Reply Mot. Juris. Disco. at 11.